# BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

MDL No. 2557          IN RE: AUTO BODY SHOP ANTITRUST LITIGATION

## FARM BUREAU PROPERTY & CASUALTY INSURANCE COMPANY'S RESISTANCE TO PLAINTIFFS' MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1407

Farm Bureau Property & Casualty Insurance Company ("Farm Bureau Property & Casualty"),

by and through counsel of record who has entered a special appearance, hereby submits this

Resistance to Plaintiffs' Motion to Transfer Pursuant to 28 U.S.C.§ 1407.

### LITIGATION AND FACTUAL BACKGROUND

1.      Farm Bureau Property & Casualty Insurance Company (incorrectly identified in the

pleading as Farm Bureau Property & Casualty Company) has been named as a defendant in only

one of the five cases identified in Plaintiffs' Motion to Transfer – *ALPINE STRAIGHTENING SYSTEMS,*

*INC. d/b/a ALPINE BODY SHOP, et. al. v. STATE FARM MUTUAL AUTOMOBILE INSURANCE*

*COMPANY, et. al.,* Civil Action No. Civil No. 2:14-cv-00261 PMW, United States District Court for the

District of Utah, Central Division ("the Utah Case").     (Plaintiffs' First Amended Complaint at ¶ 19,

attached as Exhibit "A").

2.      In the Utah Case, Plaintiffs allege that "Defendant Farm Bureau Property & Casualty

Company is registered with the Utah Department of Insurance to do business and is doing business

within Utah, its corporate headquarters are located at 5400 University Avenue in West Des Moines,

Iowa, 50266, and it may be served through its registered designated agent, CT Corporation System at 1108 East South Union Avenue in Midvale, Utah." (Plaintiffs' First Amended Complaint at ¶ 19, attached as Exhibit "A").

3.    The Utah Case contains no other specific reference to Farm Bureau Property & Casualty in any of the other allegations of the Complaint.    (Plaintiffs' First Amended Complaint, Exhibit "A").

4.    Farm Bureau Property & Casualty has not been served with the Complaint or Summons in the Utah Case.

5.    Farm Bureau Property & Casualty is not named as a party or referenced in the other federal cases in Mississippi, Florida, Indiana, and Tennessee that are identified in Plaintiffs' Motion to Transfer.

6.    Farm Bureau Property & Casualty does not do business in Mississippi, Florida, Indiana or Tennessee.    The company only does business in the following states:    Utah, Arizona, Iowa, Nebraska, Minnesota, South Dakota, Kansas, and New Mexico.    (Affidavit of Karl T. Olson, attached as Exhibit "B").

7.    Plaintiffs allege:    "According to the Utah Department of Insurance in its 2012 Company Market Share Report, State Farm had as of December 31, 2012 captured about 16.29% of the private passenger automobile insurance business in Utah; its next closest competitor, Defendant Mid-Century, had 10.93%, and State Farm's next closest competitor, the Allstate Defendants (collectively Allstate Fire and Casualty Insurance Company, Allstate Insurance Company and Allstate Property & Casualty Insurance Company, which are each named above), had 10.83%.

2

See attached hereto as Exhibit A, a true and correct copy of the 2012 Utah Department of Insurance Private Passenger Automobile Insurance Company Market Share Report." (Plaintiffs' First Amended Complaint at ¶ 40, attached as Exhibit "A").

8.      According to the same report, Farm Bureau Property & Casualty only has 2.75% of the Utah market.      (See, 2012 Utah Department of Insurance Private Passenger Automobile Insurance Company Market Share Report, attached to Plaintiffs' Complaint as Exhibit "A").

9.      Plaintiffs further allege: "Overall, the Defendants controlled about 66.13% of the 2012 private passenger automobile insurance market in Utah." (Plaintiffs' First Amended Complaint at ¶ 41, attached as Exhibit "A").

10.     Relying on the same report, Plaintiffs claim that "Of the remaining 134 insurance companies reporting earned premiums in the Utah market for private passenger automobile insurance in 2012, the average share for each was approximately 0.25%.      (Id. at ¶ 42, attached as Exhibit "A").

11.     Jackson, Mississippi is, at best, a 4 hour and 35 minute plane ride from Salt Lake City, Utah, at a cost of $538.00.     There are no non-stop flights.     New Orleans is, at best, a 3 hour and 22 minute flight from Salt Lake City, Utah, at a cost of $488.00. There is no possible way to fly in and out the same day. Overnight travel would be required. (Affidavit of Lynette Ambrose, attached hereto as Exhibit "C").

**ARGUMENT**

## I. TRANSFER WILL NOT PROMOTE CONVIENCENCE OR JUST AND EFFICIENT CONDUCT OF THE ACTION IN UTAH AGAINST FARM BUREAU

Under federal law, transfers made by the United States Judicial Panel on Multidistrict Litigation are only authorized upon the panel's "determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a) (2012). Where the criteria for transfer are not met, however, "the Panel has full power to 'separate any claim, cross-claim, counterclaim, or third-party claim and remand any of such claims before the remainder of the action is remanded.'" In re Library Editions of Children's Books, 299 F. Supp. 1139, 1142 (J.P.M.L. 1969) (quoting 28 U.S.C. § 1407(a)). The panel should exercise its power here to refuse the motion to transfer or, at a minimum, to separate the claims against Farm Bureau Property & Casualty and remand these claims to the United States District Court, District of Utah where it was filed.

It is well settled, that the MDL Panel considers three factors: (1) whether there are one or more common questions of fact; (2) whether the transfer is for the convenience of all of the parties involved; and (3) whether the transfer will promote judicial efficiency, economy, and fairness. In re Palizzio, Inc. Antitrust Litig., 407 F. Supp. 241 (J.P.M.L. 1976). Before transfer can be ordered, however, "the Panel must be satisfied that all of the statutory criteria have been met." In re Highway Accident Near Rockville, Connecticut, on December 30, 1972, 388 F. Supp. 574, 575 (J.P.M.L. 1975). In considering these three factors, the MDL Panel also considers other case-specific factors that include, among others, the number of cases pending; the number of common

4

questions of fact; the nature of the questions of fact; the number of prospective cases involved; the geographic nature of pending cases; whether cooperation by the courts or counsel can be achieved without transfer; the detriment financially and otherwise on any of the parties by ordering transfer; whether transfer will substantially eliminate duplicative work for parties and/or courts; whether transfer will hasten or delay progress in the case; whether any of the parties has an ulterior motive for transfers such as forum shopping; and so forth.    See Presentation by John G. Heyburn II, Chair of the JPML, in December 2010. http://www.jpml.uscourts.gov/sites/jpml/files/2010-ACI%20Complex%20Litigation%20Conference-Judge%20Heyburn%20Remarks.pdf; see also John G. Heyburn II, A View from the Panel: Part of the Solution, 82 Tul. L. Rev. 2225, 2237 (2008).

Considering the foregoing factors, transfer and centralization of these cases—especially the Utah Case against Farm Bureau Property & Casualty—is not warranted.    Only four other cases are actually pending in the federal district courts, and Plaintiffs have alleged nothing regarding prospective cases being filed elsewhere in the future.    Plaintiffs also fail to meet the burden of showing that these cases are anything but relatively straightforward and few in number.    See John G. Heyburn II, A View from the Panel: Part of the Solution, 82 Tul. L. Rev. 2225, 2238-39 (2008) ("The greater the number of cases and the greater number of common parties, the more likely it is that centralization will create significant efficiencies. A smaller number of relatively straightforward cases may not justify centralization."); see also In re Move Artwork Copyright Litig., 473 F. Supp. 2d 1381, 1382 (J.P.M.L. 2007).

More importantly, and more troublesome, is the fact that this potential transfer would involve many different and unrelated plaintiffs and defendants, which argues against centralization

of the cases.    Moreover, as discussed below, the cases contain differing legal claims based on state statutory schemes unique to each state.    Thus, while there may appear to be some similar factual discovery between the cases, the number of different defendants and plaintiffs and the unique state law claims would not make centralized discovery more efficient or economical.    The opposite is true.    Farm Bureau Property & Casualty is only named in the Utah Case and, consequently, requiring its participation in discovery with multitudes of other insurers with multiple claims, defenses, discovery and discovery issues that have no bearing on Farm Bureau Property & Casualty's liability, increases the defense costs to Farm Bureau Property & Casualty exponentially in order to address the relatively straightforward issues in the Utah Case.

Farm Bureau Property & Casualty has but a 2.75% share of the Utah market. The Complaint in the Utah case contains no specific reference to Farm Bureau Property & Casualty in any allegations.    Farm Bureau Property & Casualty is not involved in any of the four other cases. Farm Bureau Property & Casualty has no business presence in any of the other states where the other four actions have been filed, and no presence in Louisiana.    With such limited involvement, there is no legal justification for, and patent unfairness in, dragging Farm Bureau Property & Casualty into multi-district litigation in a jurisdiction completely foreign to where it does business.

The geographical locations of the pending cases do not favor centralization.    The other four cases are not located geographically near Utah (they are 1,300 to 1,875 miles away).    None of the pending cases are pending in any adjoining districts but are, in most instances, great distances apart. This is especially true of Utah.    Transferring the Utah Case to a district where Farm Bureau Property & Casualty is not located and does not do business poses a significant detriment

logistically and financially to Farm Bureau Property & Casualty, and is completely unjustified by its limited involvement.

In light of the unique position of Farm Bureau Property & Casualty, there do not appear to be any common questions of fact involving Farm Bureau Property & Casualty. It is difficult to anticipate a single advantage to Farm Bureau Property & Casualty from the proposed transfer. Certainly, no argument can be made that the transfer would be convenient for Farm Bureau Property & Casualty.

## II. INSURANCE INDUSTRY CLAIMS RAISE STATE LAW ISSUES NOT CONDUCIVE TO CENTRALIZATION

Plaintiffs claim, in support of their motion, that transfer is justified because of nearly identical factual allegations and numerous questions of common fact. However, the request overlooks the fact that the complaints also assert breaches of statutory obligations that are unique to the states where those claim have been filed. The insurance industry is highly dependent on state law and the various Plaintiffs assert claims that encompass different insurance regulatory schemes and laws. The MDL Panel has previously rejected motions to transfer in other insurance industry claims:

> These actions, involving antitrust claims pertaining to the title insurance industry, encompass different regulatory regimes in the states in which actions are pending along with variances in insurance regulation and law in each state. The proponents of centralization have not convinced us that any common questions of fact among these actions are sufficiently complex and/or numerous to justify Section 1407 transfer at this time.

In re Title Ins. Real Estate Settlement Procedures Act (RESPA) & Antitrust Litig., MDL 1951, 2008 WL

2413473 (June 9, 2008).    The Utah Case is governed, for the most part, by Utah law. There are no

common questions of fact among the five actions of sufficient complexity or so numerous as to

warrant centralization of these cases.

## III.    MULITDISTRICT LITIGATION IN THE SOUTHERN DISTRICT OF MISSISSIPPI OR THE EASTERN DISTRICT OF LOUSIANA WILL PRESENT UNDUE HARDSHIP TO FARM BUREAU PROPERTY & CASUALTY TO DEFEND AND REPRESENTS FORUM SHOPPING BY PLAINTIFFS

Plaintiffs propose transferring the pending federal cases to the United States District Court

for the Southern District of Mississippi.    Plaintiffs assert that this location is best because "[a]ll

Plaintiffs in all jurisdictions are represented by counsel located in Jackson, Mississippi."    However,

it is apparent with respect to the Utah Case, by the pleadings of record, that the Plaintiffs in the

Utah Case are only represented by two local, Salt Lake City, Utah attorneys and no Mississippi

counsel is identified in the Complaint as representing the Plaintiffs in the Utah Case.    Plaintiffs'

proposed transfer location further ignores the location of all of the Defendants' counsel who are

appearing in the case from diverse locations. Despite Plaintiffs' arguments to the contrary, litigating

in the Southern District of Mississippi would present an undue hardship to Farm Bureau Property &

Casualty because travel for its witnesses and counsel is not convenient and would, instead, be a

great expense and hardship. Jackson, Mississippi is, at best, a 4 hour and 35 minute plane ride from

Salt Lake City, Utah, at a cost of $538.00. There are no non-stop flights.    New Orleans is, at best, a

3 hour and 22 minute flight from Salt Lake City, Utah, at a cost of $488.00. There is no possible way

to fly in and out the same day. Overnight travel would be required.

8

Plaintiffs provide no further grounds or basis for transfer of the cases to Mississippi, or alternatively the District Court for the Eastern District of Louisiana in New Orleans, Louisiana. The Southern District of Mississippi has one of the five cases. The Eastern District of Louisiana has none. Neither is a convenient district to Utah parties. Plaintiffs' self-proclaimed, primary counsel practices in the Southern District of Mississippi, a district in which, according to his website, he has practiced his entire career. He ran for Governor of Mississippi in 2007. Accordingly, Plaintiffs' attempts to transfer four of these cases to the Southern District of Mississippi appears to be forum shopping.

In the event the Utah Case against Farm Bureau Property & Casualty is transferred to a court pursuant to the power and authority of the United States Judicial Panel on Multidistrict Litigation, Farm Bureau Property & Casualty proposes, as alternate forums, Salt Lake City, Utah, Denver, Colorado, or Kansas City, Missouri.

## CONCLUSION

Based on the foregoing, Defendant Farm Bureau Property & Casualty requests that Plaintiffs' motion for transfer, as to the Utah Case, be denied, or alternatively, that the case against Farm Bureau Property & Casualty be separated out and remanded to the District of Utah to be litigated on its own.

DATED this 12th day of June, 2014.

MORGAN, MINNOCK, RICE & JAMES, L.C.

/s/ Dennis R. James

Dennis R. James
136 S. Main, Suite 800
Salt Lake City, UT 84101
*Attorneys for Defendant Farm Bureau Property &
Casualty Insurance Company*

# EXHIBIT A

Mark L. Shurtleff (Utah State Bar #4666)
3135 South 1300 East
Salt Lake City, Utah 84106
(801) 441-9625
mark@shurtlefflawfirm.com

R. Reed Pruyn (Utah State Bar #9985)
276 South 1000 East
Salt Lake City, Utah 84102
Telephone: (801) 792-2410
rrpglaw@gmail.com

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH: CENTRAL DIVISION

| | |
|---|---|
| Alpine Straightening Systems, Inc. d/b/a Alpine Body Shop; A.F. Collision Repair, Inc.; Perks Auto Repair Inc.; Jenson Enterprises, Inc.; B & B Auto Body & Paint, Inc.; Lindon Collision Center L.L.C.; J.P.'s Custom Body & Paint, Inc. d/b/a J.P.'s Collision Center; Dave's Body Shop, Inc.; and Chris Body & Paint, Inc.;<br><br>            Plaintiffs,<br><br>vs.<br><br>State Farm Mutual Automobile Insurance Company, Farmers Insurance Group, Inc., Mid-Century Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Insurance Company, American Family Mutual Insurance Company, Progressive Classic Insurance Company, Progressive Direct Insurance Company, Geico General Insurance Company, Farm Bureau Property & Casualty Company, Liberty Mutual Fire Insurance Company, Allstate Property & Casualty Insurance | FIRST AMENDED COMPLAINT<br><br>**<u>JURY TRIAL DEMANDED</u>**<br><br><br>Case No.  2:14-cv-000261 PMW |

1

Company, USAA Casualty Insurance )
Company, United Services Automobile )
Association, Bristol West Insurance )
Company & Western United Insurance )
Company d/b/a AAA Insurance Company, )
Safeco Insurance Company of America, )
United Automobile Insurance Company and )
United Insurance Company d/b/a United )
Insurance Group, )
)
Defendants. )

Through undersigned counsel, the above-captioned Plaintiffs complain and allege:

## PARTIES

1.      Plaintiff Alpine Straightening Systems, Inc., doing business as Alpine Body Shop, is incorporated in and has its principal place of business in Utah.

2.      Plaintiff A.F. Collision Repair, Inc. is incorporated in and has its principal place of business in Utah.

3.      Plaintiff Perks Auto Repair Inc. is incorporated in and has its principal place of business in Utah.

4.      Plaintiff Jenson Enterprises Inc. is incorporated in and when still operating until recently had its principal place of business in Utah.

5.      Plaintiff B & B Auto Body & Paint, Inc., at times relevant to this action, was incorporated in and had its principal place of business in Utah.

6.      Plaintiff Lindon Collision Center L.L.C., is registered in and has its principal place of business in Utah.

7.     Plaintiff J.P.'s Custom Body & Paint, Inc., doing business as J.P.'s Collision Center, is incorporated in and has its principal place of business in Utah.

8.     Plaintiff Dave's Body Shop, Inc. is incorporated in and has its principal place of business in Utah.

9.     Plaintiff Chris Body & Paint, Inc. is incorporated in and has its principal place of business in Utah.

10.    Defendant State Farm Mutual Automobile Insurance Company ("*State Farm*") is registered with the Utah Department of Insurance to do business and is doing business within Utah, its corporate headquarters are located at One State Farm Plaza in Bloomington, Illinois and it may be served with process through its registered designated agent, Paul L. Short, 10619 South Jordan Gateway, Suite 300 in South Jordan, Utah.

11.    Defendant Farmers Insurance Group, Inc. is registered with the Utah Department of Insurance to do business and is doing business within Utah, its corporate headquarters are located at 4680 Wilshire Boulevard in Los Angeles, California and it may be served through its registered designated agent, Corporation Service Company at 2180 South 1300 East in Salt Lake City, Utah. [1]

12.    Defendant Mid-Century Insurance Company ("*Mid-Century*"), upon information and good faith belief is a subsidiary of Farmers, is registered with the Utah Department of Insurance

---

[1] Upon information and good faith belief, Defendant Farmers Insurance Group, Inc. acquired Defendant Mid-Century Insurance Company (see Paragraph 9, infra,) in 2011 or 2012 and has since been operating in Utah as or through Mid-Century, but it is unknown to Plaintiffs if Mid-Century acquired the liabilities of Farmers at issue herein.

to do business and is doing business within Utah, its corporate headquarters are located at 4680
Wilshire Boulevard in Los Angeles, California and it may be served through its designated
registered agent, Corporation Service Company at 2180 South 1300 East in Salt Lake City, Utah.

13.    Defendant Allstate Fire and Casualty Insurance Company is registered with the Utah
Department of Insurance to do business and is doing business within Utah, its corporate
headquarters are located at 3075 Sanders Road, Suite H1 E in Northbrook, Illinois and it may be
served through its registered designated agent, CT Corporation System at 1108 East South Union
Avenue in Midvale, Utah.

14.    Defendant Allstate Insurance Company is registered with the Utah Department of
Insurance to do business and is doing business within Utah, its corporate headquarters are
located at 2775 Sanders Road in Northbrook, Illinois and it may be served through its registered
designated agent, CT Corporation System at 1108 East South Union Avenue in Midvale, Utah.

15.    Defendant American Family Mutual Insurance Company is registered with the Utah
Department of Insurance to do business and is doing business within Utah, its headquarters are
located at 6000 American Parkway in Madison, Wisconsin and it may be served through its
registered designated agent, CT Corporation System at 1108 East South Union Avenue in
Midvale, Utah.

16.    Defendant Progressive Classic Insurance Company is registered with the Utah
Department of Insurance to do business and is doing business within Utah, its corporate
headquarters are located at 6300 Wilson Mills Road in Mayfield Village, Ohio and it may be
served through its registered designated agent, CT Corporation System at 1108 East South Union
Avenue in Midvale, Utah.

4

17.     Defendant Progressive Direct Insurance Company is registered with the Utah Department of Insurance to do business and is doing business within Utah, its corporate headquarters are located at 6300 Wilson Mills Road in Mayfield Village, Ohio and it may be served through its registered designated agent, CT Corporation System at 1108 East South Union Avenue in Midvale, Utah.

18.     Defendant Geico General Insurance Company is registered with the Utah Department of Insurance to do business and is doing business within Utah, its corporate headquarters are located at 5260 Western Avenue in Chevy Chase, Maryland and it may be served through its registered designated agent, CT Corporation System at 1108 East South Union Avenue in Midvale, Utah.

19.     Defendant Farm Bureau Property & Casualty Company is registered with the Utah Department of Insurance to do business and is doing business within Utah, its corporate headquarters are located at 5400 University Avenue in West Des Moines, Iowa, 50266, and it may be served through its registered designated agent, CT Corporation System at 1108 East South Union Avenue in Midvale, Utah.

20.     Defendant Liberty Mutual Fire Insurance Company is registered with the Utah Department of Insurance to do business and is doing business within Utah, its corporate headquarters are located at 175 Berkeley Street in Boston, Massachusetts, 02116, and it may be served through its registered designated agent, Corporation Service Company at 2180 South 1300 East in Salt Lake City, Utah.

21.     Defendant Allstate Property & Casualty Insurance Company is registered with the Utah Department of Insurance to do business and is doing business within Utah, its corporate

headquarters are located at 2775 Sanders Road in Northbrook, Illinois and it may be served through its registered designated agent, CT Corporation System at 1108 East South Union Avenue in Midvale, Utah.

22.     Defendant USAA Casualty Insurance Company is registered with the Utah Department of Insurance to do business and is doing business within Utah, its corporate headquarters are located at 9800 Fredericksburg Road, F3E, in San Antonio, Texas, 78288, and it may be served through its registered designated agent, CT Corporation System at 1108 East South Union Avenue in Midvale, Utah.

23.     Defendant United Services Automobile Association is registered with the Utah Department of Insurance to do business and is doing business within Utah, its corporate headquarters are located at 9800 Fredericksburg Road, E3E, in San Antonio, Texas, 78288, and it may be served through its registered designated agent, CT Corporation System at 1108 East South Union Avenue in Midvale, Utah.

24.     Defendant Bristol West Insurance Company is registered with the Utah Department of Insurance to do business and is doing business within Utah, its corporate headquarters are located at 900 South Pine Island Route, Suite 600 in Plantation, Florida, 33324, and it may be served through its registered designated agent, Corporation Service Company at 2180 South 1300 East in Salt Lake City, Utah.

25.     Defendant Western United Insurance Company is registered with the Utah Department of Insurance to do business and is doing business within Utah as AAA Insurance Company, its corporate headquarters are located at 3055 Oak Road, MS-W340 in Walnut Creek, California,

6

94597, and it may be served through its registered designated agent, CT Corporation System at 1108 East South Union Avenue in Midvale, Utah.

26.     Defendant Safeco Insurance Company of America is registered with the Utah Department of Insurance to do business and is doing business within Utah, its corporate headquarters are located at 1001 Fourth Avenue, Safeco Plaza in Seattle, Washington 98154, and it may be served through its registered designate agent, Corporation Service Company at 2180 South 1300 East, Suite 650 in Salt Lake City, Utah.

27.     Defendant United Automobile Insurance Company is registered with the Utah Department of Insurance to do business and is doing business within Utah, its corporate headquarters are located at 1313 NW 167th Street in Miami Gardens, Florida 33169-5739, and it may be served through its registered designated agent, National Registered Agents, Inc. at 1108 East South Union Ave. in Midvale, Utah.

28.     Defendant United Insurance Company, doing business as United Insurance Group, is registered with the Utah Department of Insurance to do business and is doing business within Utah, its corporate headquarters are located at 4956 North 300 West, Suite 101 in Provo, Utah 84604-5880 and it may be served with process at that location through its agent Lynn Gordon Connelly who is registered in that capacity with Utah's Division of Corporations and Commercial Code.

## JURISDICTION AND VENUE

29.     This Court has original jurisdiction over the Sherman Act claims stated below, pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1391(b)(2).

7

30.    A substantial part of the events, acts and omissions giving rise to said claims occurred in this United States judicial District.

## FACTS

31.    Each Plaintiff is in the business of repair of motor vehicles that have been involved and damaged in a collision.

32.    Each Defendant is an insurer providing automobile policies to consumers throughout Utah.

33.    Each Plaintiff has done business at various times over the course of years with the Defendants' policyholders and claimants by providing them motor vehicle collision repair service.

34.    Each Defendant is responsible for payment for those repairs for their respective policyholders and claimants.

35.    Over the course of several years, the Defendants have engaged in an ongoing, concerted and intentional course of action and conduct, with State Farm acting as the spearhead, to improperly and illegally control and depress automobile damage repair costs to the detriment of the Plaintiffs and the substantial profit of the Defendants.

36.    One of the methods by which the Defendants exert control over Plaintiffs' businesses is by way of entering program agreements with the individual Plaintiffs. Although each Defendant's program agreements have unique titles, such agreements are known generally and generically within the collision repair industry as direct repair program agreements (*"DRPs"*)."

37.    DRPs were presented to the Plaintiffs as a mutually beneficial opportunity. In exchange for providing certain concessions of price, priority and similar matters, the individual Defendants would list the body shop as a preferred provider.

38.    However, the concessions demanded by the individual Defendants in exchange for remaining on the direct repair program were not balanced by the purported benefits. The Defendants, particularly State Farm, have utilized these agreements to exert control over the Plaintiffs' businesses in a variety of manners, well beyond that of an ordinary business agreement.

39.    Defendants, particularly State Farm, have engaged in an ongoing pattern and practice of coercion and implied threats to the pecuniary health of the individual Plaintiff's businesses in order to force compliance with unreasonable and onerous concessions. Failure to comply results in removal from the program (s) combined with improper "steering" of customers away from the individual Plaintiff's business or simply punishment to decrease the number of customers utilizing the individual Plaintiff's services.

40.    According to the Utah Department of Insurance in its 2012 Company Market Share Report, State Farm had as of December 31, 2012 captured about 16.29% of the private passenger automobile insurance business in Utah; its next closest competitor, Defendant Mid-Century, had 10.93%, and State Farm's next closest competitor, the Allstate Defendants (collectively Allstate Fire and Casualty Insurance Company, Allstate Insurance Company and Allstate Property & Casualty Insurance Company, which are each named above), had 10.83%. See attached hereto as Exhibit A, a true and correct copy of the 2012 Utah Department of Insurance Private Passenger Automobile Insurance Company Market Share Report.

9

41.    Overall, the Defendants controlled about 66.13% of the 2012 private passenger automobile insurance market in Utah. Id.

42.    Of the remaining 134 insurance companies reporting earned premiums in the Utah market for private passenger automobile insurance in 2012, the average share for each was approximately 0.25%. Id.

43.    Based upon these (the most recent available) statistics, State Farm holds the unchallenged dominant position within the automobile insurance industry in the Utah market. Id.

44.    The vast majority of the Plaintiffs' business is generated by customers for whom the Defendants are responsible to pay repair costs; the insurance-paying customers account for between seventy and ninety-five percent of each shop's revenue; and sister federal courts to this Court acknowledge the significant role insurance companies play in funding automobile collision repairs and their concomitant ability and market power to exert substantial influence and control over where consumers will take a wrecked car for repair. See, e.g., *Allstate Ins. Co. v. Abbott*, 2006 U.S. Dist. LEXIS 9342 (N.D. Tex. 2006) (aff'd, *Allstate Ins. Co. v. Abbott*, 495 F.3d 151 (5th Cir. 2007).

45.    As a general proposition, each DRP contains a general statement that the body shop will charge the respective insurance company no more for any particular repair than is the going rate in the market area.

46.    State Farm however systematically establishes the "market rate" through what it calls "surveys."

47.    The geographical boundaries of the market area "surveyed" are wholly within the control and direction of State Farm.

48.     Under the terms of its DRP, State Farm is not required to disclose any of the methods by
which it establishes the market area, the market rate or any other factual bases for its
determination of the "market rate."  The program agreement contains no provisions for
independent and neutral verification of the data utilized or any oversight not directly within the
control and direction of State Farm.  The shops are simply required to blindly accept State
Farm's pronouncements regarding these matters.

49.     Previously State Farm conducted this "survey" by sending written material to an auto
body shop of which a representative would complete and return to State Farm; more recently,
State Farm has developed and employs a business to business web-based portal whereby an auto
body shop completes and submits the "survey" online.

50.     State Farm does not perform a survey in the traditional sense, where information is
obtained and results produced, establishing a baseline of all the shops' information.  With respect
to labor rates as an example, State Farm's methodology does not represent what the majority of
shops in a given area charge: quite the contrary.  State Farm's methodology lists the shops in a
given market (as determined by State Farm) with the highest rates submitted at the top of the list
and descending to the least expensive hourly rates at the bottom.

51.     State Farm then lists how many technicians a shop employs or the number of work bays
available, whichever is lesser.  Those are then totaled and State Farm employs its "half plus one"
method.  If, for example, a State-Farm-determined market area has a total of fifty (50)
technicians or work bays, State Farm's "half plus one" math equals twenty six (26).  With that
number, starting at the bottom of the shop list, State Farm counts each shops technicians until the

11

"half plus one" number is reached, twenty six in this example, and whatever that shop's rate happens to be is declared the market rate.

52.     There could, arguably, be some validity to this method if it accounted for the variance in shop size, skill of technicians and other quality variables, which it does not. However, the greatest problem with this method is that State Farm can and does alter the labor rates inputted by the shops, decreasing those arbitrarily deemed too high—or higher than State Farm wishes to pay.

53.     By altering the rates entered, particularly those of the larger shops, those with the most technicians and/or work bays, State Farm manipulates the results to achieve a wholly artificial "market rate." The results are therefore not that of an actual survey reflecting the designated market area but created from whole cloth by State Farm.

54.     Furthermore, State Farm attempts to prohibit the shops from discussing with each other the information each has entered into the survey, asserting any discussion may constitute illegal price fixing. State Farm selects the geographical boundaries of the "survey" and retains the right to alter the "survey" results (and does so) all without disclosure or oversight.

55.     Another electronic page on State Farm's business portal is known as the Dashboard/Scorecard. See attached hereto as Exhibit B a true and correct copy of State Farm's Dashboard.

56.     The Dashboard has substantive impact on several levels. It serves as the record of an individual shop's survey responses. It also provides a "report card" and rating of the individual shop based primarily upon three criteria: quality, efficiency and competitiveness.

57.     Within the quality criterion, the shop's reported customer satisfaction, customer complaints and quality issues identified by an audit are scored.

58.     The efficiency criterion evaluates repair cycle time—the number of days a vehicle is in the shop as determined by a cars' drop-off and pickup dates.

59.     The competitiveness criterion analyzes the average estimate for each State Farm repair, the cost of parts, whether a vehicle is repaired or replacement parts are utilized and the number of hours to complete a repair and similar matters.  See page 2 of Exhibit B, a true and correct copy of a State Farm Score or Report Card.

60.     In rating a shop, 1000 total points are possible, but State Farm claims it is under no obligation to disclose the weight or total number of points allocated to each factor in reaching a shop's "score," particularly those factors included under the competitiveness criterion; and State Farm has refused to disclose its method of determining competitiveness even to its own team leaders.

61.     State Farm maintains complete and unsupervised authority to determine an individual shop's rating, and it is therefore possible for a shop to have no customer complaints, high customer satisfaction, no issues identified on an audit and complete compliance with all repair cycle time and efficiency requirements, and yet still have a low rating; it is also possible for a shop to have multiple customer complaints, poor customer satisfaction, numerous issues identified on audit and complete failure to meet efficiency expectations, and yet have a very high rating.

62.     Significantly, a shop's Dashboard and Report Card rating determines its position on the preferred provider list; so, when a claimant logs on to the State Farm web site seeking an auto

13

body repair shop, shops with the highest ratings are displayed first whereas ones with low ratings will be at the bottom of the list—often pages and pages down—making it difficult and less likely for a potential customer to find a shop rated arbitrarily low by State Farm and its criteria.

63.     Additionally, if a customer calls State Farm, State Farm's practice and/or procedure is for its representative to identify and recommend preferred shops holding the highest Dashboard/Report Card rating.

<u>**Suppression of Labor Rates**</u>

64.     Among the questions asked by the "survey" is the individual shop's hourly labor rate. This information is supposed to be provided by the shop and to accurately reflect that shop's labor rate to allow State Farm to reach a "market rate." The actual method by which State Farm determines "market rate" however is described above.

65.     If the labor rate information received is unilaterally deemed unacceptable by State Farm, a State Farm representative will contact the shop and demand the labor rate be lowered to an amount State Farm wishes to pay.

66.     If the body shop advises a labor rate increase is required, a State Farm representative will inform the body shop it is the only shop in the area that has raised its rates, and therefore the higher rate does not conform to the "market rate" and is thus a violation of the direct repair program agreement.

67.     At various points in time, State Farm has utilized this method of depressing labor rates, telling each shop it is the only one to demand a higher labor rate when, in fact, multiple shops have attempted to raise their labor rates and advised State Farm of such.

68.     Should a shop persist in its efforts to raise its labor rate, State Farm will take one or more of several "corrective" measures: it will go into the individual shop's survey responses and alter the labor rate listed without the knowledge or consent of the shop and use this lowered rate to justify its determination of the "market rate"; it will threaten to remove the shop from the direct repair program to coerce compliance; and/or it will remove the shop from the direct repair program.

69.     The net effect of this tactic is to allow State Farm to manipulate the "market rate" and artificially suppress the labor rate and control shops for the relevant geographic area, an area which, again, is defined solely by State Farm and is not subject to either neutral verification or even disclosure.

70.     The remaining Defendants, intentionally and by agreement and/or conscious parallel behavior, specifically advised the Plaintiffs they will pay no more than State Farm pays for labor. These Defendants have not conducted any surveys of their own in which the Plaintiffs have participated to determine market rates. These Defendants have agreed to join forces with State Farm, the dominant market holder, and each other to coerce the Plaintiffs into accepting the artificially created less-than-market labor rates through intimidation and threats to the Plaintiffs' financial ability to remain operating.

### Suppression of Repair and Material Costs

71.     Through various methods, the Defendants have, independently and in concert, instituted numerous methods of coercing the Plaintiffs into accepting less than actual and/or market costs for materials and supplies expended in completing repairs.

15

72.     Some of these methods include but are not limited to: refusal to compensate the shops for replacement parts when repair is possible though strongly not recommended based upon the shop's professional opinion; utilizing used and/or recycled parts rather than new parts, even when new parts are available and a new part would be the best and highest quality repair to the vehicle; requiring discounts and/or concessions be provided, even when doing so requires the shop to operate at a loss; and de facto compulsory utilization of parts procurement programs.

73.     Defendants have also intentionally and repeatedly failed to abide by auto repair industry standards as set forth below.

74.     Three leading motor vehicle collision repair estimating databases are in ordinary usage within the auto body collision repair industry: (a) ADP; (b) CCC; and (c) Mitchell.

75.     These databases provide software and average costs associated with particularized types of repairs to create estimates.  The estimates generated by these databases include the ordinary and customary repairs, repair time (labor) and materials necessary to return a vehicle to its pre-accident condition.  These databases and the estimates they generate are accepted within the industry as reliable starting points, subject to the shop's expert opinions and the necessarily present variability between the "best-case scenario"[2] presented by the procedure databases and the actual needs of a particular repair.

---

[2] The database procedure pages set forth the anticipated repairs, repair times and materials for repair of an undamaged vehicle using original manufacturer equipment which are specifically designed to fit that particular vehicle.  Wrecked cars are obviously not undamaged and original manufacturer parts are not always used, particularly with repairs for which State Farm and the other Defendants are responsible for payment, which can substantially affect repair procedures required, repair times and necessary materials.

76.     Over the course of years, the Defendants have admitted the accepted position of the estimating databases within the industry but have nonetheless engaged in a course of conduct of refusing to make full payment for procedures and materials. In many instances the Defendants will even refuse to allow the body shop to perform required procedures and processes, thereby requiring the Plaintiffs to perform less-than-quality work or suffer a financial loss.

77.     A true and correct copy of a non-exhaustive list of procedures and processes for which the Defendants refuse to pay and/or pay in full is attached hereto as Exhibit C.

78.     At the same time, Defendants selectively rely upon and assert the definitive nature of these databases when doing so is to their respective financial advantage. For example, when a particular repair requires twenty hours of labor to complete but the database estimate notes fifteen hours of labor is standard for that type of repair, Defendants will cite the database estimate and pay for only fifteen hours of labor time.

79.     With respect to materials, while it is inarguable that materials must be expended to repair automobile collisions, Defendants simply refuse to pay for them, asserting materials are part of the cost of doing business. This is Defendants' position even when the authoritative databases specifically state that such materials are not included in the repair procedure pages.

80.     The only partial exception to this practice is paint. While paint costs are factored into the amount the Defendants will pay, it is calculated via a formula which compensates the shops for only half the actual cost on average. The Defendants' method of calculating paint payment does not take into account the type of paint needed/used, the requirement that paint be mixed to match the existing color of the vehicle, the actual amount of paint required to complete the job, the type

17

of vehicle involved or any other factor. Defendants pay only based upon arbitrary caps that are self-established and unrelated to actual costs to the Plaintiffs.

81.     This continued refusal and/or failure to compensate Plaintiffs for ordinary and customary repairs and materials costs places Plaintiffs in the untenable position of either performing incomplete and/or substandard repairs and thus breaching their obligation to automobile owners to return vehicles to pre-accident condition, or performing labor and expending materials without proper compensation and thereby jeopardizing continuing viability of the business enterprise.

82.     The automobile collision repair industry has expressed dissatisfaction with the insurance industry's practices of refusing to compensate shops fully and fairly for repair procedures and materials and endorsing application of estimating databases only when it was in insurance companies' financial best interest to do so.

83.     Despite several of Defendants' acknowledgements of the estimating databases' general legitimacy and applicability, Defendants continue to collude and refuse to pay Plaintiffs and other auto body shops for all necessary and proper repairs, labor and materials.

84.     State Farm also imposes restrictions upon the Plaintiffs' ability to obtain and utilize quality replacement parts and materials. As part of its DRP agreement, State Farm asserts it has the unilateral authority to enter into separate agreements with manufacturers, distributors or suppliers of automotive parts, supplies or materials.

85.     Despite the fact that the shops have no involvement in the negotiation of those separate agreements, they are de facto required to abide by the pricing agreements reached, even if they do not make purchases with those vendors. Although presented as an option to participate, the optional language is rendered nugatory by additional language which requires the shops to accept

as payment only that amount for which the parts and/or materials could have been obtained through those agreements. Participation or lack thereof is therefore completely meaningless and the optional language is illusory.

86.     Further, shops are required to "stack" this purportedly optional usage of separate agreements with other discounts required elsewhere within the agreement. Thus, the limitation on payment, refusal to compensate for nearly all materials and the compelled discounts end in a shop operating at or near a loss for each repair.

87.     Though the foregoing conduct is led by State Farm as the dominant market share holder, all Defendants have agreed to and/or consciously parallel the compensation ceilings established by State Farm and do so solely to increase their profits but to the substantial detriment of the Plaintiffs.

**Steering**

88.     The Defendants also regularly and routinely "steer" their policyholders away from auto body shops perceived as not complying with an aspect of their Program Agreement and towards shops they favor and perceive as compliant, causing substantial harm to Plaintiffs' business reputation and operations.

89.     Examples of steering include advising that a particular chosen shop is not on the preferred provider list, advising that quality issues have arisen with that particular shop, that complaints have been received about that particular shop from other consumers, that the shop charges more than any other shop in the area and these additional costs will have to be paid by the consumer, that repairs at the disfavored shop will take much longer than at other, preferred

19

shops and the consumer will be responsible for rental car fees beyond a certain date, and that the Defendant cannot guarantee the work of that shop as it can at other shops.

90.    These statements have been made about Plaintiffs without any attempt to ascertain the truth thereof, and some of the ills recited, which implicitly criticize the shops, are wholly attributable to the insurer itself.  For instance, the statement that repairs will take longer at a disfavored shop–consumers are not told that the delay in beginning repairs is due to the insurer's decision to delay sending an appraiser to evaluate the damage, a decision completely and wholly within the control of the Defendants.  Asserting the shops charges more is often not a function of what the shop actually charges but the Defendants' refusal to pay, also a factor wholly and completely within the control of the respective Defendant.  Yet both are conveyed to the public as problems with the shop.

91.    The most egregious of these statements, that the Defendant cannot guarantee the work of the shop, is particularly misleading as none of the Defendants offer a guarantee for repair work. Instead, the Defendants require the body shops to provide a limited lifetime guarantee on work performed.  In the event additional work is required, the body shop is required to do so without any additional payment, or to indemnify the insurer for costs if work is performed at another shop.

92.    Thus, while it may be a facially truthful statement that an insurer cannot guarantee the work of a particular shop, the clearly understood inference is that it can and will guarantee the work of another, favored shop, which is simply not true.

///

///

20

## Intentional Nature of Defendants' Conduct

93.     In 1963, a Consent Decree was entered in *United States vs. Association of Casualty and Surety Companies*, et al, Docket No. 3106, upon a complaint filed in the United States Southern District of New York wherein the allegations included violations of Sections 1 and 3 of the Sherman (Antitrust) Act. A true and correct copy of this Decree is attached hereto as Exhibit D.

94.     Specific wrongful conduct actions supporting the allegations included: (1) requiring repair rather than replacement of damaged parts; (2) replacing damaged parts with used rather than new parts; (3) obtaining discounts on new replacement parts; (4) establishing strict labor time allowances; (5) suppressing the hourly labor rate; (6) and channeling auto repairs to those repair shops which would abide by the insurer estimates and boycotting those which refused. The Complaint alleged further a conspiracy and combination in unreasonable restraint of trade and commerce.

95.     The Consent Decree ordered and provided for the following relief and enjoined the defendants therein from: (1) placing into effect any plan, program or practice which has the purpose or effect of (a) directing, advising or otherwise suggesting that any person or firm do business or refuse to do business with any independent or dealer franchised automotive repair shop with respect to the repair of damage to automobile vehicles; (2) exercising any control over the activities of any appraiser of damages to automotive vehicles; (3) fixing, establishing, maintaining or otherwise controlling the prices to be charged by independent or dealer franchised automotive repair shops for the repair of damage to automotive vehicles or for replacement parts or labor in connection therewith, whether by coercion, boycott or intimidation or by the use of flat rate or parts manuals or otherwise.

96.     Whether or not any current Defendant is legally bound by this Decree, the actions described in the present cause fall squarely within those prohibited by the Decree. The Decree has been "on the books" for fifty years and is well-known within the insurance industry.

97.     The Consent Decree being known to the Defendants, it can only be said that Defendants were fully aware their actions, plans, programs, and combinations and/or conspiracy to effectuate the same have been willful, intentional and conducted with complete and reckless disregard for the rights of the Plaintiffs.

## CLAIMS FOR RELIEF

### COUNT ONE:
### QUANTUM MERUIT: CONTRACT IMPLIED IN LAW, QUASI-CONTRACT AND UNJUST ENRICHMENT

98.     Plaintiffs incorporate and restate by reference herein all allegations set forth above.

99.     Quantum meruit rests in part upon the equitable legal principle that a party is not permitted to enrich itself at the expense of another and that a legally enforceable promise in the nature of a contractual one is implied in and by law that Defendants must compensate Plaintiffs for the value of the labor and materials furnished by their collision repair services.

100.    Plaintiffs have conferred legally cognizable benefits upon the Defendants by expending material resources and performing valuable collision repair services for Defendants and to properly repair their insured policyholders/claimants' vehicles, and Defendants are required as the insurers to pay completely for all aspects of those collision repair services.

22

101.   Plaintiffs have conferred these benefits upon Defendants and their insureds with a reasonable expectation of full compensation for the value of all aspects of the collision repair services.

102.   Defendants appreciate and know of the benefits that Plaintiffs have conferred upon them and their insureds' vehicles, but Defendants unjustly and inequitably compensate Plaintiffs if and how Defendants' choose rather than commensurate with the actual value of the benefits.

103.   Defendants thereby actually retain for themselves substantial measures of the value of the benefits conferred and enrich themselves unjustly at the expense of the Plaintiffs under circumstances making it inequitable for them to do so.

104.   Under the circumstances of this action, the value of the benefits which Defendants are retaining unjustly and inequitably is the monetary cost of all the services, which the Plaintiffs furnish and expend in repairing the Defendants' policyholders/claimants' vehicles back on the road in pre-accident condition, and for which monetary cost the Defendants are required to pay on behalf of their insureds.

105.   Plaintiffs are equitably entitled to recover all the value of the benefits they confer upon Defendants, to wit, complete payment for and compensation of the labor furnished and materials the Plaintiffs expend in the necessary proper collision repair services performed for Defendants and their policyholders' vehicles.

## COUNT TWO: QUASI-ESTOPPEL

106.   Plaintiffs incorporate and restate by reference herein all allegations set forth above.

23

107.    Quasi-estoppel is an equitable legal principle that precludes a party from acting like a chameleon, asserting to another's disadvantage a right that is inconsistent with a position the former has previously taken or in which the former has previously acquiesced.

108.    Defendants rely selectively upon and assert the general validity of the industry accepted estimate databases when it is to their advantage to do so, and then to the Plaintiffs substantial economic disadvantage, they change their previously taken position when it would not be financially advantageous for them to remain consistent with their reliance upon the databases.

109.    Defendants have acknowledged the general or baseline application of the databases but continue to say one thing but then rely selectively upon the databases according to when it would financially benefit them and substantially harm the Plaintiffs.

110.    Defendants' inconsistent and contradictory positions regarding the industry databases continue to engender distrust between the auto insurance and collision repair industries and financially harm the Plaintiffs, who must absorb labor and materials costs when, at Defendants' whim, they insinuate themselves into the repair business and improperly decide what are necessary and reasonable repairs and refuse to compensate the Plaintiffs for entire costs of repairs that benefit the Defendants and their insureds.

111.    Plaintiffs seek to have the Defendants estopped from changing their reliance on the general applicability of the databases to denying such applicability when it results in them refusing to fully compensate and thereby financially harm and disadvantage the Plaintiffs.

///

///

///

24

## COUNT THREE:

## TORTIOUS INTERFERENCE WITH ECONOMIC RELATIONS

112.   Plaintiffs incorporate and restate by reference herein all allegations set forth above.

113.   Defendants intentionally interfere with the Plaintiffs' existing and/or prospective economic relations by steering large amounts of business away from them as alleged above.

114.   Defendants do so for an improper purpose and/or by improper means.

115.   Defendants' improper purpose is to punish and economically beat the Plaintiffs into submission for complaining about Defendants manipulating and setting artificial and oppressive market labor rates, for refusing to kowtow and rather charge fair and actual market labor rates and/or for complaining about Defendants' selective application of the estimate databases, setting of arbitrary price ceilings and refusals to compensate the actual and entire labor and materials repair costs.

116.   Defendants' concomitant improper purpose is to steer policyholders toward auto body shops not because they do the best quality work or provide the best value but rather to improperly reward those shops for submission and silence about Defendants' economic aggrandizement of themselves at the expense of the collision repair industry.

117.   In addition, Defendants have employed improper means since steering is contrary to Utah statutory, regulatory and/or common laws.

118.   Defendants are injuring the Plaintiffs by improperly decreasing the volume of their business operations, forcing the Plaintiffs to absorb collision repair costs and expenses of which the Defendants should be paying on behalf of their policyholders and damaging their reputations amongst consumers who are possibly victimized themselves by the steering.

25

## COUNT FOUR: CONVERSION

119.    Plaintiffs incorporate and restate by reference herein all allegations set forth above.

120.    Conversion requires willful interference with property without lawful justification where the party entitled to the property is deprived of its use or possession and entitled to its immediate possession at the time of the conversion.

121.    Plaintiffs have performed reasonable and necessary quality work and expended appropriate labor and materials to do it, for which Defendants are required to but refuse to pay or pay in full, even after demand is made.

122.    Defendants' action constitutes wilful interference with Plaintiffs' property—their money, the fruits of their labor—without lawful justification, since Defendants did not perform the work are not in the business of determining what a reasonable and necessary quality repair entails or costs.

123.    Defendants' action further constitutes wrongful possession of Plaintiffs' money, which accounts for the reasonable and necessary costs of the labor spent and materials used to repair and restore to pre-accident condition the vehicles of Defendants' policyholders/claimants.

## COUNT FIVE: VIOLATIONS OF THE SHERMAN ACT– PRICE-FIXING

124.    Plaintiffs incorporate and restate by reference herein all allegations set forth above.

125.    Pursuant to 15 U.S.C. §1, the Sherman Act prohibits contracts, combinations or conspiracies in restraint of trade, and such agreements are illegal if (1) their purpose or effect is to create an unreasonable restraint of trade, or (2) they constitute a per se violation of the statute.

26

126.    Through parallel actions and/or explicit agreement, the Defendants have formed and engaged in a vertical conspiracy or combination to impose maximum price limits upon the Plaintiffs for their products and services.

127.    The United States Supreme Court has noted that agreements to fix maximum prices, no less than those to fix minimum prices, cripple the freedom of traders and thereby restrain their ability to sell in accordance with their own judgment. *Kiefer-Stewart Co. Vs. Joseph E. Seagram and Sons, Inc.*, 340 U.S. 211 (1951).

128.    The Defendants and co–conspirators have engaged in combination and conspiracy in unreasonable restraint of trade and commerce in the motor vehicle collision repair industry.

129.    The Defendants and co–conspirators have engaged in combination and conspiracy in unreasonable restraint of trade and commerce in the motor vehicle collision repair industry.

130.    The aforesaid combination and/or conspiracy has consisted of a continuing agreement in concert of action among the Defendants and co-conspirators to control and suppress automobile damage repair costs, automobile material repair costs through coercion and intimidation of the Plaintiffs.

131.    Evidence of this conspiracy or combination include, but is not limited to, admission before witnesses that members of the insurance industry meet regularly to discuss such matters in and amongst themselves but refuse to allow members of the collision repair industry to attend those meetings, explicit statements by Defendants that they will conform to State Farm's unilaterally imposed payment structure, admitting the baseline application of the industry databases but failing to conform to that minimum standard, followed by the uniformity of action by all Defendants.

132.    The aforesaid offenses have had, among others, the effect of eliminating competition within the motor vehicle collision repair industry, elimination of some auto body shops from a substantial segment of the business in the industry for refusing or attempting to refuse the Defendants' arbitrary price ceilings, and subjecting shops to collective control and supervision of prices by the Defendants and co-conspirators.

133.    Neither the Plaintiffs nor other members of the collision repair industry are able to engage in competitive business practices since the Defendants have effectively and explicitly determined what their business practices will be.

134.    The Defendants actions individually and certainly collectively have violated federal law and directly caused the Plaintiffs to incur substantial damages. Defendants are continuing and will continue said offenses unless the relief herein prayed for is granted.

## COUNT SIX: VIOLATION OF THE SHERMAN ACT– BOYCOTT

135.    Plaintiffs incorporate and restate by reference herein all allegations set forth above.

136.    The United States Supreme Court has repeatedly held that boycotts constitute a violation of the Sherman Act, 15 U. S. C. §1. "Boycott" has been defined within the antitrust law context as "pressuring a party with whom one has a dispute by withholding, or enlisting others to withhold, patronage or services from the target." *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 541 (1978).

137.    The Defendants have engaged, and continue to engage, in boycott and boycotting activity through their repeated actions of steering customers away from the Plaintiffs through allegations and intimations of poor quality work, of poor efficiency in performing work, of questionable

28

business practices, of overcharging, impugning integrity, and similar actions so as to withhold and\or enlist others to withhold patronage from the Plaintiffs.

138.    This boycott was specifically designed to pressure, intimidate, and/ or coerce the Plaintiffs into complying with the maximum-price limitations unilaterally conceived by Defendant State Farm and agreed to collusively by the other Defendants.

139.    It is irrelevant for purposes of the Sherman antitrust boycott activity that the Plaintiffs and Defendants are not direct competitors within the same industry. The United States Supreme Court has directly addressed this issue in *St. Paul Fire and Marine Insurance Company*, supra, stating, "[B]oycotters and the ultimate target need not be in a competitive relationship with each other." 438 U.S. at 543.

140.    Enlistment of third parties as a means of compelling capitulation by the boycotted group has long been viewed as conduct supporting a finding of unlawful boycott. *Id.*

141.    In the present matter, the Defendants have engaged in not only a boycott, but have regularly, routinely and purposefully enlisted the aid of unwitting third parties in carrying out their boycott through their intentional acts of steering those customers away from the Plaintiffs.

142.    Defendants' boycott was created and carried out with the sole purpose and intent of financially coercing and threatening the Plaintiffs into complying with the Defendants price caps.

143.    Defendants actions are violation of federal law and have directly caused the Plaintiffs to incur substantial damages. Defendants are continuing and will continue said offenses unless the relief requested herein is granted.

///

///

29

## PRAYER FOR RELIEF

As a result of the Defendants' actions, Plaintiffs have been substantially harmed and will continue to suffer unless the relief requested herein is granted; the Plaintiffs therefore pray for the following relief:

A.     Compensatory damages for or restitution of the value of all non-payment and underpayment for work completed on behalf of the Defendants' insureds and claimants as determined by a jury.

B.     Compensation for the lost revenue through artificial suppression of labor rates as determined by a jury.

C.     Damages sufficient to compensate Plaintiffs for lost business opportunities as determined by a jury.

D.     Treble damages, reasonable attorneys' fees and costs  for violations of the Sherman Act, as required under 15 U.S.C. § 15.

E.     Injunctive relief prohibiting the Defendants from further engaging in any of the following:

    (1)     Placing into effect any plan, program or practice which has the purpose or effect of:

        (a)     directing, advising or otherwise suggesting that any person or firm do business or refuse to do business with any Plaintiff automotive repair shop with respect to the repair of damage to automobiles.

        (b)     fixing, establishing or otherwise controlling the prices to be charged by independent or dealer franchised automotive repair shops for the repair of damage to automobiles or for replacement parts or labor in connection therewith whether by coercion, boycott or intimidation, or by the use of flat rate or parts manuals or otherwise.

(2)     Placing into effect any plan, program or practice which explicitly requires or has the purpose or effect of requiring Plaintiffs to participate in any parts procurement program.

(3)     Providing untruthful and/or unverified information to customers or third persons regarding the quality, cost, efficiency or reputation of any Plaintiff ("steering").

(4)     Prohibiting Defendant State Farm from altering or amending any Plaintiff response to its market labor rate "survey" without the express written permission of the affected Plaintiff.

F.      Punitive and/or exemplary damages sufficient to punish Defendants for their

intentional acts and to deter each Defendant and similar entities from pursuing

this illegal and improper conduct in the future.

G.      Pre- and post-judgment interest.

H.      Any additional relief the Court deems just and appropriate.

## CONCLUSION

WHEREFORE, Plaintiffs demands a judgment against Defendants in an amount

sufficient to fully compensate Plaintiffs for damages incurred and/or restitution of the value of

benefits lost to them as a result of Defendants' conduct with appropriate pre- and post-judgment

interest, equitable relief as set forth above, punitive damages, attorneys' fees, expenses, costs and

any other relief to which the Court deems the Plaintiffs are entitled.

Respectfully submitted this _2_nd day of June, 2014

> For Plaintiffs Straightening Systems, Inc. d/b/a Alpine Body Shop, A.F. Collision Repair, Inc., Perks Auto Repair, Inc., Jenson Enterprises, Inc., B&B Auto Body & Paint, Inc., Lindon Collision Center, LLC, J.P.'s Custom Body & Paint, Inc.

31

d/b/a J.P.'s Collision Center, Dave's Body Shop, Inc. and Chris Body & Paint, Inc.

BY:    ___/s/ R. Reed Pruyn_____

       R. REED PRUYN (USB # 9985)

ATTORNEYS FOR PLAINTIFFS

# EXHIBIT B

# UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

MDL No. 2557    IN RE: AUTO BODY SHOP ANTITRUST LITIGATION

**CASE CAPTION:**    In the United States District Court District of Utah, Central Division

*ALPINE STRAIGHTENING SYSTEMS, INC. d/b/a ALPINE BODY SHOP, et. al. v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et. al.,*

Civil No. 2:14-cv-00261 PMW

## AFFIDAVIT OF KARL T. OLSON

1. I am Vice President, Assistant General Counsel for Farm Bureau Property & Casualty Insurance Company.

2. Farm Bureau Property and Casualty Insurance Company is an Iowa corporation doing business in the states of Utah, Arizona, Iowa, Nebraska, Minnesota, South Dakota, Kansas, and New Mexico.

3. Farm Bureau Property & Casualty Insurance Company does not do business and has no business presence in Mississippi, Florida, Indiana, Tennessee or Louisiana.

Karl T. Olson

Date: June 11, 2014

STATE OF IOWA    )
                 : ss.
COUNTY OF POLK   )

Subscribed and sworn to before me this 11ᵗʰ day of June, 2014.

NOTARY PUBLIC

LANA S. DEERING
COMMISSION NO. 198430
MY COMMISSION EXPIRES
9-15-16

# EXHIBIT C

# UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

MDL No. 2557      IN RE: AUTOBODY SHOP ANTITRUST LITIGATION

**CASE CAPTION:**      In the United States District Court District of Utah, Central Division

*ALPINE STRAIGHTENING SYSTEMS, INC. d/b/a ALPINE BODY SHOP, et. al. v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et. al.,*

Civil No. 2:14-cv-00261 PMW

## AFFIDAVIT OF LYNETTE AMBROSE

1. I am a paralegal for the law firm of Morgan Minnock Rice & James.

2. In a brief search on June 10, 2014, on Expedia.com, I found the offered flights to Jackson, Mississippi from Salt Lake City for the random dates of July 15 to July 22, 2014. The print-out of those flights is attached as Exhibit "1". There are no nonstop flights from Salt Lake City, Utah to Jackson, Mississippi.

3. In a brief search on June 10, 2014, on Expedia.com, I found the offered flights to New Orleans, Louisiana from Salt Lake City for the random dates of July 15 to July 22, 2014. The print-out of those flights is attached as Exhibit "2".

4. There is no possible way to fly in and out of Jackson, Mississippi or New Orleans, Louisiana from Salt Lake City, Utah the same day. Overnight travel would be required for both.

_____
Lynette Ambrose

Date: June 11, 2014

STATE OF UTAH          )
                                          : ss.
County of Salt Lake    )

Subscribed and sworn to before me this 11th day of June, 2014.

LEXI BALLING
Notary Public  State of Utah
My Commission Expires on:
February 5, 2018
Comm. Number: 670478

_____
NOTARY PUBLIC

# EXHIBIT 1

Account ∨   My Scratchpad 2 ∨   My Trips   Support ∨

Home   Vacation Packages   Hotels   Cars   Flights   Cruises   Things to Do   Deals   Rewards   Mobile: Get Triple Points

✕  Salt Lake City (SLC) to Jackson (JAN)     Tue, Jul 15 - Tue, Jul 22     1 Traveler                              Change search 🔎

## Select your departure to Jackson Tue, Jul 15

Prices are roundtrip per person, includes all taxes and fees. Additional baggage fees may apply.

**Why shop with us?**
- ✔ Best Price Guarantee
- ✔ No Expedia fees to change or cancel

**Filter your results by**

| Stops | From: |
|---|---|
| ☐ 1 Stop (19) | $470 |
| ☐ 2+ Stops (21) | $486 |

| Airlines | From: |
|---|---|
| ☐ US Airways (4) | $470 |
| ☐ United (13) | $511 |
| ☐ American Airlines (15) | $538 |

Show all

**Departure time**
- ☐ Early Morning (12:00a - 4:59a)
- ☐ Morning (5:00a - 11:59a)
- ☐ Afternoon (12:00p - 5:59p)
- ☐ Evening (6:00p - 11:59p)

**Your recent searches**

Salt Lake City to Jackson
Tue, Jul 15 - Tue, Jul 22
Cheapest flight was $470
Searched just now

Salt Lake City to Cozumel  ✕
Wed, Jun 25 - Wed, Jul 2
Cheapest flight was $663
Searched 2 weeks ago

---

Sort by:    Departure    Arrival    Duration    Price ∨

**Save up to $570\*** when you book your Flight and Hotel together.    ✕
Shop Flight + Hotel

| | | | | Cheapest |
|---|---|---|---|---|
| 11:59p → | 10:14a | 9h 15m, 1 stop | | $470 .00 |
| SLC | JAN | CLT | | roundtrip per person |
| Salt Lake City | Jackson | +1 day | | |

·  **US AIRWAYS**          US Airways 4532 operated by US AIRWAYS EXPRESS-PSA
                          AIRLINES

Show Flight Details ⌄    📶  ⚞  ▶                                    **Select**

---

| | | | | |
|---|---|---|---|---|
| 1:35p → | 11:35p | 9h 0m, 2 stops | | $485 .50 |
| SLC | JAN | PHX, CLT | | roundtrip per person |
| Salt Lake City | Jackson | | | |

·  **US AIRWAYS**          US Airways 4545 operated by US AIRWAYS EXPRESS-PSA
                          AIRLINES

Show Flight Details ⌄    📶  ⚞  ▶                                    **Select**

---

| | | | | |
|---|---|---|---|---|
| 6:35a → | 3:44p | 8h 9m, 1 stop | | $511 .00 |
| SLC | JAN | IAH | | roundtrip per person |
| Salt Lake City | Jackson | | | |

**UNITED** 🟦          United 3826 operated by EXPRESSJET AIRLINES DBA UNITED
                      EXP

Show Flight Details ⌄    📶  ⚞  ▶                                    **Select**

---

| | | | | 1 left at  Best Value |
|---|---|---|---|---|
| 6:00a → | 11:35a | 4h 35m, 1 stop | | $538 .00 |
| SLC | JAN | DFW | | roundtrip per person |
| Salt Lake City | Jackson | | | |

**American Airlines** ✈          American Airlines 2807 operated by ENVOY AIR AS
                                 AMERICAN EAGLE

Show Flight Details ⌄    📶  ⚞  ▶                                    **Select**

---

| | | | | 5 left at |
|---|---|---|---|---|
| 1:01a → | 8:25a | 6h 24m, 1 stop | | $604 .00 |
| SLC | JAN | ATL | | roundtrip per person |
| Salt Lake City | Jackson | | | |

**△ DELTA**

Show Flight Details ⌄    📶  ⚞  ▶                                    **Select**

---

| | | | | |
|---|---|---|---|---|
| 8:30a → | 4:49p | 7h 19m, 1 stop | | $604 .00 |
| SLC | JAN | ATL | | roundtrip per person |

SPONSORED LISTINGS

**Fly to Jackson from $79\***
Jackson Fares Just Dropped! Book Now to Lock in the Best Deals.
www.lowfares.com/Jackson-Fares

**Lufthansa Flights**
Fly Lufthansa to Europe and beyond. Low fares. Book online now.
www.lufthansa.com/

**Flights to Jackson 75%Off**
Jackson Fares Just Dropped. Find Best Prices. Just One Search!
jackson.cheapflightnow.com/

Salt Lake City     Jackson

**△ DELTA**

Show Flight Details ⌄    ☂   ⚹   ▶             **Select**

---

                                      4 left at

1:30p  →   7:40p     5h 10m, 1 stop       **$643** .50
SLC         JAN       DFW               roundtrip per person
Salt Lake City   Jackson

American Airlines ↘    American Airlines 2894 operated by ENVOY AIR AS
                         AMERICAN EAGLE

Show Flight Details ⌄    ☂   ⚹   ▶             **Select**

---

8:30a  →   3:23p     5h 53m, 1 stop       **$654** .00
SLC         JAN       ATL                roundtrip per person
Salt Lake City   Jackson

**△ DELTA**

Show Flight Details ⌄    ☂   ⚹   ▶             **Select**

---

9:44a  →   4:49p     6h 5m, 1 stop        **$654** .00
SLC         JAN       ATL                roundtrip per person
Salt Lake City   Jackson

**△ DELTA**

Show Flight Details ⌄    ☂   ⚹   ▶             **Select**

---

3:10p  →   10:25p     6h 15m, 1 stop       **$654** .00
SLC         JAN       ATL                roundtrip per person
Salt Lake City   Jackson

**△ DELTA**

Show Flight Details ⌄    ☂   ⚹   ▶             **Select**

---

                                      3 left at

7:20a  →   3:23p     7h 3m, 1 stop        **$654** .00
SLC         JAN       ATL                roundtrip per person
Salt Lake City   Jackson

**△ DELTA**

Show Flight Details ⌄    ☂   ⚹   ▶             **Select**

---

7:20a  →   4:49p     8h 29m, 1 stop       **$654** .00
SLC         JAN       ATL                roundtrip per person
Salt Lake City   Jackson

**△ DELTA**

Show Flight Details ⌄    ☂   ⚹   ▶             **Select**

---

                                      2 left at

5:45a  →   3:26p     8h 41m, 2 stops     **$669** .50
SLC         JAN       DEN, CLT           roundtrip per person
Salt Lake City   Jackson

           United 6292 operated by SKYWEST DBA UNITED EXPRESS &
✈        US Airways 4787 operated by US AIRWAYS EXPRESS-PSA
           AIRLINES

Show Flight Details ⌄    ☂   ⚹   ▶             **Select**

---

### Compare Before You Book

All the best deals in one place.

- **⊗⊗tripadvisor** ›
- **priceline.com** ›
- **cheapOair** ›
- **Hotwire** ›
- **ORBITZ** ›
- **travelocity** ›
- **SEARCH NOW**

*powered by BookingBuddy*

| | | | 5 left at |
|---|---|---|---|
| 11:59p → 10:14a | 9h 15m, 1 stop | | $672 .00 |
| SLC           JAN | CLT | | roundtrip per person |
| Salt Lake City  Jackson | +1 day | | |

American Airlines
American Airlines 448 operated by US Airways & American Airlines 5182 operated by US AIRWAYS EXPRESS-PSA AIRLINES

Show Flight Details ⋎    ⌒ ⌇ ▶                                    **Select**

---

| | | | |
|---|---|---|---|
| 12:35p → 8:17p | 6h 42m, 1 stop | | $691 .00 |
| SLC           JAN | IAH | | roundtrip per person |
| Salt Lake City  Jackson | | | |

**UNITED** ▨
United 4359 operated by EXPRESSJET AIRLINES DBA UNITED EXP

Show Flight Details ⋎    ⌒ ⌇ ▶                                    **Select**

---

| | | | |
|---|---|---|---|
| 1:55p → 10:25p | 7h 30m, 1 stop | | $714 .00 |
| SLC          JAN | ATL | | roundtrip per person |
| Salt Lake City  Jackson | | | |

▲**DELTA**

Show Flight Details ⋎    ⌒ ⌇ ▶                                    **Select**

---

| | | | 3 left at |
|---|---|---|---|
| 12:50p → 10:05p | 8h 15m, 1 stop | | $716 .50 |
| SLC           JAN | ORD | | roundtrip per person |
| Salt Lake City  Jackson | | | |

**UNITED** ▨
United 3463 operated by SHUTTLE AMERICA DBA UNITED EXPRESS & United 4237 operated by EXPRESSJET AIRLINES DBA UNITED EXP

Show Flight Details ⋎    ⌒ ⌇ ▶                                    **Select**

---

| | | | 2 left at |
|---|---|---|---|
| 5:00p → 8:00a | 14h 0m, 2 stops | | $728 .50 |
| SLC        JAN | SEA, DFW | | roundtrip per person |
| Salt Lake City  Jackson | +1 day | | |

✈ American Airlines 3668 operated by ENVOY AIR AS AMERICAN EAGLE

Show Flight Details ⋎    ⌒ ⌇ ▶                                    **Select**

---

| | | | 2 left at |
|---|---|---|---|
| 5:00p → 9:50a | 15h 50m, 2 stops | | $728 .50 |
| SLC        JAN | SEA, DFW | | roundtrip per person |
| Salt Lake City  Jackson | +1 day | | |

✈ American Airlines 3381 operated by ENVOY AIR AS AMERICAN EAGLE

Show Flight Details ⋎    ⌒ ⌇ ▶                                    **Select**

---

| | | | 2 left at |
|---|---|---|---|
| 5:00p → 11:35a | 17h 35m, 2 stops | | $728 .50 |
| SLC         JAN | SEA, DFW | | roundtrip per person |
| Salt Lake City  Jackson | +1 day | | |

✈ American Airlines 2807 operated by ENVOY AIR AS AMERICAN EAGLE

Show Flight Details ⋎    ⌒ ⌇ ▶                                    **Select**

2 left at

| | | | |
|---|---|---|---|
| **10:38a** → **5:33p** | 5h 55m, 1 stop | | **$737** .00 |
| SLC JAN | IAH | | roundtrip per person |
| Salt Lake City Jackson | | | |

**UNITED**

United 4179 operated by EXPRESSJET AIRLINES DBA UNITED EXP & United 4239 operated by EXPRESSJET AIRLINES DBA UNITED EXP

Show Flight Details ⌄ 📶 ⫶ ▶ **Select**

---

5 left at
| | | | |
|---|---|---|---|
| **10:55a** → **8:17p** | 8h 22m, 2 stops | | **$737** .50 |
| SLC JAN | PHX, IAH | | roundtrip per person |
| Salt Lake City Jackson | | | |

United 4359 operated by EXPRESSJET AIRLINES DBA UNITED EXP

Show Flight Details ⌄ 📶 ⫶ ▶ **Select**

---

| | | | |
|---|---|---|---|
| **11:00a** → **8:11p** | 8h 11m, 1 stop | | **$789** .00 |
| SLC JAN | ATL | | roundtrip per person |
| Salt Lake City Jackson | | | |

**△ DELTA**

Show Flight Details ⌄ 📶 ⫶ ▶ **Select**

---

5 left at
| | | | |
|---|---|---|---|
| **8:25a** → **2:00p** | 4h 35m, 1 stop | | **$797** .00 |
| SLC JAN | DFW | | roundtrip per person |
| Salt Lake City Jackson | | | |

American Airlines ⟍ American Airlines 3444 operated by ENVOY AIR AS AMERICAN EAGLE

Show Flight Details ⌄ 📶 ⫶ ▶ **Select**

---

5 left at
| | | | |
|---|---|---|---|
| **4:25p** → **10:15p** | 4h 50m, 1 stop | | **$798** .50 |
| SLC JAN | DFW | | roundtrip per person |
| Salt Lake City Jackson | | | |

American Airlines ⟍ American Airlines 3243 operated by ENVOY AIR AS AMERICAN EAGLE

Show Flight Details ⌄ 📶 ⫶ ▶ **Select**

---

2 left at
| | | | |
|---|---|---|---|
| **8:06p** → **8:00a** | 10h 54m, 2 stops | | **$854** .50 |
| SLC JAN | SEA, DFW | | roundtrip per person |
| Salt Lake City Jackson | +1 day | | |

American Airlines 3668 operated by ENVOY AIR AS AMERICAN EAGLE

Show Flight Details ⌄ 📶 ⫶ ▶ **Select**

---

2 left at
| | | | |
|---|---|---|---|
| **8:06p** → **9:50a** | 12h 44m, 2 stops | | **$854** .50 |
| SLC JAN | SEA, DFW | | roundtrip per person |
| Salt Lake City Jackson | +1 day | | |

American Airlines 3381 operated by ENVOY AIR AS AMERICAN EAGLE

Show Flight Details ⌄ 📶 ⫶ ▶ **Select**

---

2 left at
| | | | |
|---|---|---|---|
| **8:06p** → **11:35a** | 14h 29m, 2 stops | | **$854** .50 |

| | | | |
|---|---|---|---|
| SLC<br>Salt Lake City | JAN<br>Jackson | SEA, DFW<br>+1 day | roundtrip per person |

American Airlines 2807 operated by ENVOY AIR AS
AMERICAN EAGLE

Show Flight Details ⊻  🤚  ✈

**Select**

---

| 10:25a → 10:15p | 10h 50m, 2 stops | **$927** .50 |
|---|---|---|
| SLC<br>Salt Lake City | JAN<br>Jackson | SEA, DFW | roundtrip per person |

Alaska Airlines 3485 operated by SKYWEST AIRLINES AS
ALASKA AIRLINE & American Airlines 3243 operated by
ENVOY AIR AS AMERICAN EAGLE

Show Flight Details ⊻  🤚  ✈

**Select**

---

2 left at

| 10:00p → 4:20p | 17h 20m, 2 stops | **$964** .50 |
|---|---|---|
| SLC<br>Salt Lake City | JAN<br>Jackson<br>+1 day | SEA, DFW | roundtrip per person |

American Airlines 2845 operated by ENVOY AIR AS
AMERICAN EAGLE

Show Flight Details ⊻  🤚  ✈

**Select**

---

2 left at

| 10:00p → 6:15p | 19h 15m, 2 stops | **$964** .50 |
|---|---|---|
| SLC<br>Salt Lake City | JAN<br>Jackson<br>+1 day | SEA, DFW | roundtrip per person |

American Airlines 2909 operated by ENVOY AIR AS
AMERICAN EAGLE

Show Flight Details ⊻  🤚  ✈

**Select**

---

2 left at

| 10:00p → 7:40p | 20h 40m, 2 stops | **$964** .50 |
|---|---|---|
| SLC<br>Salt Lake City | JAN<br>Jackson<br>+1 day | SEA, DFW | roundtrip per person |

American Airlines 2894 operated by ENVOY AIR AS
AMERICAN EAGLE

Show Flight Details ⊻  🤚  ✈

**Select**

---

| 5:00p → 8:32a | 14h 32m, 2 stops | **$981** .50 |
|---|---|---|
| SLC<br>Salt Lake City | JAN<br>Jackson<br>+1 day | LAX, IAH | roundtrip per person |

Alaska Airlines 4499 operated by ENVOY AIR AS AMERICAN
EAGLE & United 4189 operated by EXPRESSJET AIRLINES
DBA UNITED EXP

Show Flight Details ⊻  🤚  ✈

**Select**

---

| 3:05p → 8:32a | 16h 27m, 2 stops | **$981** .50 |
|---|---|---|
| SLC<br>Salt Lake City | JAN<br>Jackson<br>+1 day | LAX, IAH | roundtrip per person |

Alaska Airlines 4499 operated by ENVOY AIR AS AMERICAN
EAGLE & United 4189 operated by EXPRESSJET AIRLINES
DBA UNITED EXP

Show Flight Details ⊻  🤚  ✈

**Select**

---

| 1:50p → 8:32a | 17h 42m, 2 stops | **$981** .50 |
|---|---|---|
| SLC<br>Salt Lake City | JAN<br>Jackson<br>+1 day | LAX, IAH | roundtrip per person |

Alaska Airlines 4499 operated by ENVOY AIR AS AMERICAN
EAGLE & United 4189 operated by EXPRESSJET AIRLINES

DBA UNITED EXP

Show Flight Details ⌄   ⌅  ⌖  ▶                                    **Select**

---

11:20a  →  8:32a          20h 12m, 2 stops              **$981** .50
SLC        JAN            LAX, IAH                     roundtrip per person
Salt Lake City  Jackson  +1 day

      Alaska Airlines 4498 operated by ENVOY AIR AS AMERICAN
⤫     EAGLE & United 4189 operated by EXPRESSJET AIRLINES
      DBA UNITED EXP

Show Flight Details ⌄   ⌅  ⌖  ▶                                    **Select**

---

7:00a  →  8:11p          12h 11m, 2 stops              **$1,045** .50
SLC        JAN            LAX, ATL                     roundtrip per person
Salt Lake City  Jackson

*Alaska Airlines*    Alaska Airlines 5007 operated by DELTA AIR LINES & Alaska
                    Airlines 5097 operated by DELTA AIR LINES

Show Flight Details ⌄   ⌅  ⌖  ▶                                    **Select**

---

8:05a  →  10:05p         13h 0m, 2 stops              **$1,165** .50
SLC        JAN            PDX, ORD                     roundtrip per person
Salt Lake City  Jackson

      Alaska Airlines 3499 operated by SKYWEST AIRLINES AS
⤫     ALASKA AIRLINE & United 4237 operated by EXPRESSJET
      AIRLINES DBA UNITED EXP

Show Flight Details ⌄   ⌅  ⌖  ▶                                    **Select**

---

                                                      1 left at
10:00p  →  2:12p         15h 12m, 2 stops              **$1,233** .50
SLC        JAN            SEA, ORD                     roundtrip per person
Salt Lake City  Jackson  +1 day

      United 5031 operated by EXPRESSJET AIRLINES DBA UNITED
⤫     EXP

Show Flight Details ⌄   ⌅  ⌖  ▶                                    **Select**

---

8:36a  →  10:05p         12h 29m, 2 stops              **$1,302** .50
SLC        JAN            PDX, ORD                     roundtrip per person
Salt Lake City  Jackson

      United 4237 operated by EXPRESSJET AIRLINES DBA UNITED
⤫     EXP

Show Flight Details ⌄   ⌅  ⌖  ▶                                    **Select**

---

SPONSORED LISTINGS

**Jackson Cheap Flights** Searching Cheap Flights to Jackson? Book Now & Save up to $15 OFF
fees! www.onetravel.com/Jackson-Cheap-Flights

**Cheap Flights to Jackson** Special Flight Offers on GOVOLO.com Hurry, Compare Prices & Book Now! flights-
jackson.govolo.com/

**New - $69 Airline Tickets** Fly Anywhere in The U.S. As Low As $89*! www.insanelycheapflights.com/

**Salt Lake City to Jackson** Book cheap flights to Jackson Book now . Easy, Fast and
Cheap! www.akfasttickets.com/jackson

**Give your feedback to help us make improvements.**

*Savings based on package bookings on our site from Sep 1 2013 -- Feb 28 2014, as compared to price if booked
separately. Savings will vary. Not available on all packages.

About Expedia   Rewards   Jobs   Investor Relations   Advertising   Media Resources   About Our Ads   Privacy Policy   Terms of Use
Site Map

**Partner Services** ⌄

**Global Sites** ⌄

**Other Links** ⌄

Expedia, Inc. is not responsible for content on external Web sites. ©2014 Expedia, Inc. All rights reserved.

# EXHIBIT 2

Account ∨    My Scratchpad ³ ∨    My Trips    Support ∨

Home   Vacation Packages   Hotels   Cars   Flights   Cruises   Things to Do   Deals   Rewards   Mobile: Get Triple Points

✈ Salt Lake City (SLC) to New Orleans (MSY)     Tue, Jul 15 - Tue, Jul 22     1 Traveler                    Change search 🔍

# Select your departure to New Orleans  Tue, Jul 15

Prices are roundtrip per person, includes all taxes and fees. Additional baggage fees may apply.

**Why shop with us?**
- ✔ Best Price Guarantee
- ✔ No Expedia fees to change or cancel

**Filter your results by**

Sort by:   Departure   Arrival   Duration   Price ∨

Save up to $570* when you book your Flight and Hotel together.    ✕
Shop Flight + Hotel



| Stops | From: |
|---|---|
| ☐ Nonstop (1) | $489 |
| ☐ 1 Stop (25) | $461 |
| ☐ 2+ Stops (14) | $483 |

| Airlines | From: |
|---|---|
| ☐ United (12) | $461 |
| ☐ US Airways (15) | $483 |
| ☐ Alaska Airlines (2) | $488 |

Show all

**Departure time**
- ☐ Early Morning (12:00a - 4:59a)
- ☐ Morning (5:00a - 11:59a)
- ☐ Afternoon (12:00p - 5:59p)
- ☐ Evening (6:00p - 11:59p)

**Your recent searches**



Salt Lake City to New Orleans
Tue, Jul 15 - Tue, Jul 22
Cheapest flight was $461
Searched just now

Salt Lake City to Jackson  ✕
Tue, Jul 15 - Tue, Jul 22
Cheapest flight was $470
Searched 5 minutes ago

Salt Lake City to Cozumel  ✕
Wed, Jun 25 - Wed, Jul 2
Cheapest flight was $663
Searched 2 weeks ago



---

| 1:21p → 11:29p | 9h 8m, 1 stop | 3 left at Cheapest |
|---|---|---|
| SLC        MSY | DEN | **$461** .00 |
| Salt Lake City    New Orleans | | roundtrip per person |

UNITED 🏳     United 3534 operated by SHUTTLE AMERICA DBA UNITED EXPRESS

Show Flight Details ⋁    📶  ⌀  ▶                              [ Select ]

---

| 6:35a → 12:36p | 5h 1m, 1 stop | |
|---|---|---|
| SLC        MSY | IAH | **$466** .50 |
| Salt Lake City    New Orleans | | roundtrip per person |

UNITED 🏳     United 3814 operated by EXPRESSJET AIRLINES DBA UNITED EXP

Show Flight Details ⋁    📶  ⌀  ▶                              [ Select ]

---

| 12:35p → 6:41p | 5h 6m, 1 stop | 1 left at |
|---|---|---|
| SLC        MSY | IAH | **$466** .50 |
| Salt Lake City    New Orleans | | roundtrip per person |

UNITED 🏳

Show Flight Details ⋁    📶  ⌀  ▶                              [ Select ]

---

| 5:08p → 11:29p | 5h 21m, 1 stop | |
|---|---|---|
| SLC        MSY | DEN | **$468** .00 |
| Salt Lake City    New Orleans | | roundtrip per person |

UNITED 🏳     United 4632 operated by EXPRESSJET AIRLINES DBA UNITED EXP

Show Flight Details ⋁    📶  ⌀  ▶                              [ Select ]

---

| 8:20p → 8:27a | 11h 7m, 2 stops | |
|---|---|---|
| SLC        MSY | PHX, IAH | **$483** .00 |
| Salt Lake City    New Orleans | +1 day | roundtrip per person |

✈

Show Flight Details ⋁    📶  ⌀  ▶                              [ Select ]

---

| 6:50p → 8:27a | 12h 37m, 2 stops | |
|---|---|---|
| SLC        MSY | PDX, IAH | **$488** .00 |
| Salt Lake City    New Orleans | +1 day | roundtrip per person |

SPONSORED LISTINGS

**Fly to New Orleans**
Cheap Flights to New Orleans. Book your flight on AirFastTickets!
www.airfasttickets.com/n ew-orleans

**Fly To New Orleans RT**
Save Big On Cheap Flights Tickets. Use Promo Code & Save More!
new-orleans-flights.cnetravel.com/

**$88+ New Orleans Flights**
Find Cheap Flights to New Orleans. Compare Fares up to 80% Off!
www.travelzoo.com/New -Orleans



Show Flight Details ⌄    📶   📵   ▶    **Select**

---

Best Value

| 5:07p → 9:29p | 3h 22m, Nonstop | **$488** .01 |
| SLC      MSY | | roundtrip per person |
| Salt Lake City   New Orleans | | |

▲ DELTA

Show Flight Details ⌄    📶   📵   ▶    **Select**

---

| 1:50p → 11:29p | 8h 39m, 2 stops | **$491** .01 |
| SLC      MSY | LAS, DEN | roundtrip per person |
| Salt Lake City   New Orleans | | |

✈ Alaska Airlines 2691 operated by HORIZON AIR AS ALASKA AIRLINES

Show Flight Details ⌄    📶   📵   ▶    **Select**

---

| 6:00a → 2:12p | 7h 12m, 1 stop | **$499** .01 |
| SLC      MSY | MSP | roundtrip per person |
| Salt Lake City   New Orleans | | |

▲ DELTA    Delta 3334 operated by ENDEAVOR AIR DBA DELTA CONNECTION

Show Flight Details ⌄    📶   📵   ▶    **Select**

---

| 1:50p → 11:25p | 8h 35m, 1 stop | **$499** .01 |
| SLC      MSY | LAX | roundtrip per person |
| Salt Lake City   New Orleans | | |

▲ DELTA

Show Flight Details ⌄    📶   📵   ▶    **Select**

---

1 left at

| 1:30p → 7:20p | 4h 50m, 1 stop | **$535** .00 |
| SLC      MSY | DFW | roundtrip per person |
| Salt Lake City   New Orleans | | |

American Airlines

Show Flight Details ⌄    📶   📵   ▶    **Select**

---

| 1:30p → 8:30p | 6h 0m, 1 stop | **$535** .00 |
| SLC      MSY | DFW | roundtrip per person |
| Salt Lake City   New Orleans | | |

American Airlines

Show Flight Details ⌄    📶   📵   ▶    **Select**

---

| 8:25a → 3:30p | 6h 5m, 1 stop | **$535** .00 |
| SLC      MSY | DFW | roundtrip per person |
| Salt Lake City   New Orleans | | |

American Airlines

Show Flight Details ⌄    📶   📵   ▶    **Select**

**Compare Before You Book**

All the best deals in one place.

⊙⊙ tripadvisor ›

priceline.com ›

cheapOair ›

Hotwire ›

ORBITZ ›

travelocity ›

SEARCH NOW ›

powered by BookingBuddy



| | | | |
|---|---|---|---|
| 6:00a → 1:10p | 6h 10m, 1 stop | | **$535** .00 |
| SLC        MSY | DFW | | roundtrip per person |
| Salt Lake City   New Orleans | | | |
| American Airlines | | | |
| Show Flight Details ⌄ | | | **Select** |

|  |  |  |  |
|---|---|---|---|
| | | | 2 left at |
| 4:25p → 11:35p | 6h 10m, 1 stop | | **$535** .00 |
| SLC        MSY | DFW | | roundtrip per person |
| Salt Lake City   New Orleans | | | |
| American Airlines | | | |
| Show Flight Details ⌄ | | | **Select** |

|  |  |  |  |
|---|---|---|---|
| | | | 4 left at |
| 10:55a → 10:24p | 10h 29m, 2 stops | | **$543** .51 |
| SLC        MSY | PHX, IAH | | roundtrip per person |
| Salt Lake City   New Orleans | | | |
| Show Flight Details ⌄ | | | **Select** |

|  |  |  |  |
|---|---|---|---|
| 5:10p → 8:27a | 14h 17m, 2 stops | | **$545** .01 |
| SLC        MSY | PHX, IAH | | roundtrip per person |
| Salt Lake City   New Orleans | +1 day | | |
| Show Flight Details ⌄ | | | **Select** |

|  |  |  |  |
|---|---|---|---|
| | | | 5 left at |
| 10:55a → 8:45p | 8h 50m, 2 stops | | **$561** .51 |
| SLC        MSY | PHX, IAH | | roundtrip per person |
| Salt Lake City   New Orleans | | | |
| Show Flight Details ⌄ | | | **Select** |

|  |  |  |  |
|---|---|---|---|
| 7:15a → 5:42p | 9h 27m, 2 stops | | **$563** .01 |
| SLC        MSY | PHX, IAH | | roundtrip per person |
| Salt Lake City   New Orleans | | | |
| Show Flight Details ⌄ | | | **Select** |

|  |  |  |  |
|---|---|---|---|
| 7:20a → 2:13p | 5h 53m, 1 stop | | **$575** .01 |
| SLC        MSY | ATL | | roundtrip per person |
| Salt Lake City   New Orleans | | | |
| ▲ DELTA | | | |
| Show Flight Details ⌄ | | | **Select** |

|  |  |  |  |
|---|---|---|---|
| 8:30a → 4:00p | 6h 30m, 1 stop | | **$575** .01 |
| SLC        MSY | ATL | | roundtrip per person |
| Salt Lake City   New Orleans | | | |
| ▲ DELTA | | | |

Show Flight Details ⌄   📶   ✈   ▶                                    **Select**

---

| 1:01a → 9:00a | 6h 59m, 1 stop | 3 left at |
|---|---|---|
| SLC        MSY | ATL | **$575** .01 |
| Salt Lake City    New Orleans | | roundtrip per person |

🔺 **DELTA**

Show Flight Details ⌄   📶   ✈   ▶                                    **Select**

---

| 9:50a → 5:52p | 7h 2m, 1 stop | **$575** .01 |
|---|---|---|
| SLC        MSY | MSP | roundtrip per person |
| Salt Lake City    New Orleans | | |

🔺 **DELTA**   Delta 5834 operated by COMPASS DBA DELTA CONNECTION

Show Flight Details ⌄   📶   ✈   ▶                                    **Select**

---

| 8:30a → 5:11p | 7h 41m, 1 stop | **$575** .01 |
|---|---|---|
| SLC        MSY | ATL | roundtrip per person |
| Salt Lake City    New Orleans | | |

🔺 **DELTA**

Show Flight Details ⌄   📶   ✈   ▶                                    **Select**

---

| 1:01a → 10:28a | 8h 27m, 1 stop | 5 left at |
|---|---|---|
| SLC        MSY | ATL | **$575** .01 |
| Salt Lake City    New Orleans | | roundtrip per person |

🔺 **DELTA**

Show Flight Details ⌄   📶   ✈   ▶                                    **Select**

---

| 8:30a → 6:53p | 9h 23m, 1 stop | **$575** .01 |
|---|---|---|
| SLC        MSY | ATL | roundtrip per person |
| Salt Lake City    New Orleans | | |

🔺 **DELTA**

Show Flight Details ⌄   📶   ✈   ▶                                    **Select**

---

| 9:44a → 6:53p | 8h 9m, 1 stop | **$610** .01 |
|---|---|---|
| SLC        MSY | ATL | roundtrip per person |
| Salt Lake City    New Orleans | | |

🔺 **DELTA**

Show Flight Details ⌄   📶   ✈   ▶                                    **Select**

---

| 9:45a → 5:48p | 7h 3m, 1 stop | **$638** .00 |
|---|---|---|
| SLC        MSY | DEN | roundtrip per person |
| Salt Lake City    New Orleans | | |

**FRONTIER**

Show Flight Details ⌄   📶   ✈   ▶                                    **Select**

---

| 10:55a → 7:20p | 7h 25m, 2 stops | 4 left at |
|---|---|---|
| | | **$641** .00 |



| SLC<br>Salt Lake City | MSY<br>New Orleans | PHX, DFW | roundtrip per person |

Show Flight Details ⌄    🛜  ✳  ▶    **Select**

---

| 9:44a → | 5:11p | 6h 27m, 1 stop | $652 .00 |
| SLC<br>Salt Lake City | MSY<br>New Orleans | ATL | roundtrip per person |

🔺 DELTA

Show Flight Details ⌄    🛜  ✳  ▶    **Select**

---

| 7:15a → | 4:51p | 8h 36m, 2 stops | $673 .01 |
| SLC<br>Salt Lake City | MSY<br>New Orleans | PHX, IAH | roundtrip per person |

United 4661 operated by EXPRESSJET AIRLINES DBA UNITED EXP

Show Flight Details ⌄    🛜  ✳  ▶    **Select**

---

|  |  |  | 5 left at |
| 11:59p → | 11:40a | 10h 41m, 2 stops | $684 .50 |
| SLC<br>Salt Lake City | MSY<br>New Orleans | CLT, ATL<br>+1 day | roundtrip per person |

Show Flight Details ⌄    🛜  ✳  ▶    **Select**

---

| 1:35p → | 11:35p | 9h 0m, 2 stops | $784 .00 |
| SLC<br>Salt Lake City | MSY<br>New Orleans | PHX, ATL | roundtrip per person |

Show Flight Details ⌄    🛜  ✳  ▶    **Select**

---

| 1:52p → | 11:26p | 8h 34m, 2 stops | $841 .00 |
| SLC<br>Salt Lake City | MSY<br>New Orleans | IND, CLT | roundtrip per person |

US Airways 3253 operated by US AIRWAYS EXPRESS-
REPUBLIC AIRLIN & US Airways 3253 operated by US
AIRWAYS EXPRESS-REPUBLIC AIRLIN

Show Flight Details ⌄    🛜  ✳  ▶    **Select**

---

|  |  |  | 4 left at |
| 8:25a → | 7:10p | 9h 45m, 2 stops | $885 .00 |
| SLC<br>Salt Lake City | MSY<br>New Orleans | MDW, ATL | roundtrip per person |

AirTran    AirTran Airways 4111 operated by Southwest Airlines

Show Flight Details ⌄    🛜  ✳  ▶    **Select**

---

|  |  |  | 5 left at |
| 11:59p → | 8:50a | 7h 51m, 1 stop | $915 .00 |
| SLC<br>Salt Lake City | MSY<br>New Orleans | CLT<br>+1 day | roundtrip per person |

·  US AIRWAYS

Show Flight Details ⅋    📶   ⋇   ▶                                    **Select**

---

| 1:35p | → | 11:50p | 9h 15m, 2 stops | **$955** **.51** |
| SLC | | MSY | PHX, ORD | roundtrip per person |
| Salt Lake City | | New Orleans | | |

🦅  American Airlines 4304 operated by REPUBLIC AIRLINES AS
    AMERICAN EAGL

Show Flight Details ⅋    📶   ⋇   ▶                                    **Select**

---

| 11:59p | → | 12:07p | 11h 8m, 1 stop | **$1,013** **.00** |
| SLC | | MSY | CLT | roundtrip per person |
| Salt Lake City | | New Orleans | +1 day | |

`  **US AIRWAYS**

Show Flight Details ⅋    📶   ⋇   ▶                                    **Select**

---

| 11:59p | → | 8:50a | 7h 51m, 1 stop | **$1,043** **.00** |
| SLC | | MSY | CLT | roundtrip per person |
| Salt Lake City | | New Orleans | +1 day | |

🦅  American Airlines 1747 operated by US Airways

Show Flight Details ⅋    📶   ⋇   ▶                                    **Select**

---

| 11:59p | → | 10:05a | 9h 6m, 1 stop | **$1,082** **.00** |
| SLC | | MSY | CLT | roundtrip per person |
| Salt Lake City | | New Orleans | +1 day | |

`  **US AIRWAYS**

Show Flight Details ⅋    📶   ⋇   ▶                                    **Select**

---

SPONSORED LISTINGS

**$49 New Orleans Flights** New Orleans Fares Just Dropped! Fastest Way to Save up to
80% flights.bookingwiz.com/NewOrleans

**$49 New Orleans Flights** New Orleans Fare Sale On Now! Hurry, Deals End Soon. www.farespotter.net/New-
Orleans-Flights

**New Orleans Flights** Compare And Save On A Wide Choice Of Flights To New Orleans
Today. www.cheapflights.com/

New Orleans Fares 65% OFF Save Up To 65% Today On Your Flight To New

### Give your feedback to help us make improvements.

*Savings based on package bookings on our site from Sep 1 2013 – Feb 28 2014, as compared to price if booked
separately. Savings will vary. Not available on all packages.



Time for a
**BEACH BREAK**                                          EXPLORE
                                                         BEACH VACATIONS

About Expedia   Rewards   Jobs   Investor Relations   Advertising   Media Resources   About Our Ads   Privacy Policy   Terms of Use
Site Map

**Partner Services** ⅋

**Global Sites** ⅋

**Other Links** ⅋

Expedia, Inc. is not responsible for content on external Web sites. ©2014 Expedia, Inc. All rights reserved.

# BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE: AUTOBODY SHOP ANTITRUST LITIGATION          MDL No. 2557

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of June, 2014, a copy of the foregoing FARM BUREAU PROPERTY & CASUALTY INSURANCE COMPANY'S RESISTANCE TO PLAINTIFFS' MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1407 was filed electronically through the ECF system. Service of this filing will be made on all ECF-registered counsel by operation of the Judicial Panel on Multidistrict Litigation's electronic filing system.

| S.D. Miss. / 3:14-cv-00012 | |
|---|---|
| Allison P. Fry<br>allison@eaveslaw.com | Clifford (Ford) K. Bailey, III<br>fbailey@wellsmar.com |
| Michael H. Carpenter<br>carpenter@carpenterlipps.com | Halbert E. Dockins, Jr.<br>hdockins@loohd.com |
| David Friederich Maron<br>dmaron@bakerdonelson.com | Jackson H. Ables, III<br>jables@danielcoker.com |
| Ellie F. Turnage<br>eturnage@loohd.com | John Arthur Eaves, Jr.<br>johnjr@eaveslaw.com |
| Michael Noel Watts<br>mwatts@holcombdunbar.com | Keith R. Raulston<br>kraulston@joneswalker.com |
| Jeffrey S. Cashdan<br>jcashdan@kslaw.com | Michael P. Kenny<br>mike.kenny@alston.com |
| Robert Bradley Best<br>bradbest@holcombdunbar.com | Walker Reece Gibson<br>wgibson@cctb.com |
| Dan W. Goldfine<br>dgoldfine@swlaw.com | William C. Griffin<br>bgriffin@curriejohnson.com |
| Amelia W. Koch<br>akoch@bakerdonelsion.com | Richard L. Fenton<br>richard.fenton@dentons.com |
| Michael Edward Mumford<br>mmumford@bakerlaw.com | William C. Brabec<br>bill.brabec@arlaw.com |
| Emerson Barney Robinson, III<br>barney.robinson@butlersnow.com | Joshua Grabel<br>jgrabel@swlaw.com |
| David L. Yohai<br>david.yohai@weil.com | |

| M.D. Fla. / 6:14-cv-00310 | |
|---|---|
| Alan Brent Geohagan<br>abrent@geohaganlaw.com | Allison P. Fry<br>allison@eaveslaw.com |
| Amelia W. Koch<br>akoch@bakerdonelsion.com | Christine A. Hopkinson<br>chopkinson@kslaw.com |

| | |
|---|---|
| Dan W. Goldfine<br>dgoldfine@swlaw.com, docket@swlaw.com | David L. Yohai<br>david.yohai@weil.com |
| Dennis F. Cantrell<br>dcantrell@csmlawfirm.com | Elizabeth Helmer<br>elizabeth.helmer@alston.com |
| Eric C. McNamar<br>emcnamar@lewiswagner.com | Ernest E. Vargo<br>evargo@bakerlaw.com |
| Francis X. Nolan<br>fnolan@nldhlaw.com | Hal K. Litchford<br>hlitchford@bakerdonelson.com |
| Jeffrey S. Cashdan<br>jcashdan@kslaw.com | Johanna W. Clark<br>jclark@cfjblaw.com |
| John A. Eaves, Jr.<br>johnjr@eaveslaw.com | John Patrick Marino<br>jmarino@sgrlaw.com |
| Joseph T. Kissane<br>joe.kissane@csklegal.com | Joshua Grabel<br>jgrabel@swlaw.com |
| Joshua Dustin Moore<br>jmoore@cfjblaw.com | Kymberly Kochis<br>kkochis@nldhlaw.com |
| Laura E. Besvinick<br>laura.besvinick@hoganlovells.com | Lindsey R. Trowell<br>ltrowell@sgrlaw.com |
| Lori J. Caldwell<br>lcaldwell@rumberger.com | Mark L. Hanover<br>mark.hanover@dentons.com |
| Michael Edward Mumford<br>mmumford@bakerlaw.com | Michael P. Kenny<br>mike.kenny@alston.com |
| Michael S. Vitale<br>mvitale@bakerlaw.com | Norman Kenneth Beck<br>nbeck@winston.com |
| Richard L. Fenton<br>Richard.fenton@dentons.com | Salomon Laguerre<br>slaguerre@bakerlaw.com |
| Steven F. Griffith, Jr.<br>sgriffith@bakerdonelson.com | Suzanne M. Lehner<br>Suzanne.lehner@qpwblaw.com |
| Thomas William Curvin<br>tom.curvin@sutherland.com | Thomas G. Rohback<br>trohback@axinn.com |
| John P. Mastando III<br>john.mastando@weil.com | Eric Shaun Hochstadt<br>Eric.hochstadt@weil.com |
| Brian J. D'Amico<br>brian.damico@weil.com | Edward Keenan Cottrell<br>ecottrell@sgrlaw.com |
| Matthew C. Blickensderfer<br>mblickensderfer@fbtlaw.com | Michael H. Carpenter<br>carpenter@carpenterlipps.com |

| S.D. Ind. / 1:14-cv-507 | |
|---|---|
| Allison Perry Fry<br>allison@eaveslaw.com | Brent R. Austin<br>baustin@eimerstahl.com |
| Brian Scott Jones<br>b.jones@boselaw.com | Curtis T. Jones<br>cjones@boselaw.com |
| Cynthia M. Locke<br>clocke@csmlawfirm.com | Dan W. Goldfine<br>dgoldfine@swlaw.com |
| Debra H. Miller<br>miller@millerfisher.com | Dennis F. Cantrell<br>dcantrell@csmlawfirm.com |
| Eric C. McNamar<br>emcnamar@lewiswagner.com | Ernest E. Vargo<br>evargo@bakerlaw.com |
| Heather Carson Perkins<br>heaher.perkins@faegrebd.com | Ian M. Fischer<br>ifischer@swlaw.com |
| Joel T. Nagle<br>jnagle@boselaw.com | John Arthur Eaves, Jr.<br>johnjr@eaveslaw.com |
| John B. Drummy<br>jdrummy@k-glaw.com | John Carl Trimble<br>jtrimble@lewiswagner.com |
| Julia E. Dimick<br>jdimick@alerdingcastor.com | Kathleen Ann DeLaney<br>kathleen@delaneylaw.net |
| Kathy Lynn Osborn<br>kathy.osborn@faegrebdcom | Kimberly E. Howard<br>khoward@smithfisher.com |
| Kymberly Kochis<br>kkochis@nldhlaw.com | Mark W. Sniderman<br>mark@snlawyers.com |
| Michael Nathaniel Beekhuizen<br>beekhuizen@carpenterlipps.com | Michael H. Carpenter<br>carpenter@carpenterlipps.com |
| Michael P. Kenny<br>Mike.kenny@alston.com | Michael Edward Mumford<br>mmumford@bakerlaw.com |
| Michael L. McCluggage<br>mmccluggage@eimerstahl.com | Michael S. McCarthy<br>Michael.mccarthy@faegrebd.com |
| Michael R. Nelson<br>mnelson@nldhlaw.com | Peter Todd Snow<br>snow@carpenterlipps.com |
| Richard L. Fenton<br>richard.fenton@dentons.com | Jeffrey S. Cashdan<br>jcashdan@kslaw.com |
| Rebecca Jean Maas<br>rmaas@smithfisher.com | Ryan Michael Hurley<br>ryan.hurley@faegrebd.com |
| Sarah C. Jenkins<br>Sarah.jenkins@faegrebd.com | Michael Noel Watts<br>mwatts@holcombdunbar.com |
| Rowe W. Snider<br>rsnider@lockelord.com | Robert Bradley Best<br>bradbest@holcombdunbar.com |
| Thomas William Curvin<br>tom.curvin@sutherland.com | Theodore J. Greeley<br>tgreeley@dykema.com |
| Lori McAllister<br>lmcallister@dykema.com | David L. Yohai<br>david.yohai@weil.com |

| W.D. Tenn. / 2:14-cv-2286 ||
|---|---|
| Allison P. Fry<br>allison@eaveslaw.com | Halbert E. Dockins, Jr.<br>hdockins@loohd.com |
| Jeffrey S. Cashdan<br>jcashdan@kslaw.com | John A. Eaves, Jr.<br>johnjr@eaveslaw.com |
| Michael Mumford<br>mmumford@bakerlaw.com | Michael P. Kenny<br>mike.kenny@alston.com |
| Norman Kenneth Beck<br>nbeck@winston.com | Richard L. Fenton<br>richard.fenton@dentons.com |
| Dan W. Goldfine<br>dgoldfine@swlaw.com | Amelia W. Koch<br>akoch@bakerdonelsion.com |
| Andrew Hume Owens<br>andrewowens@owenslawfirm.com | Michael H. Carpenter<br>carpenter@carpenterlipps.com |
| Michael Noel Watts<br>mwatts@holcombdunbar.com | Robert Bradley Best<br>bradbest@holcombdunbar.com |
| Thomas G. Rohback<br>trohback@axinn.com | David L. Yohai<br>david.yohai@weil.com |

| D. Utah / 2:14-cv-261 ||
|---|---|
| Allison P. Fry<br>allison@eaveslaw.com | Amy F. Sorenson<br>asorenson@swlawcom |
| Dan W. Goldfine<br>dgoldfine@swlaw.com | Jamie Lynne Halavais<br>jalavais@swlaw.com |
| Jared C. Fields<br>jtfields@swlaw.com | Mark L. Shurtleff<br>mark@shurtlefflawfirm.com |
| Michael Mumford<br>mmujmford@bakerlawcom | Michael P. Kenny<br>mike.kenny@alston.com |
| Robert Reed Pruyn<br>rrpglaw@gmail.com | Richard L. Fenton<br>richard.fenton@dentons.com |
| David Yohai<br>David.yohai@weil.com | Amelia W. Koch<br>akoch@bakerdonelsion.com |
| Michael S. McCarthy<br>Michael.mccarthy@faegrebd.com | Jeffrey S. Cashdan<br>jcashdan@kslaw.com |
| John A. Eaves, Jr.<br>johnjr@eaveslawcom | Richard Wardell Loveland<br>RLoveland@chdlawyers.com |

I further certify that a copy of the foregoing has been served upon the following parties by first-class U.S. mail, postage prepaid, this 12th day of June, 2014.

**MSS/3:14-cv-00012:**

None

**FLM/6:14-cv-00310:**

| | |
|---|---|
| Acceptance Indemnity Insurance Company<br>c/o Chief Financial Officer<br>200 E. Gaines Street<br>Tallahassee, FL 32399 | Direct General Insurance Company<br>c/o Chief Financial Officer<br>200 E. Gaines Street<br>Tallahassee, FL 32399 |
| First Acceptance Insurance Company, Inc.<br>c/o Chief Financial Officer<br>200 E. Gaines Street<br>Tallahassee, FL 32399 | Florida Farm Bureau General Insurance Co<br>c/o Chief Financial Officer<br>5700 SW 34th Street<br>Gainesville, FL 32608 |
| Infinity Auto Insurance Company<br>c/o Chief Financial Officer<br>200 E. Gaines Street<br>Tallahassee, FL 32399 | Horace Mann Insurance Company<br>c/o Chief Financial Officer<br>200 E. Gaines Street<br>Tallahassee, FL 32399 |
| Mercury Insurance Company of Florida<br>c/o Chief Financial Officer<br>200 E. Gaines Street<br>Tallahassee, FL 32399 | MGA Insurance Company, Inc.,<br>c/o Chief Financial Officer<br>200 E. Gaines Street<br>Tallahassee, FL 32399 |
| Ocean Harbor Casualty Insurance Company<br>c/o Chief Financial Officer<br>200 E. Gaines Street<br>Tallahassee, FL 32399 | National General Insurance Online, Inc.<br>c/o Chief Financial Officer<br>200 E. Gaines Street<br>Tallahassee, FL 32399 |
| Westfield Insurance Company<br>c/o Chief Financial Officer<br>200 E. Gaines Street<br>Tallahassee, FL 32399 | Old Republic Insurance Company<br>c/o Chief Financial Officer<br>200 E. Gaines Street<br>Tallahassee, FL 32399 |
| Windhaven Insurance Company<br>c/o Chief Financial Officer<br>200 E. Gaines Street<br>Tallahassee, FL 32399 | |

**IND/1:14-cv-00507:**

| | |
|---|---|
| Auto-Owners Insurance Co.<br>c/o CT Corporation System<br>150 West Market Street, Suite 800<br>Indianapolis, IN  46204 | |

**TNW/2:14-CV-02286:**

| | |
|---|---|
| Auto-Owners Insurance Co.<br>6101 Anacapri Boulevard<br>Lansing, MI  48917 | Direct General Insurance Co.<br>1281 Murfreesboro Road<br>Nashville, TN  37217 |
| First Acceptance Insurance Co. of Tennessee, Inc.<br>3813 Green Hills Village Drive<br>Nashville, TN  37215 | Pennsylvania National Mutual Casualty Insurance Co.<br>Two North Second Street<br>Harrisburg, PA  17101 |

**UT/2:14-cv-261:**

| | |
|---|---|
| Farmers Insurance Group<br>c/o Corporation Service Co.<br>2180 South 1300 East, Ste. 650<br>Salt Lake City, UT  84108 | |

/s/ Dennis R. James
Dennis R. James
MORGAN MINNOCK RICE & JAMES
136 S. Main, Suite 800
Salt Lake City, UT  84101
Telephone:  (801) 531-7888
Facsimile:  (801) 531-9732
djames@mmrj.com