**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

|  |  |  |
|---|---|---|
| | : | |
| **IN RE:  AUTO BODY SHOP** | : | |
| **ANTITRUST LITIGATION** | : | **MDL Docket No. 2557** |
| | : | |

<u>**THE ALLSTATE DEFENDANTS' MEMORANDUM IN RESPONSE TO MOVANT
PLAINTIFFS' MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1407**</u>

Allstate Fire and Casualty Insurance Company, Allstate Insurance Company, Allstate

Indemnity Company, Allstate Property and Casualty Company, Allstate Vehicle and Property

Insurance Company, Allstate Property and Casualty Insurance Company, Allstate Corporation,

Allstate County Mutual Insurance Company, Allstate New Jersey Insurance, Allstate New Jersey

Property and Casualty Insurance Company, Esurance Property & Casualty Insurance Company

a/k/a Esurance Insurance Company, and Encompass Indemnity Company, (collectively, the

"Allstate Defendants"), submit this Response to Movant Plaintiffs' Motion to Transfer Pursuant

to 28 U.S.C. § 1407 ("Motion"), and respectfully request that the Panel centralize the pending

actions described in this Response before the Honorable Robert M. Dow, Jr. in the Northern

District of Illinois (Eastern Division), or, in the alternative, before the Honorable Gregory A.

Presnell in the Middle District of Florida (Orlando Division).

<u>**INTRODUCTION AND ADDITIONAL ACTION**</u>

The Allstate Defendants have each been sued in some or all of six actions alleging that

they wrongfully refused to compensate plaintiff auto body shops in full for collision repair work

performed on insured automobiles, and engaged in various conspiracies to artificially suppress

the cost of collision repair services and attendant labor rates and materials costs.  Five of the six

cases (collectively, the "Antitrust Actions") were filed by Movant Plaintiffs' counsel and allege

violations of federal antitrust laws, as well as a potpourri of state law business tort claims, all on behalf of individual body shop plaintiffs, and are the subject of the Motion.

On June 10, 2014, the Allstate Defendants notified this Panel of a potential tag-along action, *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co., et al.*, No. 1:14-cv-03146 (the "RICO Class Action"),[1] filed by other counsel[2] and not mentioned in the Motion.  The RICO Class Action alleges essentially the same conduct as the Antitrust Actions, but seeks relief for a number of nationwide classes under RICO.[3]  Notwithstanding the differences in legal theory, the gravamen of all of these cases is the same: that the insurance company defendants conspired amongst themselves and/or with others, including third-party data providers, to unlawfully utilize their market power to suppress prices in the auto repair industry.[4]  That fact-intensive issue pervades all the cases, and the substantial discovery that will necessarily be required to litigate it in all of the filed cases provides a compelling basis for coordinated or consolidated pretrial proceedings in a single forum.

That forum should be before Judge Dow in the Northern District of Illinois, where the RICO Class Action is pending.  Unlike the Antitrust Actions, the RICO Class Action asserts claims on behalf of putative nationwide classes, and seeks the broadest relief on behalf of the largest number of potential claimants.  The City of Chicago affords a highly accessible, centrally located venue with world-class accommodations and amenities, as well as a court that is experienced in managing complex, multidistrict litigation.  In addition, two of the largest

---

[1]  *See* Allstate Defendants' Notice of Potential Tag-Along Action, MDL No. 2557, ECF Dkt. No. 80 (hereinafter referred to as "Notice of Potential Tag-Along Action.")

[2]  Plaintiff in the RICO Class Action is represented by the law firms of Berger & Montague, P.C. of Philadelphia and Cafferty Clobes Meriwether & Sprengel LLP of Chicago.

[3]  "RICO" is the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962.

[4]  Indeed, based on the class definitions in the RICO Class Action, many, if not all, of the plaintiffs in the Antitrust Actions are members of one or more of the putative classes.  (*See* RICO Class Action Complaint, Exhibit 1 to Notice of Potential Tag-Along Action, at ¶ 305.)

defendants, State Farm and Allstate, both of which will undoubtedly be the subject of substantial discovery, are based in Illinois. Alternatively, the Middle District of Florida in Orlando is an appropriate forum. Like Chicago, Orlando is serviced by a major international airport and has ample accommodations and amenities. The action currently pending in the Middle District of Florida has more named parties than any other action, including 18 defendants that have not been named in any other action. The Florida Action is also more advanced than the other cases, as Judge Presnell, on June 11, 2014, dismissed the initial complaint, with leave to replead.[5] Neither of the forums proposed by Movant Plaintiffs offers the advantages of either Chicago or Orlando.

## BACKGROUND

The five Antitrust Actions were all filed in the first four months of 2014 and include the following:

> *Capitol Body Shop, Inc., et al. v. State Farm Mut. Auto. Ins. Co., et al.,* No. 3:14CV12, United States District Court for the Southern District of Mississippi, Northern Division-Jackson (pending before the Honorable Carlton Reeves; complaint filed in January, 2014 and amended complaint filed on March 4, 2014) ("Mississippi Action");[6]

> *A&E Auto Body, Inc., et al. v. 21 Century Centennial Ins. Co., et al.,* No. 6:14-CV-00310, United States District Court for the Middle District of Florida, Orlando Division (pending before Judge Presnell; complaint filed on February 24, 2014) ("Florida Action");[7]

> *Indiana Auto Body Ass'n, Inc., et al. v. State Farm Mut. Automobile Ins. Co., et al.,* No. 1:14-CV-507, United States District Court for the Southern District of Indiana, Indianapolis Division (pending before the Honorable Tanya W. Pratt; complaint filed on April 2, 2014) ("Indiana Action");[8]

---

[5] *See* Order Dismissing Florida Action, entered June 11, 2014, attached hereto as Exhibit A.
[6] A copy of the Mississippi Action Amended Complaint is attached as Exhibit 1 to the Schedule filed with the Motion (MDL No. 2557, ECK Dkt. No. 1) (hereinafter referred to as "Schedule").
[7] A copy of the Florida Action Complaint is attached as Exhibit 3 to the Schedule.
[8] A copy of the Indiana Action Complaint is attached as Exhibit 5 to the Schedule.

*Alpine Straightening Systems, Inc., d/b/a Alpine Body Shop, et al. v. State Farm Mut. Auto. Ins. Co., et al.,* No. 2:14-CV-261, United States District Court for the District of Utah, Central Division (pending before the Honorable David Nuffer; complaint filed on April 10, 2014) ("Utah Action");[9] and

*Brewer Body Shop, LLC, et al. v. State Farm Mut. Auto. Ins. Co., et al.,* No. 2:14-CV-02286, United States District Court for the District of Tennessee, Western District (pending before the Honorable Sheryl H. Lipman; complaint filed on April 22,  2014) ("Tennessee Action").[10]

As the Movant Plaintiffs note, these cases—all of which are individual actions on behalf of multiple plaintiffs—are based on the same types of factual allegations, and assert substantively identical claims for relief.  In each complaint, the plaintiffs assert various federal antitrust claims for price fixing based on the allegedly illegal suppression of automobile damage repair costs and a supposed boycott of uncooperative repair facilities, and various state law claims, including quantum meruit, unjust enrichment, and tortious interference.

Essentially the same underlying facts are alleged in the RICO Class Action, which is pending in the Northern District of Illinois.  Filed on April 30, 2014 and assigned to Judge Dow, the RICO Class Action is a putative nationwide class action brought against many of the same defendant insurance companies named in the Antitrust Actions.  The RICO Class Action plaintiff is a Pennsylvania-based automobile collision repair facility who alleges that the defendants conspired amongst themselves and/or others to "suppress compensation to repair facilities for automotive collision repairs covered by insurance."[11]  The RICO Class Action Complaint asserts that Defendants set certain "prevailing rates" for collision repair work; that those rates are "comprised of flawed and rigged data," and that Plaintiff and the classes were "defrauded" into accepting those rates for automobile repair services.[12]  Arguing that this alleged "fraud" was the

---

[9]  A copy of the Utah Action Complaint is attached as Exhibit 7 to the Schedule.
[10]  A copy of the Tennessee Action Complaint is attached as Exhibit 9 to the Schedule.
[11]  *See* RICO Class Action Complaint, Ex. 1 to Notice of Potential Tag-Along Action, at ¶ 1.
[12]  *Id.*, at ¶¶ 58-60.

product of "racketeering," the RICO Class Action Plaintiff asserts nationwide class action claims

for fraud, unjust enrichment, and treble damages under RICO.[13]  Based on the class definitions,

many, if not all, of the plaintiffs in the Antitrust Actions are members of one or more of the

putative RICO classes.[14]

     The Antitrust Actions and the RICO Class Action all focus on the role of insurance

carriers as third-party payors in the collision repair industry;[15] the defendants' determination of

"prevailing" or "market" rates for payment of automobile collision claims;[16] the arrangements

that the defendant insurers maintain with "Direct Repair Program" body shops ("DRPs");[17] the

---

[13] *Id.*, at  ¶¶ 321-457.

[14] *Id., at* ¶ 305.

[15] *Compare* Utah Action Complaint, Ex. 7 to the Schedule, at ¶ 38 ("The vast majority of the Plaintiffs' business is generated by customers for whom the Defendants are responsible to pay repair costs; the insurance-paying customers account for between seventy and ninety-five percent of each shop's revenues . . ..") and Florida Action Complaint, Ex. 3 to the Schedule, at ¶ 69 (verbatim), *with* RICO Class Action Complaint, Ex. 1 to Notice of Potential Tag-Along Action, at ¶ 37 ("Automotive collision repairs of damaged vehicles covered by insurance account for approximately $25-$30 billion in repair costs annually, based on both first-party and third-party claims.  Further, these repairs account for between approximately 75% and 90% of all automotive collision repairs in the United States each year.")

[16] *Compare* Mississippi Action Complaint, Ex. 1 to the Schedule, at ¶ 47 ("Over the course of several years, the Defendants have engaged in an ongoing, concerted and intentional course of action and conduct with State Farm acting as the spearhead to improperly and illegally control and depress automobile damage repair costs to the detriment of the Plaintiffs and the substantial profit of the Defendants.") and Tennessee Action Complaint, Ex. 9 to the Schedule, at ¶ 39 (verbatim), *with* RICO Class Action Complaint, Ex. 1 to Notice of Potential Tag-Along Action, at ¶ 40 ("Defendant Insurers and Conspirator Insurers, through various means but, in particular their DRP relationships, have created an artificial market rate for repairs--the prevailing rate--that has been imposed upon repair facilities throughout the country . . ..").

[17] *Compare* Florida Action Complaint, Ex. 3 to the Schedule, at ¶ 65 ("One of the methods by which the Defendants exert control over Plaintiffs' businesses is by way of entering program agreements with the individual Plaintiffs.  Although each Defendant's program agreements have unique titles, such agreements are known generally and generically within the collision repair industry as direct repair program agreements ("DRPs") and Tennessee Action Complaint, Ex. 9 to the Schedule, at ¶ 40 (verbatim), *with* RICO Class Action Complaint, Ex. 1 to Notice of Potential Tag-Along Action, at ¶ 40 ("Defendants Insurers and Conspirator Insurers all have what are known as direct repair programs ("DRPs").  DRPs are comprised of collision repair facilities around the country that agree to abide by certain uniform standards and procedures in the repairs covered by Defendant Insurers and Conspirator Insurers.").

impact that DRP arrangements have on prices paid to non-DRP facilities;[18] the role of third-party data processing vendors and estimating software utilized by the insurance companies;[19] the supposed suppression of labor rates;[20] the supposed suppression of parts and material costs;[21] and

---

[18]  *Compare* Utah Action Complaint, Ex. 7 to the Schedule, at ¶¶ 62-63 ("Should a shop persist in its efforts to raise its labor rate, State Farm will take one or more of several 'corrective' measures . . . [t]he net effect of this tactic is to allow State Farm to manipulate the 'market rate' and artificially suppress the labor rate and control shops for the relevant geographic area . . ..") and Indiana Action Complaint, Ex. 5 to the Schedule, at ¶ 83-84 (same), *with* RICO Class Action Complaint, Ex. 1 to Notice of Potential Tag-Along Action, at ¶ 58 ("[The] prevailing rates are then forced upon non-DRP facilities (like Plaintiff and the classes here), which never entered contracts to accept these rates from Defendant Insurers and Conspirator Insurers.").

[19]  *Compare* Tennessee Action Complaint, Ex. 9 to the Schedule, at ¶¶ 77, 79 ("Over the course of years, the Defendants have admitted the accepted position of the estimating databases within the [auto repair] industry . . . [and] selectively rely upon and assert the definitive nature of these databases when doing so is to their respective financial advantage.") and Indiana Action Complaint, Ex. 5 to the Schedule, at ¶¶ 90, 92 (verbatim), *with* RICO Class Action Complaint, Ex. 1 to Notice of Potential Tag-Along Action, at ¶ 46 ("Defendant Insurers and Conspirator Insurers (and virtually every insurer), as well as the vast majority of repair facilities, subscribe to one or more of the estimating software products sold by the Information Providers, which collectively make up the damage repair estimating market in the U.S.".) The RICO Class Action Complaint refers to the three major data processing vendors as CCC, Mitchell, and Audatex. (*See* Ex. 1 to Notice of Potential Tag-Along Action, at ¶ 28.)  The Antitrust Actions refer to CCC, Mitchell and ADP, but ADP is part of the same company as Audatex, so both sets of complaints in fact identify the same vendors.

[20] *Compare* Mississippi Action Complaint, Ex. 1 to the Schedule, at ¶ 80 ("[The] Defendants have agreed to join forces with State Farm, the dominant market holder, and each other to coerce the Plaintiffs into accepting the artificially created less-than-market labor rates through intimidation and threats to the Plaintiff's financial ability to remain operating.") and Tennessee Action Complaint, Ex. 9 to the Schedule, at ¶ 72 (verbatim), *with* RICO Class Action Complaint, Ex. 1 to Notice of Potential Tag-Along Action, at ¶ 69 ("While there are differences in labor rates between regions, all repair facilities throughout the country have been subjected to the same rate suppression predicated on the Defendants Insurers' and Conspirator Insurers' manufactured, artificial market value for labor rates through the imposition of the prevailing rate.")

[21] *Compare* Utah Action Complaint, Ex. 7 to the Schedule, at ¶ 65 ("Through various methods, the Defendants have, independently and in concert, instituted numerous methods of coercing the Plaintiffs into accepting less than actual and/or market costs for materials and supplies expended in completing repairs.") and Florida Action Complaint, Ex. 3 to the Schedule, at ¶ 94 (verbatim), *with* RICO Class Action Complaint, Ex. 1 to Notice of Potential Tag-Along Action, at ¶ 84 ("As a direct result of Defendant Insurers and Conspirator Insurers refusal to compensate repair facilities based on any measure other than the artificial 'dollar per paint hour' method, and the restraint of the 'dollar per paint hour," compensation to repair facilities has been artificially suppressed.")

the supposed inaccuracies in the manner in which insurance carriers determine the appropriate cost of repair.[22]

All of the defendants in the RICO Class Action and/or their affiliates are defendants in the Antitrust Actions. While there are certain defendants in the Antitrust Actions who are not named defendants in the RICO Class Action, the RICO Class Action defendants are seven of the nation's largest carriers and their affiliates: State Farm, Allstate, GEICO, Progressive, Liberty Mutual, Nationwide, and Farmers. Together with alleged co-conspirator insurers Travelers, American Family, and USAA, the RICO defendants are alleged to hold "70% of the market, and control all aspects of collision repairs, including establishing the industry standards for compensation paid to repair facilities."[23]

In short, the Antitrust Actions and the RICO Class Action (collectively, the "Pending Actions"), are two sides of the same coin.

With the exception of the Florida Action, where the Court has dismissed plaintiffs' initial complaint without prejudice and with leave to re-plead, the Pending Actions are all at essentially the same preliminary stage with no answers on file, no scheduling conference set, no scheduling order entered, and no discovery to date. In fact, Movant Plaintiffs have not even effected service in the Antitrust Actions except in Mississippi and Indiana.

---

[22] *Compare* Tennessee Action Complaint, Ex. 9 to the Schedule, at ¶ 56 ("By altering the [labor] rates entered [by the plaintiff repair shops], particularly those of the larger shops, those with the most technicians and/or work bays, State Farm manipulates the results to achieve a wholly artificial 'market rate.'") and Mississippi Action Complaint, Ex. 1 to the Schedule, at ¶ 64 (verbatim), *with* RICO Class Action Complaint, Ex. 1 to Notice of Potential Tag-Along Action, at ¶ 58 ("There is no statistical validity to the purported prevailing rates. Further the rates are comprised of flawed and rigged data . . ..").

[23] *See* RICO Class Action Complaint, Ex. 1 to Notice of Potential Tag-Along Action, at ¶ 1.

<u>**ARGUMENT**</u>

**I.      The Six Pending Actions Should Be Centralized In One District Court For Coordinated And Consolidated Pretrial Proceedings.**

28 U.S.C. § 1407 directs the Panel to centralize in a single district all civil actions "involving one or more common questions of fact" if the Panel determines that centralizing "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." Sect. 1407(a). "Centralization under Section 1407 has the salutary effect of placing all actions in [a single] docket before a single judge who can formulate a pretrial program that ensures streamlined resolution of all actions to the overall benefit of the parties and the judiciary." *In re: Mattel, Inc., Toy Lead Paint Prods. Liab. Litig.*, 528 F. Supp. 2d 1367, 1369 (J.P.M.L. 2007). The Section 1407 criteria are satisfied here.

All six Pending Actions arise out of the defendant insurers' alleged conspiracy and improper suppression of prices for collision repair work. While the legal theories may differ, and while there will certainly be important individual and local issues in each of the Pending Actions, the existence of "one or more common questions of fact" as required by Section 1407 is plainly met. *See, e.g., In re: Amazon.com, Inc., Fulfillment Ctr. Fair Labor Standards Act (FLSA) & Wage & Hour Litig.*, MDL No. 2504, 2014 U.S. Dist. LEXIS 21705, at *4 (J.P.M.L. Feb. 19, 2014) ("There may be some site-specific facts in any given action, but transfer under Section 1407 does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer"); *see also In re: North Sea Brent Crude Oil Futures Litig.*, MDL No. 2475, 2013 U.S. Dist. LEXIS 150565, at *2 (J.P.M.L. Oct. 21, 2013) (granting a motion to transfer and consolidate under Section 1407 where the issues were not identical, but there was "factual overlap" among the actions based on the existence of a liability theory "central to all actions [at issue]"—whether defendants manipulated oil prices).

Coordinated proceedings in a single district court will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the Pending Actions. Because the complaints in the Pending Actions assert nearly identical core allegations and seek the same type of relief against the defendants, pretrial rulings on the same or similar issues by different courts could certainly result in inconsistent pretrial findings.  Consolidation of the Pending Actions before a single court would avoid that risk.  *See In Re: Train Derailment Near Tyrone, Okla., On April 21, 2005*, 545 F. Supp. 2d 1373, 1374 (J.P.M.L. 2008) (Ordering that the actions at issue be transferred pursuant to Section 1407, the Panel recognized that centralization would, *inter alia*, "avoid inconsistent pretrial rulings.").

Moreover, given the conspiracy allegations in the Antitrust Actions and in the RICO Class Action, there is likely to be substantial overlap in discovery regarding the defendants' activities and claims practices that should be coordinated in a single forum to avoid duplicative depositions, document productions, and written discovery, as well as inconsistent adjudications regarding the appropriate scope of discovery in the various cases.  It can also be anticipated, at least in the Antitrust Actions, that plaintiffs will be relying on many of the same expert witnesses with respect to economic and market issues, and defendants may use some of the same experts in the various cases as well.  Coordinated expert discovery and reports will avoid costly duplication of effort on both sides, as well as potentially inconsistent *Daubert* or other rulings regarding the permissible scope or content of expert opinions.

A single pretrial discovery plan overseen by one district court would safeguard "all parties' legitimate discovery needs while ensuring that common parties and witnesses are not subjected to discovery demands which duplicate activity that has already occurred or is occurring in other actions."  *In re: Pharmastem Therapeutics, Inc. Patent Litig.*, 360 F. Supp. 2d 1362,

1364 (J.P.M.L. 2005); *see also* Manual for Complex Litig., §22.33 (4th ed.) ("Centralization

serves judicial economy by avoiding duplication of discovery, preventing inconsistent or

repetitive rulings, and conserving the financial resources of the parties, their counsel, and the

judiciary.")

## II.    The Six Pending Actions Should Be Centralized Before Judge Robert M. Dow, Jr. In The Northern District Of Illinois.

The Panel has recognized several factors that it may consider in determining the most

appropriate district for transfer and consolidation under Section 1407, including the following:

(1)  where the evidence, parties, and witnesses are located;[24] (2)  the geographical convenience

and accessibility of the forum to the litigants;[25] (3) the availability of a forum and/or district

court judge with the experience and resources to handle multidistrict litigation;[26] (4)  the

preferences of the parties;[27] (5)  whether cases are already pending in a particular district;[28] (6)

whether a particular district court judge has already invested significant time in developing

---

[24]  *See, e.g.*, *In re: Potash Antitrust Litig. (No. II)*, 588 F. Supp. 2d 1364, 1364-65 (J.P.M.L. 2008) (transferring to the Northern District of Illinois where two of the defendants "[were] headquartered in that district, and relevant documents and witnesses may be located there"); *see also In re: Lead Contaminated Fruit Juice Prods. Mktg. & Sales Practices Litig.*, 777 F. Supp. 2d 1353, 1355 (J.P.M.L. 2011) (transferring five actions filed in five different districts to the District of Massachusetts because it was "the most conveniently located to the headquarters of the various defendants and, therefore, the location of relevant documents and witnesses).

[25]  *See, e.g.*, *In re Intel Corp. Microprocessor Antitrust Litig.*, 403 F. Supp. 2d 1356, 1357 (J.P.M.L. 2005) (consolidating ten California actions and four Delaware actions in the District of Delaware because it was "geographically convenient for many of [the] litigants and counsel").

[26]  *See, e.g., In re Janus Mut. Funds Inv. Litig.*, 310 F. Supp. 2d 1359, 1361 (J.P.M.L. 2004) (choosing a transferee forum with "the capacity and experience to steer this [antitrust] litigation on a prudent course"); *see also In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 793 F. Supp. 1098, 1101 (J.P.M.L. 1992) (selecting a forum based on, *inter alia*, the expertise of a particular district court judge).

[27]  *See, e.g., In re: Vytorin/Zetia Mktg., Sales Practices & Prods. Liab. Litig.*, 543 F. Supp. 2d 1378, 1380 (J.P.M.L. 2008) (choosing a forum based on, among other things, the preference of several of the parties at issue in the pending actions).

[28]  *See, e.g., In re Publ'n Paper Antitrust Litig.*, 346 F. Supp. 2d 1370, 1372 (J.P.M.L. 2004) (ordering transfer to the district with the largest number of pending actions).

familiarity with the issues that are likely to arise in the consolidated cases;[29] and (7)  whether a particular action was filed earlier than others or is more procedurally advanced.[30]

Taking all of these factors into account, the Allstate Defendants submit that the most appropriate transferee forum is the Northern District of Illinois (Eastern Division) before Judge Dow.  While the parties, witnesses, and attorneys are located in various parts of the country, two of the largest insurance company defendants in all of the Pending Actions—State Farm and Allstate—are headquartered in Illinois, so many of their respective witnesses as well as potentially responsive documents are located there.[31]  *See In re: Navistar 6.0 L Diesel Engine Prods. Liab. Litig.*, 777 F. Supp. 2d 1347, 1348 (J.P.M.L. 2011) (Finding that centralization in the Northern District of Illinois of seven actions pending in seven district courts throughout the country, including the Southern District of Mississippi and the District of Utah, was appropriate because "[d]efendants' headquarters, and therefore relevant documents and witnesses, are located in or relatively near [the] district."); *see also In re: Potash Antitrust Litig. (No. II) and In re: Lead Contaminated Fruit Juice Prods. Mktg. & Sales Practices Litig.*, *supra* at footnote 24.

The availability of a forum and district court judge with the necessary experience and resources to handle multidistrict litigation also favors the Northern District of Illinois here.  With

---

[29]  *See e.g., In re: Train Derailment Near Tyrone, Okla., on Apr. 21, 2005*, 545 F. Supp. 2d at 1374 (ordering transfer of cases to a judge who had "already developed familiarity with the issues involved as a result of presiding over motion practice and other pretrial proceedings for the past two years.")

[30]  *See, e.g., In re: Edward H. Okun I.R.S. § 1031 Tax Deferred Exch. Litig.*, 609 F. Supp. 2d 1380, 1381-82 (J.P.M.L. 2009) (transferring to the district where earlier filed and the "most procedurally advanced" action was pending); *In re Mattel, Inc., Toy Lead Paint Prods. Liab. Litig.*, 528 F. Supp. 2d at 1369 (centralizing to the transferee forum because the first-filed action was pending there and defendant was also headquartered there).

[31] Allstate is headquartered in Northbrook, Illinois, which is in the Northern District.  State Farm is headquartered in Bloomington, Illinois, which is slightly outside the District, but within 135 miles of the federal courthouse in Chicago.

fifteen MDLs currently pending[32] and two additional MDLs having just closed in the last few months,[33] the Northern District of Illinois is clearly equipped from both a manpower and facility perspective to handle such proceedings. Indeed, Judge Dow is currently managing one of the antitrust MDLs—that also includes RICO claims—pending in the Northern District of Illinois,[34] and would be an appropriate judge to preside over this putative MDL proceeding as well. An able judge and administrator, Judge Dow has served on the Court since 2007 and is a member of the Rules Committee for the Northern District of Illinois.[35] Further, the Northern District of Illinois and Judge Dow have the capacity to move the Pending Actions forward both swiftly and efficiently. According to the most recent statistics released by the federal judiciary, the median time from the filing to disposition of civil cases for the Northern District of Illinois is only 6.6 months (compared to the median time of 10.8 months for the Southern District of Mississippi and more than two years (26 months) for the Eastern District of Louisiana).[36]

Further, the Northern District of Illinois is located in Chicago, one of the nation's largest cities, with ample accommodations and amenities. It is centrally located, easily accessible, and convenient for all parties and witnesses. The courthouse, easily reachable via car as well as public transportation, is located in the heart of downtown Chicago less than twenty miles from O'Hare International Airport (a hub for both American Airlines and United Airlines) and Chicago Midway International Airport (a "focus city" for Southwest Airlines), both of which

---

[32] *See* MDL Statistics Report--Distribution of Pending MDL Dockets dated May, 15, 2014 (attached hereto as Exhibit B.)

[33] *See* MDL Statistics Report--Docket Summary Listing dated May 15, 2014 (attached hereto as Exhibit C.)

[34] *In re: Dairy Farmers of Am., Inc., Cheese Antitrust Litig.*, MDL No. 2031. (*See* Exhibit B, attached hereto.)

[35] *See* Biography of Hon. Robert M. Dow, Jr. from the Practising Law Institute ("PLI"), available at http://www.pli.edu/Content/Faculty (attached hereto as Exhibit D.)

[36] *See* Federal Judicial Caseload Statistics 2013 Report, Table C-5, available at http://www.uscourts.gov/Statistics/FederalJudicialCaseloadStatistics/2013/tables/C05Mar13.pdf (attached hereto as Exhibit E.)

offer hundreds of daily direct flights to most parts of the United States from which the litigants in the Pending Actions will travel, including Florida, Indiana, Utah, Arizona, Tennessee, Mississippi, New York, and Pennsylvania.  *See e.g., In re "Factor VIII or IX Concentrate Blood Products" Prods. Liab. Litig.*, 853 F. Supp. 454, 455 (J.P.M.L. 1993) (choosing the Northern District of Illinois as the transferee forum for cases pending in Florida, New Jersey, New York, and Illinois because "Chicago is a geographically central location for this nationwide litigation"); *see also In re Intel Corp. Microprocessor Antitrust Litig.*, *supra* at footnote 25.

It is true that the RICO Class Action was not the first filed, but that consideration should have little weight here, if any.  All of the Pending Actions were filed within a few months of one another, and responsive pleadings or motions have not been filed in any of the Pending Actions yet, except for Florida.  There have been no substantive rulings on the merits in any of the Actions, and service has not even been effected in three of the five Antitrust Actions.

Moreover, the RICO Class Action in the Northern District of Illinois is the case that seeks the broadest relief on behalf of the largest number of potential claimants.  Each of the Antitrust Actions is brought on behalf of individual repair facilities seeking individual relief.  Clearly the most comprehensive of the cases filed, and the one that potentially and, by a wide margin, could impact the greatest number of putative parties, is the RICO Class Action.  Indeed, most of the plaintiffs in the Antitrust Actions would appear to be members of one or more of the putative RICO classes.  Thus, the Northern District of Illinois provides a superior forum for consolidated proceedings in all of the Pending Actions.

III.     **Alternatively, The Six Pending Actions Should Be Centralized Before Judge Gregory A. Presnell In The Middle District Of Florida.**

Alternatively, if the Panel does not agree that the Pending Actions should be centralized before Judge Dow in the Northern District of Illinois, the Allstate Defendants respectfully request, in the alternative, that the Pending Actions, including the RICO Class Action, be transferred to the Middle District of Florida (Orlando Division) where, as described above, the most procedurally advanced Pending Action is pending before Judge Presnell.

The briefs filed by Defendants State Farm Mutual Automobile Insurance Company, *et al.*, and 21st Century Centennial Insurance Company, *et al.*, both highlight the advantages of the Middle District of Florida in Orlando as a venue for consolidation.  In sum, Orlando is home to a large international airport with daily direct flights to most parts of the country from which the litigants in this case will travel.  Serving as the hub for AirTran Airways and a "focus city" for JetBlue Airways and Southwest Airlines, Orlando International Airport is located less than fifteen miles from the courthouse.[37]  Moreover, the Middle District of Florida, with three MDLs currently pending before it,[38] certainly possesses the experience and resources necessary to handle multidistrict litigation.  Judge Presnell is highly respected and has presided over complex matters for twenty years in the Middle District of Florida, and the other judges in the District are all quite able should Judge Presnell be unavailable.  Also, while the parties, witnesses, and attorneys are located in different parts of the United States, the Florida Action involves more named parties than in any other Pending Action.  Eighteen of the thirty-four defendants in the Florida Action have not been named in any of the other cases.

---

[37]  *See* Greater Orlando Aviation Authority website, http://orlandoairports.net (last viewed May 30, 2014).
[38]  *See* Exhibit B, attached hereto.

IV.     **Neither The Southern District Of Mississippi Nor The Eastern District Of Louisiana Is An Appropriate Transferee Forum.**

In support of their position that the Pending Actions should be transferred to the Southern District of Mississippi, the Movant Plaintiffs argue that "John Eaves is counsel for all Plaintiffs in all jurisdictions," so "all documents and discovery will flow through [his] office located in Jackson," and add that many plaintiffs are "local to Mississippi."  (Movant Pls' Memo, p. 9.) Those statements, however, are neither correct nor persuasive.  Mr. Eaves is not counsel in the RICO Class Action, and plaintiffs' counsel there are based in Philadelphia and Chicago, for which Mississippi is a decidedly *inconvenient* forum.  Moreover, in this age of electronic discovery and document imaging, there will be no need for documents and discovery to "flow through" Mr. Eaves' offices.  *Id.*  Documents can be maintained on servers and electronic media, which will be easily accessible from any geographic location. While it may be true that the Mississippi plaintiffs are "local to Mississippi," the same can be said for the plaintiffs in Florida, Utah, Tennessee, and Indiana.  (Plaintiff in the RICO Class Action, however, is based in Philadelphia, but chose to sue in the Northern District of Illinois.)

Conversely, with the exception of Mississippi Farm Bureau, which is a defendant only in the Mississippi Action, none of the defendant companies in ***any*** of the Pending Actions is based in Mississippi, (or in Louisiana, for that matter, which is Movant Plaintiffs' second choice of forum).  That is a particular problem given that the Southern District of Mississippi is singularly inaccessible for non-Mississippi litigants and counsel.  From most U.S. locations, Jackson, Mississippi can only be reached by taking multiple connecting flights into the Jackson-Medgar Wiley Evers International Airport, which contains only two runways and does not serve as the

hub for any airline.[39]  Further, Southwest Airlines has announced that it will discontinue service to Jackson starting in June, 2014, which will eliminate additional direct flights and reduce the availability of flights to the area substantially.[40]

Finally, while the Southern District of Mississippi may be a well-respected jurisdiction with able judges and "technologically advanced facilities" (Movant Pls' Memo, p. 9), there are no pending, or recently closed, MDLs before it.[41]

Recognizing the limitations of the Mississippi venue, Movant Plaintiffs also argue for the Eastern District of Louisiana in New Orleans.  New Orleans is somewhat more accessible than Jackson, but not nearly as accessible as either Chicago or Orlando.  Moreover, Movant Plaintiffs have identified no particular nexus that the Eastern District of Louisiana has to any of the Pending Actions, nor do they explain how the Eastern District of Louisiana would advance the convenience of the parties or the witnesses or make any other showing as to why the Eastern District of Louisiana is a suitable venue.  None of the defendants is based there, none of the plaintiffs is based there, and no action is currently pending there.  It is perhaps within driving distance of Mr. Eaves' offices in Jackson, but while that may be more convenient for Movant Plaintiffs' counsel, it is highly inconvenient for just about everyone else.  Movant Plaintiffs' counsel chose to file cases on behalf of multiple clients in multiple federal courts around the country, (with more to come, apparently), and therefore cannot claim any particular hardship if the venue for pre-trial proceedings requires a two-hour flight to Chicago or Orlando.

---

[39]  *See* the Jackson Municipal Airport Authority website, http://jmaa.com (last viewed May 30, 2014). The Jackson airport, despite its "International" label, in fact does not service any non-U.S. destinations.
[40]  *See* Southwest Airlines Press Release dated 12/5/13, available at http://www.swamedia.com/releases.
[41]  *See* Exhibit B, attached hereto.

## **CONCLUSION**

For all of the foregoing reasons, the Allstate Defendants respectfully request that the

Panel centralize for coordinated pretrial proceedings the six Pending Actions to the Northern

District of Illinois (Eastern Division) to be managed by the Honorable Robert M. Dow, Jr., or, in

the alternative, to the Middle District of Florida (Orlando Division) to be managed by the

Honorable Gregory A. Presnell.

Dated:  June 12, 2014

                                         Respectfully submitted,

                                         /s/ Richard L. Fenton
                                         Richard L. Fenton
                                         richard.fenton@dentons.com
                                         DENTONS US LLP
                                         233 S. Wacker Drive, Suite 7800
                                         Chicago, IL 60606
                                         Telephone: (312) 876-8000
                                         Facsimile: (312) 876-7934

                                         COUNSEL FOR ALLSTATE DEFENDANTS

The Illinois Action:

ALLSTATE CORPORATION
ALLSTATE INSURANCE COMPANY
ALLSTATE COUNTY MUTUAL INSURANCE COMPANY
ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY
ALLSTATE INDEMNITY COMPANY
ALLSTATE NEW JERSEY INSURANCE
ALLSTATE NEW JERSEY PROPERTY AND CASUALTY INSURANCE COMPANY
ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY
ENCOMPASS INDEMNITY COMPANY
ESURANCE INSURANCE COMPANY
ESURANCE PROPERTY & CASUALTY INSURANCE COMPANY

The Mississippi Action:

ALLSTATE PROPERTY AND CASUALTY COMPANY
ALLSTATE INSURANCE COMPANY

The Florida Action:

ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY
ALLSTATE INSURANCE COMPANY
ENCOMPASS INDEMNITY COMPANY
ESURANCE PROPERTY & CASUALTY INSURANCE COMPANY A/K/A ESURANCE
INSURANCE COMPANY

The Indiana Action:

ALLSTATE INDEMNITY COMPANY
ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY
ALLSTATE INSURANCE COMPANY
ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY

The Utah Action:

ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY
ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY
ALLSTATE INSURANCE COMPANY

The Tennessee Action:

ALLSTATE PROPERTY AND CASUALTY COMPANY
ALLSTATE INSURANCE COMPANY
ALLSTATE INDEMNITY COMPANY