**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| _____ | : | |
| **IN RE:  AUTO BODY SHOP** | : | |
| **LITIGATION** | : | **MDL NO. 2557** |
| _____ | : | |

**RESPONSE OF DEFENDANTS STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM FIRE AND CASUALTY COMPANY, STATE FARM GENERAL INSURANCE COMPANY, PROGRESSIVE AMERICAN INSURANCE COMPANY, PROGRESSIVE CASUALTY INSURANCE COMPANY, PROGRESSIVE CLASSIC INSURANCE COMPANY, PROGRESSIVE DIRECT INSURANCE COMPANY, PROGRESSIVE GULF INSURANCE COMPANY, PROGRESSIVE HAWAII INSURANCE COMPANY, PROGRESSIVE MAX INSURANCE COMPANY, ERIE INSURANCE COMPANY, ERIE INSURANCE PROPERTY & CASUALTY COMPANY, SENTRY INSURANCE A MUTUAL COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, LIBERTY MUTUAL FIRE INSURANCE COMPANY, SAFECO INSURANCE COMPANY OF AMERICA, SAFECO INSURANCE COMPANY OF ILLINOIS, STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY, THE CINCINNATI INSURANCE COMPANY, AND INDIANA FARMERS MUTUAL INSURANCE COMPANY IN OPPOSITION TO TRANSFER, OR, IN THE ALTERNATIVE, <u>IN SUPPORT OF TRANSFER TO THE MIDDLE DISTRICT OF FLORIDA</u>**

The following parties -- State Farm Mutual Automobile Insurance Company, State Farm Fire and Casualty Company, and State Farm General Insurance Company, Progressive Casualty Insurance Company, Progressive Classic Insurance Company, Progressive Direct Insurance Company, Progressive Gulf Insurance Company, Progressive Hawaii Insurance Company, Progressive Max Insurance Company, Erie Insurance Company, Erie Insurance Property & Casualty Company, Sentry Insurance A Mutual Company, Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Safeco Insurance Company Of America, Safeco Insurance Company Of Illinois, State Automobile Mutual Insurance Company, State Auto Property And Casualty Insurance Company, The Cincinnati Insurance Company, and Indiana

Farmers Mutual Insurance Company -- respectfully submit this response in opposition to Plaintiffs' Motion To Transfer, or, in the alternative, in support of transfer to the Middle District of Florida.

Plaintiffs argue that the five cases which they seek to bring together in an MDL proceeding are "identical or nearly identical" actions. Mem. in Support of Movant Pls.' Mot. to Transfer Pursuant to 28 U.S.C. § 1407 ("Mem.") at 1. However, the similarities among the cases are superficial. Although the complaints all purport to assert antitrust claims and share some language, a closer examination reveals material substantive differences that render consolidation inappropriate. In addition to the purported antitrust claims, each complaint sets out multiple state common law claims, which are not brought as civil conspiracy claims against all defendants. The five actions are accordingly highly individualized, separate suits, brought by distinct individual plaintiffs against significantly varied groups of defendants, concerning alleged practices of particular insurers specific to particular automotive body shops in particular geographic areas. The generic language employed by each complaint masks the fact that each complaint presents unique issues that will involve distinct factual and legal determinations and require highly individualized discovery. Both the quantity and the quality of the individual issues would overwhelm any purported common issues, which, in any event, are not sufficiently complex to justify the invocation of pretrial centralization. Plaintiffs, moreover, are represented by a single lead counsel, and that circumstance makes it likely that informal coordination of discovery and other matters in these actions will occur without need for an MDL proceeding.

For all the foregoing reasons, the Panel should deny transfer and consolidation. Alternatively, if the Panel were to order transfer and consolidation, then the responding Defendants respectfully submit that the most appropriate forum for pretrial coordination would

be the Middle District of Florida. The court in the Florida case has devoted significant attention

to the case, and dismissed the case on June 11, 2014, with leave for plaintiffs to amend by June

27. *See* Ex. A. The court's opinion provides plaintiffs with guidance concerning the

requirements for repleading. Should the Florida plaintiffs fail to replead, only four cases would

remain, and the argument for consolidation would diminish even further. The responding

Defendants anticipate that the Florida Plaintiffs will replead. If they do not, and the Panel

believes the 4 remaining cases warrant MDL consolidation, then Defendants respectfully propose

that the Middle District of Florida, and particularly Judge Presnell, still would be the most

appropriate venue for transfer and consolidation for the reasons set forth above and discussed

further below. Alternatively, the responding Defendants propose the District of Utah as the

venue for consolidation. Salt Lake City has a major airport and is the most convenient venue

available after Orlando.

## ARGUMENT

### I. TRANSFER OF THESE INDIVIDUAL ACTIONS WOULD NOT BE APPROPRIATE

#### A. The Actions Are Permeated by Individual Issues

Actions involving one or more common questions of fact may be transferred and

coordinated under section 1407 to "serve the convenience of parties and witnesses" and to

"promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. The purpose of

centralization under section 1407 is to eliminate duplicative discovery, avoid conflicting rulings

and schedules, reduce litigation costs, and conserve the time and effort of the parties, attorneys,

witnesses, and courts. *Manual for Complex Litigation (Fourth)* § 20.131 (2004) (citing *In re

Plumbing Fixture Cases*, 298 F. Supp. 484 (J.P.M.L. 1968)). The movant bears the burden of

showing that "any common questions of fact and law are sufficiently complex, unresolved and/or

numerous to justify Section 1407 transfer." *In re Commonwealth Scientific & Industrial Research Org. Patent Litig.*, 395 F. Supp. 2d 1357, 1358 (J.P.M.L. 2005). Plaintiffs have not met that burden here.

Indeed, Plaintiffs have failed to articulate any compelling reason why these cases should be centralized. They argue that the cases are based on identical "core factual allegations," as if that ended the analysis. Mem. at 5. A "mere showing that [common] questions exist is not sufficient, in and of itself, to warrant transfer by the Panel." *In re Cessna Aircraft Distributorship Antitrust Litig.*, 460 F. Supp. 159, 162 (J.P.M.L. 1978). Moreover, Plaintiffs' argument is unfounded. In fact, as shown below, each of the five actions is predicated on different factual allegations and likely will require highly individualized discovery.[1]

Although Plaintiffs purport to allege that "defendants have consistently acted improperly nationwide," Mem. at 6, the complaints themselves focus on individual transactions and interactions with multiple local- or state-based individual body shops, as well as individual representations made by particular defendants to particular plaintiffs, in what one must assume are literally thousands -- if not tens of thousands -- of separate transactions with different insurers doing business in each state. The complaints all allege that the particular defendants in

---

[1] An unrelated, putative class action was filed by other counsel on April 14, 2014 in the United States District Court for the Northern District of Illinois by an auto body shop plaintiff located in Pennsylvania. *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 1:14-cv-03146. Movant Plaintiffs do not seek transfer of that action; indeed, they do not mention it. The responding Defendants do not believe that transfer of the action would be appropriate even if consolidation were ordered. The complaint in *Crawford's Auto Center* is brought against only seven insurance company families. The vast majority of defendants in the 5 cases sought to be consolidated are not parties to the *Crawford's* complaint. Moreover, the *Crawford's Auto* Center complaint relies on different factual allegations and legal theories. Specifically, the plaintiff in *Crawford's Auto Center* does not assert any antitrust claims; instead, it primarily asserts seven defendant-specific claims under the Racketeer Influenced and Corrupt Organizations Act. These claims are not asserted in the present antitrust actions. The purported RICO violations are predicated on various alleged RICO enterprises among individual insurance companies and third-party information providers to provide false information about reimbursement levels. Whereas the plaintiffs in the five antitrust actions subject to the present motion base their claims in part on complaints about the direct repair program agreements they have entered into with insurers, the *Crawford's* plaintiff is attempting to represent a class of body shops that do not participate in any such direct repair agreements. In addition, unlike the antitrust actions, the plaintiff in *Crawford's* does not allege that the defendant insurers conspired with each other to fix prices or boycott body shops.

each case "*specifically* advised the *Plaintiffs* they will pay no more than State Farm pays for labor," refused on particular "instances" to pay for particular "procedures and processes" deemed necessary by particular body shops for particular repairs, steered particular insureds or claimants to preferred shops by allegedly misrepresenting the "business integrity and quality" of the Plaintiffs' specific shops, such as by allegedly asserting that "quality issues have arisen with that *particular* shop, that complaints have been received about that *particular* shop from other consumers," and "that *the* shop charges more than any other shop *in the area*," "without any attempt to ascertain the truth" of the specific representations.[2] The complaints further allege that the Defendants boycotted Plaintiffs' shops and enlisted specific "third parties" (customers) to withhold their business. These alleged practices purportedly caused Plaintiffs to lose the business of particular customers.[3]

Discovery regarding Plaintiffs' allegations will necessarily be individualized. For example, proving that one of the 39 insurer Defendants in the Florida action -- 26 of which are not named as defendants in <u>any</u> of the other four actions (*see,* Ex. B) -- misrepresented the quality of work done by one of the Florida plaintiffs will not do anything to help prove that a different insurer in Utah unfairly impugned the quality of work performed by one of the Utah plaintiff body shops. Defendants will need to take discovery from each of the individual plaintiffs in each case concerning a large number of individual repair transactions, conceivably numbering in the hundreds or thousands, and each plaintiff will presumably seek similar

---

[2] Compl., *A&E Auto Body, Inc. v. 21st Century Centennial Ins. Co.* ("Florida Compl."), No. 6:14-cv-00310, Feb. 24, 2014, ECF No. 1, at ¶¶ 93, 98, 112-14 (M.D. Fla.) (emphasis added); *see also* Amend. Compl., *Capitol Body Shop, Inc. v. State Farm Mut. Auto. Ins. Co.* ("Mississippi Compl."), No. 3:14-cv-00012, Mar. 4, 2014, ECF No. 3, at ¶¶ 76, 81, 95-97 (S.D. Miss.); Compl., *Indiana AutoBody Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co.* ("Indiana Compl."), No. 1:14-cv-00507, Apr. 2, 2014, ECF No. 1, at ¶¶ 85, 90, 104-06 (S.D. Ind.); Compl., *Alpine Straightening Sys., Inc. v. State Farm Mut. Auto. Ins. Co.* ("Utah Compl."), No. 2:14-cv-00261, Apr. 10, 2014, ECF No. 1, at ¶¶ 64, 70, 82-84 (D. Utah); Compl., *Brewer Body Shop, LLC v. State Farm Mut. Auto. Ins. Co.* ("Tennessee Compl."), No. 2:14-cv-02286, Apr. 22, 2014, ECF No. 1, at ¶¶ 72, 77, 91-93 (W.D. Tenn.).
[3] *See* Florida Compl. at ¶¶ 159-62; Mississippi Compl. at ¶¶ 145-49; Indiana Compl. at ¶¶ 153-58; Utah Compl. at ¶¶ 131-35; Tennessee Compl. at ¶¶ 135-39.

discovery from each defendant concerning their individual transactions, each of which involves a distinct set of repairs, parts, and compensation decisions.  The court in the Florida action recognized at least some of these individual issues in dismissing the case.  *See* Ex. A at 2.

The Panel recently denied transfer under similar circumstances in *In re Mortgage Industry Foreclosure Litig.*, MDL No. 2500, 2014 WL 585934 (J.P.M.L. Feb. 12, 2014). Although the actions involved in that case each were predicated on the same theory of contractual interpretation, they otherwise had "little in common":  "They involve different defendants, different plaintiffs, different mortgage loans at different stages of the foreclosure process, different securitized trusts involving different contractual trust arrangements and different trustees and mortgage servicers, different state laws, and different putative classes . . . ." *Id.*  The Panel explained that the "'common questions of fact' required for centralization simply are not present in this litigation."  *Id.*; *see also In re Prescription Drug Co-Pay Subsidy Antitrust Litig.*, MDL No. 2370, 2012 WL 3143852 (J.P.M.L. Aug. 2, 2012) (denying transfer of seven actions where common questions regarding defendant pharmaceutical manufacturers' health benefit plans were outnumbered by individual questions, and so "[i]ndividualized discovery and legal issues are likely to be numerous and substantial"); *In re: Trilegiant Membership Program Mktg. & Sales Practices Litig.*, 828 F. Supp. 2d 1362, 1363 (J.P.M.L. 2011) ("Although all actions contain allegations of the same basic scheme concerning post-transaction internet marketing and enrollment in membership programs, the differences among the actions will reduce any efficiencies to be gained from centralization. Plaintiffs' motion encompasses cases against different defendants and alleging varied RICO enterprises. Much of the pretrial proceedings, therefore, likely will vary across the actions, including discovery targeted to the

unique defendants in each action and issues, such as arbitration agreements, specific to those defendants.").

These differences in the five cases are not merely hypothetical.  In fact, under analogous circumstances involving substantially similar allegations, the Mississippi Supreme Court held that the factual differences among the individual plaintiffs' claims were so great that the claims could not be maintained in the same action.  *See State Farm Mut. Auto. Ins. Co. v. Murriel*, 904 So. 2d 112, 114 (Miss. 2004).  In *Murriel*, the plaintiffs, twelve independent auto body shops, alleged that a single defendant insurer, State Farm, had "steered" its insureds away from plaintiffs to body shops that participated in State Farm's referral program.  *Id.* at 114.  The Mississippi Supreme Court found that, "other than being subject to State Farm's general policies and procedures, plaintiffs did not share a single transaction or occurrence or series of transactions or occurrences.  There is no distinct litigable event linking the parties."  *Id.*  That assessment is equally applicable to plaintiffs' allegations here; the only difference is that here the discrepancies are magnified by the involvement of multiple insurers and more, and more disparate, plaintiffs.

The law governing liability also differs significantly in each case.  Although Plaintiffs all assert antitrust claims under the federal Sherman Act, the vast majority of their claims are predicated on state statutes (such as the Tennessee Unfair Competition Act or the Mississippi Insurance Code)[4] and state common law claims (such as quantum meruit, tortious interference with business relations, and conversion) that vary in their availability and standards by state.

---

[4] *See* Tennessee Compl. ¶ 112 (attempting to state a claim under Tennessee Code Section 47-18-104(b)(8) for "unfair trade practices" based on "disparag[ing] the goods, services or business of another by false or misleading representations of fact"); Mississippi Compl. ¶¶ 106-08 (alleging violations of Mississippi Code § 83-11-501, which, according to plaintiffs, "requires automobile insurers to pay for the repair of vehicles in the lowest amount that such vehicles can be properly and fairly repaired by a contractor or repair shop within a reasonable geographical or trade area").

None of these state law claims involves allegations of conspiracy that would make them applicable to all defendants. Transfer of these state-law claims to a distant forum is not likely to generate significant savings in time or energy for the parties or the judiciary.

There is also disparity among the different defendants in the different cases. Of the 82 insurers named as defendants in the 5 cases, 55 are named in only 1 of the cases. As noted above, 26 of the 39 Florida defendants are named only in the Florida case. *See* Ex. B. This is another factor militating against consolidation. *See, e.g., In re: Provident Securities Litig.* 715 F. Supp. 2d 1356, 1357 (J.P.M.D.L. 2010) (denying motion for consolidation, in part because "none of the cases have completely common defendants" and certain defendants were named in only one action); *In re: Hamilton Bank (of Atlanta) Securities Litig.*, 438 F. Supp. 940, 940-41 (J.P.M.D.L. 1977) (denying motion for consolidation, in part because "several" defendants were named "in only one action").

Additionally, the presence of federal antitrust claims does not, in this instance, provide any substantial efficiencies, as the complaints do not contain any allegations of a nationwide antitrust conspiracy. The complaints in fact attempt to allege several different conspiracies involving different groups of defendants to inflate prices in particular geographic markets and to boycott particular body shops. The application of federal antitrust law to these different alleged conspiracies does not raise the sort of "complex, unresolved and./or numerous" common legal questions that the Panel usually is concerned about when ordering transfer, *Commonwealth Scientific*, 395 F. Supp.2d at 1358, and does not justify the guaranteed inconvenience transfer would impose on the dozens of parties whose cases will be transferred to a distant forum. *See, e.g.*, *In re Title Ins. Real Estate Settlement Procedures Act (RESPA) & Antitrust Litig.*, 560 F. Supp. 2d 1374 (J.P.M.L. 2008) (refusing to centralize antitrust claims against title insurers where

the common factual issues were not complex enough to outweigh the fact that the claims "encompass[ed] different regulatory regimes in the states in which actions are pending along with variances in insurance regulation and law in each state"); *In re Amino Acid Lysine Antitrust Litig.*, 910 F. Supp. 696, 701 (J.P.M.L. 1995) (holding that centralization of actions involving three related but not overlapping antitrust conspiracies was not warranted).[5]

Moreover, even the federal antitrust claims will be affected by differences in state law, as each state's regulation of the insurance and auto body repair industries will substantially impact the evaluation of each insurer's conduct under the Sherman Act and may in fact affect the availability of a Sherman Act claim in the first place. *See, e.g., S. Motor Carriers Rate Conference, Inc. v. United States*, 471 U.S. 48, 50 (1985) (holding motor common carriers' ratemaking activities pursuant to state regulatory program were entitled to Sherman Act immunity). The Panel has denied consolidation in similar circumstances, where the common factual issues were not "sufficiently complex and/or numerous" to justify the transfer of antitrust actions "encompass[ing] different regulatory regimes in the states in which actions are pending along with variance in insurance regulation and law in each state." *In re Title Ins. Real Estate Settlement Procedures Act (RESPA) & Antitrust Litig.*, 560 F. Supp. 2d 1374 (J.P.M.L. 2008).

### B. The Cases Are Not Class Actions

Another factor weighing against centralization is that none of these suits are class actions. Each suit is brought by a group of individual plaintiffs (as few as three in the Tennessee action) on their own behalf and seeking compensation and injunctive relief for themselves only. *See*

---

[5] *See also* 15 CHARLES ALAN WRIGHT, ARTHUR MILLER & EDWARD COOPER, FEDERAL PRACTICE AND PROCEDURE § 3863 at 535-36 (2d ed. 1987) ("The third and most important prerequisite to obtaining a transfer under Section 1407 is a showing that the just and efficient conduct of the actions will be served thereby. Indeed, it has been argued that the crucial issue in determining whether to grant transfer is not whether there are common questions or whether the parties will be inconvenienced, but whether 'the economies of transfer outweigh the resulting inconvenience to the parties.' *Read broadly, of course, this third requirement really subsumes the other two.*" (emphasis added) (citation omitted)).

Florida Compl. at ¶ 166(A)-(C) (requesting compensatory damages for "non-payment and underpayment for work," plaintiffs' "lost revenue," and plaintiffs' "lost business opportunities");[6] *id.* at ¶ 166(E) (requesting injunctive relief prohibiting defendants from "directing, advising, or otherwise suggesting that any person or firm do business or refuse to do business *with any Plaintiff*," and from impugning "the quality, cost, efficiency or reputation of any *Plaintiff* ('steering')" (emphasis added)).[7] These actions simply do not present a risk of overlapping or inconsistent class certification determinations, and they lack the inherent complexity that class actions often present. *See In re Fresh Dairy Prods. Antitrust Litig.*, MDL No. 2340, 2012 WL 1389640 (J.P.M.L. Apr. 17, 2012) (denying transfer of cases because of a lack of overlapping classes). Further, the evidence required to prove Plaintiffs' individual damages, such as lost revenues and business opportunities, will vary by body shop, and developing that evidence thus would not be rendered more efficient or economical by centralization.

## C.  Informal Coordination Is a Viable Alternative to Transfer

A final factor weighing against centralization is the practicability of informal coordination. There are only five actions; defendants are represented by many of the same counsel across actions; and *all* of the plaintiffs are represented by a single coordinating law firm, John Arthur Eaves, Attorneys at Law. *See* Mem. at 1. Thus, to the extent that pretrial proceedings overlap, informal coordination is likely to be relatively simple.[8] Duplicative

---

[6] *See also* Mississippi Compl. at ¶ 153(A)-(C); Indiana Compl. at ¶ 162(A)-(B); Utah Compl. at Prayer for Relief (A)-(C); Tennessee Compl. at ¶ 143(A)-(C).

[7] *See also* Mississippi Compl. at ¶ 153(E); Indiana Compl. at ¶ 162(D); Utah Compl. at Prayer for Relief (E); Tennessee Compl. at ¶ 143(E).

[8] Plaintiffs attempt to obscure the fact that there is no urgent need for centralization here by asserting that additional filings are expected. The Panel need not and should not speculate about whether and how the litigation might expand and should instead look to the currently filed cases. *See In re Intuitive Surgical, Inc., Da Vinci Robotic Surgical Sys. Prods. Liab. Litig.*, 883 F. Supp. 2d 1339, 1340 (J.P.M.L. 2012) (denying motion to transfer, noting,

discovery can easily be avoided, as all discovery requests from Plaintiffs will come from the same counsel, and all requests to Plaintiffs will go to the same counsel. Plaintiffs' counsel also can work with the Defendants to ensure that the schedule of each action is coordinated with the schedules of the others. *See In re Bank of America, N.A. Mortg. Corp. Force-Placed Hazard Ins. Litig.*, MDL No. 2467, 2013 WL 4041555 (J.P.M.L. Aug. 7, 2013) (denying transfer, in part, because of "the overlap among counsel"); *In re Trilegiant Membership Program Mktg. & Sales Practices Litig.*, 828 F. Supp. 2d 1362, 1363 (J.P.M.L. 2011).

This Panel has previously recognized the wisdom of not creating an MDL proceeding where there are a limited number of cases and where the existing infrastructure is more than adequate to handle the pending litigation. *See, e.g.*, *In re Northeast Contaminated Beef Prods. Liab. Litig*., MDL No. 2346, 856 F. Supp. 2d 1354, 1355 (J.P.M.L. 2012) (stating that where, as here, a litigation is comprised of a limited number of cases, "informal cooperation among the involved attorneys and courts is both practicable and preferable"); *In re Intuitive Surgical*, 883 F. Supp. 2d at 1340 ("We consider voluntary coordination among the parties and the involved courts of these relatively few [five] actions to be a preferable alternative to centralization at this time."); *In re Fout & Wuerdeman Litig.*, 657 F. Supp. 2d 1371, 1371 (J.P.M.L. 2009) (transfer of four actions denied because "alternatives to transfer exist that may minimize whatever possibilities there might be of duplicative discovery and/or inconsistent pretrial rulings").[9]

---

"[w]hile proponents maintain that this litigation may encompass 'hundreds' of cases or 'over a thousand' cases, we are presented with, at most, five actions").

[9] For these reasons, this Panel has repeatedly declined to establish an MDL where the litigation involves a limited number of individual cases. *See, e.g.*, *In re Intuitive Surgical, Inc.*, 883 F. Supp. 2d at 1340 (denying centralization of five actions); *In re Abbott Labs., Inc., Similac Prods. Liab. Litig.*, 763 F. Supp. 2d 1376, 1376-77 (J.P.M.L. 2011) (denying centralization of nine actions); *In re Blair Corp. Chenille Robe Prods. Liab. Litig.*, 703 F. Supp. 2d 1379, 1380 (J.P.M.L. 2010) (denying centralization of four actions); *In re Depo-Provera Prods. Liab. Litig*., 499 F. Supp. 2d 1348, 1349 (J.P.M.L. 2007) (denying certification of putative class action and two individual actions); *accord In re Michaels Stores, Inc., Pin Pad Litig.*, 844 F. Supp. 2d 1368, 1368 (J.P.M.L. 2012) (denying transfer of seven individual consumer actions); *In re Air Crash Near Islamabad, Pak.*, 777 F. Supp. 2d 1352, 1353 (J.P.M.L. 2011)

These cases are well-suited to the kind of formal and informal coordination that this Panel has repeatedly cited as an appropriate alternative to an MDL. Indeed, responding Defendants' counsel are ready and willing to work cooperatively with Plaintiffs' counsel in these actions to appropriately coordinate any common discovery or other pretrial matters across the cases. Counsel for Defendants have substantial experience litigating and managing actions such as these and are well poised to work cooperatively to focus and advance the litigations in ways that will conserve the resources of the parties and each of the courts involved.

## II.    IF THE PANEL ORDERS TRANSFER, THE MIDDLE DISTRICT OF FLORIDA IS THE APPROPRIATE VENUE

For the reasons explained above, the responding Defendants do not believe that transfer would be appropriate in this instance. If the Panel disagrees, then the responding Defendants[10] respectfully suggest that the cases should be transferred to the United States District Court for the Middle District of Florida, where the most procedurally advanced action currently is pending before the Honorable Gregory A. Presnell.

The Panel has acknowledged many different factors it considers in selecting the appropriate district for transfer and consolidation, including: (1) where the evidence, parties, and witnesses are located;[11] (2) the geographical convenience and accessibility of the forum to the litigants;[12] (3) the preferences of the parties;[13] (4) whether cases are already pending in a

---

[10] Indiana Farmers Mutual Insurance Company ("IFMIC") does not join in the alternative request that the cases be transferred. IFMIC does business only in Indiana and is not authorized to do business in any other state. Accordingly, Plaintiffs' claims against IFMIC should be heard only in Indiana. Further, to avoid confusion, IFMIC is not associated with the other Farmers entities (21st Century Centennial Insurance Company, 21st Century North America Insurance Company, Bristol West Insurance Company, Foremost Insurance Company Grand Rapids, Michigan, Mid-Century Insurance Company, and Security National Insurance Company) favoring consolidation.

[11] *See, e.g.*, *In re Potash Antitrust Litig. (No. II)*, 588 F. Supp. 2d 1364 (J.P.M.L. 2008) (transferring to district where two defendants were headquartered and thus where witnesses and documents were likely to be located).

[12] *See, e.g.*, *In re Intel Corp. Microprocessor Antitrust Litig.*, 403 F. Supp. 2d 1356, 1357 (J.P.M.L. 2005) (consolidating ten California actions and four Delaware actions in the District of Delaware because it was a geographically convenient location for the particular litigants).

[13] *See, e.g.*, *In re Vytorin/Zetia Mktg., Sales Practices & Prods. Liab. Litig.*, 543 F. Supp. 2d 1378, 1380 (J.P.M.L. 2008) (choosing a forum on the basis of the preference of several of the parties).

particular district;[14] (5) whether a particular district court judge has already invested significant time in developing familiarity with the issues likely to arise in the consolidated cases;[15] (6) whether a particular action was filed earlier than others or is more procedurally advanced;[16] (7) relative docket conditions in various districts;[17] and (8) the availability of a forum and/or district court judge with the experience and resources to handle multidistrict litigation.[18]  The Panel also will  consider "where discovery has occurred" and "the site of the occurrence of the common facts."  *Manual for Complex Litigation*, at §20.131.  On balance, these factors favor Florida, and they weigh especially heavily against the Southern District of Mississippi.[19]

Because the complaints focus on alleged conspiracies and conduct in various, dispersed geographic areas, evidence will be similarly dispersed, and this action is likely to require a significant number of parties and witnesses from across the country to appear or testify. Accordingly, convenience and accessibility are particularly important considerations, and both factors favor the Middle District of Florida.  More parties (58) are involved in the Florida action than in any other, and as noted, many in the Florida action have not been named as defendants in

---

[14] *See, e.g.*, *In re Publ'n Paper Antitrust Litig.*, 346 F. Supp. 2d 1370, 1372 (J.P.M.L. 2004) (transferring to the district with the largest number of pending actions).

[15] *See, e.g.*, *In re Train Derailment Near Tyrone, Okla., on Apr. 21, 2005*, 545 F. Supp. 2d 1373, 1374 (J.P.M.L. 2008) (transferring cases to judge who had 'already developed familiarity with the issues involved as a result of presiding over motion practice and other pretrial proceedings for the past two years").

[16] *See, e.g.*, *In re: Bank of Am. Credit Protection Mktg. & Sales Practices Litig.*, MDL No. 2269, 2011 WL 3648279, at *1 (J.P.M.L. Aug. 16, 2011) ("The Northern District of California, where the first-filed and relatively most procedurally advanced action is pending, stands out as an appropriate transferee forum."); *In re: Bank of Am. Home Affordable Modification Program (HAMP) Contract Litig.*, 746 F. Supp. 2d 1359 (J.P.M.L. 2010) (transferring to the forum in which cases had progressed the furthest); *In re Edward H. Okun I.R.S. § 1031 Tax Deferred Exch. Litig.*, 609 F. Supp. 2d 1380, 1381-82 (J.P.M.L. 2009) (transferring to the district where earlier filed and "most procedurally advanced" action was pending).

[17] *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, 560 F. Supp. 2d 1359, 1361 (J.P.M.L. 2008) (transferring to a district with "favorable caseload conditions").

[18] *See, e.g.*, *In re Publ'n Paper Antitrust Litig.*, 346 F. Supp. 2d at 1372 (choosing a transferee forum with "the resources" to handle a complex multidistrict antitrust docket); *In re Janus Mutual Funds Inv. Litig.*, 310 F. Supp. 2d 1359, 1361 (J.P.M.L. 2004) (same); *In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 793 F. Supp. 1098 (J.P.M.L. 1992) (expertise of a particular judge).

[19] The responding Defendants also oppose transfer to the Eastern District of Louisiana, where no action is pending, for the reasons stated in the response of Defendants 21st Century Centennial Insurance Company, et al., and in the response of the Allstate Defendants.

any other action.  *See* Mot. Exs. 6-10.  By contrast, in the Mississippi action, all 17 defendants have been named in at least one other action, and seven of those defendants were named in all five actions.  *See id.* Ex. 6.  Florida is likely to be more convenient to more parties and witnesses (three defendants maintain their headquarters in Florida) than any other venue. *See, e.g.*, *In re Potash Antitrust Litig. (No. II)*, 588 F. Supp. 2d at 1364 (transferring to district where two defendants were headquartered and thus where witnesses and documents were likely to be located).

Moreover, Orlando, where the Florida action is pending, is home to a large international airport with an array of direct flights across the United States, including to and from Indiana, Tennessee, Utah, Illinois, New York, Georgia, Louisiana, Texas, and Nevada.  *See* http://www.orlandoairports.net/marketing/domestic.htm.   Orlando is a frequent destination for business, convention, and recreational travel.  It is more than sufficiently equipped to accommodate traveling parties and witnesses.  By contrast, Movant Plaintiffs' preferred venue, Jackson, Mississippi, can be reached from many of these areas only by taking multiple connecting flights, and Southwest Airlines' plan to discontinue service at Jackson's airport in June 2014, will further reduce the availability of flights to the area.  *See* http://www.usatoday.com/story/todayinthesky/2013/12/06/southwest-airlines-branson-key-west-jackson-evers/3889197/.  Although it might be convenient for Plaintiffs' counsel to litigate in Jackson, it would inconvenience almost everyone else, including most of the parties.[20]

The Middle District of Florida is also the most appropriate venue because it is home to the most procedurally advanced action.  The parties submitted and fully briefed two motions to dismiss and a motion for judgment on the pleadings, leading to Judge Presnell's June 11 ruling.

---

[20] Plaintiffs' contention that Mississippi is the most appropriate venue because all discovery will "flow through" John Eaves' offices in Jackson is a canard.  In this age of electronic discovery and ready transfer of digital files, the address listed on a document production is of no consequence.

Moreover, Judge Presnell had ordered the parties to meet and confer regarding case management and to submit a case management plan by July 10. By contrast, the Mississippi action remains in its nascent stages: No responsive pleadings have been filed, and case scheduling and discovery have not yet even been contemplated. Judge Presnell has already considered motions addressed to the Florida complaint that plaintiffs' counsel characterize as nearly identical to the other four complaints. He can apply the benefit of the experience he has gained to motions filed in the other cases. Transfer to Judge Presnell would most likely promote efficiency and avoid disruption in the progress of these actions. *See, e.g.*, *In re: Bank of Am. Home Affordable Modification Program (HAMP) Contract Litig.*, 746 F. Supp. 2d at 1359 (J.P.M.L. 2010) (transferring to the forum in which cases had progressed the furthest).

Experience and resources also weigh strongly in favor of the Middle District of Florida. Of the five venues where actions currently are pending, the Middle District of Florida has the most recent experience with multidistrict litigation,[21] and Judge Presnell is a highly experienced jurist with over 13 years of service on the federal bench. By contrast, the Southern District of Mississippi appears to have had no recent experience with multidistrict litigation at all.[22] As the 21st Century Defendants have explained, the Middle District of Florida possesses the resources and capacity to host multidistrict proceedings, and it has the strongest track record for expediently resolving cases among any of the forums where actions are pending. Finally, it appears that only three multidistrict litigations currently are pending in the Middle District of Florida, none of which is before Judge Presnell, and prevailing docket conditions are favorable, as the district experienced a decline of 13.9% between April 2012 and April 2013 in the number

---

[21] Ex. C.
[22] *Id.*

of pending cases.[23]  Accordingly, the Middle District of Florida has the experience and the capacity to host centralized pretrial proceedings.

### III. THE DISTRICT OF UTAH SHOULD BE THE VENUE IF THE MIDDLE DISTRICT OF FLORIDA IS UNAVAILABLE

The Florida case has been dismissed, with leave to replead set for June 27, 2014.  The responding Defendants anticipate that the Florida Plaintiffs will replead.  If they do not, and the Panel believes the four remaining cases warrant MDL consolidation, then Defendants respectfully propose that the Middle District of Florida, and particularly Judge Presnell, still would be the most appropriate venue for transfer and consolidation for the reasons set forth above.  Alternatively, the responding Defendants propose the District of Utah as the venue for consolidation.  Salt Lake City International Airport is a hub for the largest U.S. airlines with over 600 nonstop flights a day to 86 cities.  *See* Salt Lake City International Airport, *SLC Fast Facts*, *available at* http://www.slcairport.com/slc-fast-facts.asp.   All Plaintiffs and Defendants can travel directly into this airport.  Further, Salt Lake City is the financial and legal center for the Mountain states and has the resources to support a legal action involving lawyers for more 60 parties.  As with Orlando, Utah is a frequent destination for travel, and it is clearly the most frequent destination of the remaining 4 venues.  There is also a motion to dismiss pending in the Utah case, and other Defendants likewise intend to file such motions.

<u>CONCLUSION</u>

For the foregoing reasons, the responding Defendants, State Farm, Progressive Casualty Insurance Company, Progressive Classic Insurance Company, Progressive Direct Insurance Company, Progressive Gulf Insurance Company, Progressive Hawaii Insurance Company, Progressive Max Insurance Company, Erie Insurance Company, Erie Insurance Property &

---

[23] Ex. D.

Casualty Company, Sentry Insurance A Mutual Company, Liberty Mutual Insurance Company,

Liberty Mutual Fire Insurance Company, Safeco Insurance Company Of America, Safeco

Insurance Company Of Illinois, State Automobile Mutual Insurance Company, State Auto

Property And Casualty Insurance Company, The Cincinnati Insurance Company, and Indiana

Farmers Mutual Insurance Company respectfully request that the Panel deny Plaintiffs' motion

to transfer and coordinate these actions for pretrial proceedings under 28 U.S.C. § 1407, or in the

alternative, to transfer these actions to the United States District Court for the Middle District of

Florida, or if that forum is deemed inappropriate, to the United States District Court for the

District of Utah

DATED:_____ June 12, 2014_____

                                  Respectfully submitted,


                                   /s/ Michael P. Kenny_____
                                  Michael P. Kenny
                                  ALSTON & BIRD
                                  One Atlantic Center
                                  1201 West Peachtree Street
                                  Atlanta, Georgia  30309
                                  Telephone:  (404) 881-7000
                                  Facsimile:  (404) 881-7777
                                  mike.kenny@alston.com

                                  Counsel For Defendants
                                  State Farm Mutual Automobile Insurance Company
                                  State Farm Fire And Casualty Company
                                  State Farm General Insurance Company

/s/ Jeffrey S. Cashdan
Jeffrey S. Cashdan
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, Georgia 30309
Telephone:  (404) 572-4600
Facsimile:  (404) 472-5139
jcashdan@kslaw.com

Counsel For Defendants
Progressive American Insurance Company,
Progressive Casualty Insurance Company,
Progressive Classic Insurance Company,
Progressive Direct Insurance Company, Progressive
Gulf Insurance Company, Progressive Hawaii
Insurance Company, and Progressive Max
Insurance Company


/s/ Michael E. Mumford
Michael E. Mumford (Ohio Bar No. 0073931)
BAKER & HOSTETLER LLP
PNC Center
1900 East Ninth Street, Suite 3200
Cleveland, OH  44114-3482
Telephone:  (216) 621.0200
Facsimile:  (216) 696.0740
mmumford@bakerlaw.com

Counsel For Defendants
Liberty Mutual Insurance Company
Liberty Mutual Fire Insurance Company
Safeco Insurance Company of America
Safeco Insurance Company of Illinois
State Automobile Mutual Insurance Company
State Auto Property and Casualty Insurance
Company

/s/ Rowe W. Snider

Rowe W. Snider
LOCKE LORD LLP
111 South Wacker Drive
Chicago IL 60606
Telephone:  (312) 443-0667 (direct)
Facsimile:  (312) 896-6667 (fax)
rsnider@lockelord.com

Counsel For Defendants
Erie Insurance Company and Erie Insurance
Property & Casualty Company


/s/ E.K. Cottrell

E.K. Cottrell (FBN: 0013579), Trial Counsel
SMITH, GAMBRELL & RUSSELL, LLP
50 N. Laura Street, Suite 2600
Jacksonville, FL  32202
Telephone:   (904) 598-6100
Facsimile:    (904) 598-6300
ecottrell@grlaw.com

Counsel For Defendant
Sentry Insurance A Mutual Company


/s/ Matthew C. Blickensderfer

FROST BROWN TODD LLC
3300 Great American Tower
301 E. Fourth Street
Cincinnati, OH  45202
Telephone:  (513) 651-6162
Facsimile: (513) 651-6981
mblickensderfer@fbtlaw.com

Counsel For Defendant
The Cincinnati Insurance Company

/s/ Brian S. Jones
_____
BRIAN S. JONES
BOSE MCKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN  46204
Telephone: (317) 684-5462
Facsimile: (317) 684-5773
b.jones@boselaw.com

Counsel For Defendant
Indiana Farmers Mutual Insurance Company

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

A & E AUTO BODY, INC., et al.,

Plaintiffs,

v.                                          Case No:   6:14-cv-310-Orl-31TBS

21ST CENTURY CENTENNIAL
INSURANCE COMPANY, et al.,

Defendants.

## ORDER

In this case, twenty-odd auto repair shops have sued thirty-odd insurance companies over so-called "direct repair program" ("DRP") agreements.   The complaint (Doc. 1) is more than thirty pages long and suffers from a host of problems.   The most serious of these problems include:

1. Every allegation in the first 121 paragraphs of the Complaint is incorporated into the first count (titled "Quantum Meruit"), which begins at paragraph 122 and ends at paragraph 126.   Every allegation in the first 126 paragraphs of the Complaint is incorporated into the second count ("Unjust Enrichment"), which begins at paragraph 127 and ends at paragraph 131.   And so on through all remaining counts ("Quasi-Estoppel," "Tortious Interference," "Conversion," "Violation of the Sherman Act – Price-Fixing," and "Violation of the Sherman Act – Boycott").   Thus the Complaint is a prohibited "shotgun pleading," with each count incorporating irrelevant allegations. *See, e.g.*, *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293 (11th Cir. 2002).   Dismissal is required.

**EXHIBIT A**

2.  The Complaint asserts that the Court possesses diversity jurisdiction (only) over the dispute, pursuant to 28 U.S.C. § 1332.   (Doc. 1 at 9).   However, as pleaded, all of the parties on both sides are Florida residents, and there is no diversity. If the plaintiffs choose to replead, the plaintiffs must establish grounds upon which this Court can exercise subject matter jurisdiction over this dispute.

3.  The Complaint fails to identify which Plaintiffs have DRP agreements with which (if any) Defendants.   If the plaintiffs choose to replead, this must be corrected.

4.  With limited exceptions, the allegations of wrongdoing are attributed, collectively, to every Defendant and alleged to have been perpetrated upon every Plaintiff.   While there may be situations in which such collective descriptions are sufficient, at least some of claims asserted here require individualized allegations.   For example, if Plaintiffs' counsel were able to establish that Defendant A was unjustly enriched by shortchanging Plaintiff B, it would not entitle any other plaintiff to a judgment against Defendant A (or any other defendant).   However, that is the way this action has been pleaded.   If the Plaintiffs choose to replead, this must be corrected.

In consideration of the foregoing, it is hereby

**ORDERED** that the Complaint (Doc. 1) is **DISMISSED WITHOUT PREJUDICE.**   All pending motions are **DENIED AS MOOT.**   Should the Plaintiffs choose to replead, they must do so on or before June 27, 2014.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on June 11, 2014.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

## DEFENDANT COMPANIES ONLY NAMED IN FLORIDA CASE

| 1. | 21ST CENTURY CENTENNIAL INSURANCE COMPANY, d/b/a FARMERS INSURANCE GROUP |
|---|---|
| 2. | 21st CENTURY NORTH AMERICAN INSURANCE COMPANY |
| 3. | ACCEPTANCE INDEMNITY INSURANCE COMPANY |
| 4. | DIRECT GENERAL INSURANCE COMPANY |
| 5. | ENCOMPASS INDEMNITY COMPANY |
| 6. | ESURANCE PROPERTY & CASUALTY INSURANCE COMPANY, a/k/a ESURANCE INSURANCE COMPANY |
| 7. | FIRST ACCEPTANCE INSURANCE COMPANY, INC. |
| 8. | FLORIDA FARM BUREAU GENERAL INSURANCE COMPANY, d/b/a FLORIDA FARM BUREAU INSURANCE COMPANIES |
| 9. | FOREMOST·INSURANCE COMPANY |
| 10. | HARTFORD ACCIDENT AND INDEMNITY COMPANY |
| 11. | HARTFORD UNDERWRITERS INSURANCE COMPANY |
| 12. | HORACE MANN INSURANCE COMPANY |
| 13. | INFINITY AUTO INSURANCE COMPANY |
| 14. | MERCURY INSURANCE COMP ANY OF FLORIDA |
| 15. | MGA INSURANCE COMPANY, INC., d/b/a GAINSCO AUTO INSURANCE |
| 16. | NATIONAL GENERAL INSURANCE ONLINE, INC. |
| 17. | NATIONWIDE INSURANCE COMP ANY OF FLORIDA |
| 18. | OCEAN HARBOR CASUALTY INSURANCE COMPANY |
| 19. | OLD REPUBLIC INSURANCE COMPANY |
| 20. | OLD REPUBLIC INSURANCE COMPANY, d/b/a GALLAGHER BASSETT SERVICES |
| 21. | SECURITY NATIONAL INSURANCE COMPANY, d/b/a FARMERS INSURANCE GROUP |
| 22. | SENTRY INSURANCE A MUTUAL COMPANY |
| 23. | THE CINCINNATI INSURANCE COMPANY |
| 24. | USAA CASUALTY INSURANCE COMPANY d/b/a UNITED SERVICES AUTOMOBILE ASSOCIAION |
| 25. | WESTFIELD INSURANCE COMPANY |
| 26. | WINDHAVEN INSURANCE COMPANY |

**EXHIBIT B**

# Calendar Year Statistics
## of the
# United States
## Judicial Panel on
## Multidistrict Litigation



*January through December*

*2013*

EXHIBIT C



# TABLE OF CONTENTS



Calendar Year Summary of JPML Activity (1973 – 2013)

New Docket Requests Filed By Year (2004 – 2013)

New Docket Requests Granted and Denied By Year (2004 – 2013)

New Docket Requests Denied by Category (1973 – 2013)

Hearing Matters Set and Considered for CY 2013

Hearing Matters Set and Considered By Year (2004 – 2013)

Hearing Matters Set and Considered By Hearing Session (2008 – 2013)

Distribution of Pending MDLs By Type (As of December 31, 2013)

## Calendar Year Summary of JPML Activity

| DATE | HEARINGS | ORDERS SIGNED BY PANEL JUDGES | NEW DOCKETS FILED | NEW DOCKETS TRANSFERRED | ACTIONS IN DOCKETS TRANSFERRED | DOCKETS NOT TRANSFERRED | ACTIONS IN DOCKETS NOT TRANSFERRED | TRANSFERRED AS TAG-ALONGS | REMANDS |
|---|---|---|---|---|---|---|---|---|---|
| Jan-Dec 2013 | 6 | 432 | 91 | 46 | 443 | 36 | 262 | 5,623 | 407 |
| Jan-Dec 2012 | 6 | 345 | 94 | 57 | 697 | 49 | 288 | 6,272 | 609 |
| Jan-Dec 2011 | 6 | 228 | 109 | 55 | 439 | 53 | 494 | 5,224 | 520 |
| Jan-Dec 2010 | 6 | 201 | 85 | 35 | 429 | 43 | 268 | 6,077 | 287 |
| Jan-Dec 2009 | 6 | 279 | 121 | 83 | 748 | 37 | 203 | 5,275 | 82 |
| Jan-Dec 2008 | 6 | 254 | 96 | 85 | 3,182 | 23 | 158 | 8,210 | 51 |
| Jan-Dec 2007 | 6 | 258 | 98 | 58 | 619 | 30 | 137 | 6,147 | 77 |
| Jan-Dec 2006 | 6 | 296 | 74 | 54 | 561 | 23 | 90 | 9,550 | 165 |
| Jan-Dec 2005 | 6 | 287 | 80 | 47 | 576 | 31 | 340 | 7,907 | 338 |
| Jan-Dec 2004 | 6 | 302 | 76 | 43 | 384 | 33 | 296 | 11,620 | 354 |
| Jan-Dec 2003 | 6 | 356 | 81 | 55 | 797 | 22 | 115 | 7,720 | 455 |
| Jan-Dec 2002 | 6 | 294 | 68 | 31 | 430 | 33 | 241 | 6,428 | 418 |
| Jan-Dec 2001 | 6 | 199 | 50 | 39 | 1,448 | 13 | 48 | 7,375 | 103 |
| Jan-Dec 2000 | 7 | 239 | 62 | 51 | 545 | 15 | 88 | 9,056 | 289 |
| Jan-Dec 1999 | 6 | 211 | 61 | 44 | 379 | 17 | 46 | 10,506 | 4,417 |
| Jan-Dec 1998 | 6 | 201 | 54 | 35 | 287 | 15 | 203 | 16,658 | 1,379 |
| Jan-Dec 1997 | 6 | 228 | 54 | 39 | 320 | 19 | 112 | 10,592 | 432 |
| Jan-Dec 1996 | 6 | 194 | 67 | 40 | 500 | 17 | 178 | 13,313 | 64 |

# Calendar Year Summary of JPML Activity

| DATE | HEARINGS | ORDERS SIGNED BY PANEL JUDGES | NEW DOCKETS FILED | NEW DOCKETS TRANSFERRED | ACTIONS IN DOCKETS TRANSFERRED | DOCKETS NOT TRANSFERRED | ACTIONS IN DOCKETS NOT TRANSFERRED | TRANSFERRED AS TAG-ALONGS | REMANDS |
|---|---|---|---|---|---|---|---|---|---|
| Jan-Dec 1995 | 6 | 135 | 46 | 30 | 753 | 16 | 71 | 17,216 | 377 |
| Jan-Dec 1994 | 6 | 169 | 42 | 33 | 699 | 18 | 74 | 10,766 | 268 |
| Jan-Dec 1993 | 6 | 160 | 40 | 25 | 227 | 11 | 66 | 10,455 | 192 |
| Jan-Dec 1992 | 6 | 81 | 51 | 30 | 2,149 | 20 | 285 | 7,319 | 154 |
| Jan-Dec 1991 | 6 | 70 | 41 | 26 | 31,215 | 15 | 97 | 574 | 30 |
| Jan-Dec 1990 | 6 | 86 | 46 | 28 | 455 | 16 | 115 | 149 | 70 |
| Jan-Dec 1989 | 6 | 71 | 29 | 16 | 105 | 13 | 56 | 208 | 44 |
| Jan-Dec 1988 | 6 | 63 | 47 | 32 | 282 | 17 | 29 | 231 | 34 |
| Jan-Dec 1987 | 6 | 60 | 31 | 23 | 648 | 11 | 25 | 186 | 17 |
| Jan-Dec 1986 | 6 | 60 | 41 | 26 | 322 | 17 | 61 | 225 | 1,217 |
| Jan-Dec 1985 | 6 | 74 | 44 | 27 | 333 | 21 | 1,813 | 152 | 354 |
| Jan-Dec 1984 | 6 | 76 | 46 | 30 | 295 | 22 | 74 | 502 | 149 |
| Jan-Dec 1983 | 4 | 59 | 46 | 19 | 295 | 18 | 99 | 308 | 189 |
| Jan-Dec 1982 | 4 | 61 | 40 | 21 | 474 | 26 | 195 | 277 | 1,224 |
| Jan-Dec 1981 | 5 | 87 | 21 | 21 | 450 | 18 | 118 | 458 | 413 |
| Jan-Dec 1980 | 7 | 68 | 15 | 15 | 191 | 28 | 518 | 1,137 | 643 |
| Jan-Dec 1979 | 7 | 58 | 40 | 27 | 466 | 17 | 114 | 914 | 590 |

# Calendar Year Summary of JPML Activity

| DATE | HEARINGS | ORDERS SIGNED BY PANEL JUDGES | NEW DOCKETS FILED | NEW DOCKETS TRANSFERRED | ACTIONS IN DOCKETS TRANSFERRED | DOCKETS NOT TRANSFERRED | ACTIONS IN DOCKETS NOT TRANSFERRED | TRANSFERRED AS TAG-ALONGS | REMANDS |
|---|---|---|---|---|---|---|---|---|---|
| Jan-Dec 1978 | 8 | 72 | 38 | 22 | 173 | 18 | 65 | 807 | 219 |
| Jan-Dec 1977 | 7 | 76 | 43 | 29 | 294 | 20 | 163 | 323 | 42 |
| Jan-Dec 1976 | 9 | 46 | 45 | 29 | 219 | 18 | 75 | 174 | 38 |
| Jan-Dec 1975 | 8 | 56 | 39 | 31 | 176 | 11 | 26 | 119 | 23 |
| Jan-Dec 1974 | 7 | 51 | 33 | 24 | 105 | 13 | 112 | 136 | 8 |
| Jan-Dec 1973 | 8 | 40 | 30 | 25 | 225 | 5 | 16 | 115 | 20 |



# UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

New Docket Requests Filed By Year

| Year | |
|------|------|
| 2004 | 76 |
| 2005 | 80 |
| 2006 | 74 |
| 2007 | 98 |
| 2008 | 96 |
| 2009 | 121 |
| 2010 | 84 |
| 2011 | 109 |
| 2012 | 94 |
| 2013 | 91 |



# United States Judicial Panel on Multidistrict Litigation

## New Docket Requests Granted and Denied by Year

## New Docket Requests Denied By Category (1973-2013)

| Year | Denied | Moot | Motion Withdrawn | Admin. Closed | Stricken | Totals |
|------|--------|------|------------------|---------------|----------|--------|
| 1973 | 5 | - | - | - | - | 5 |
| 1974 | 7 | 4 | 2 | - | - | 13 |
| 1975 | 7 | 4 | - | - | - | 11 |
| 1976 | 13 | 3 | 2 | - | - | 18 |
| 1977 | 14 | 1 | 5 | - | - | 20 |
| 1978 | 14 | 3 | 1 | - | - | 18 |
| 1979 | 13 | 3 | 1 | - | - | 17 |
| 1980 | 26 | 1 | 1 | - | - | 28 |
| 1981 | 13 | 1 | 3 | 1 | - | 18 |
| 1982 | 16 | 7 | 3 | - | - | 26 |
| 1983 | 16 | 2 | - | - | - | 18 |
| 1984 | 16 | 2 | 4 | - | - | 22 |
| 1985 | 16 | 4 | 1 | - | - | 21 |
| 1986 | 15 | 1 | 1 | - | - | 17 |
| 1987 | 8 | 1 | 2 | - | - | 11 |
| 1988 | 7 | 1 | 9 | - | - | 17 |
| 1989 | 7 | 3 | 3 | - | - | 13 |
| 1990 | 9 | 2 | 5 | - | - | 16 |
| 1991 | 6 | 4 | 5 | - | - | 15 |
| 1992 | 8 | 3 | 9 | - | - | 20 |
| 1993 | 4 | 4 | 3 | - | - | 11 |
| 1994 | 10 | 5 | 3 | - | - | 18 |
| 1995 | 7 | 5 | 4 | - | - | 16 |
| 1996 | 2 | 9 | 6 | - | - | 17 |
| 1997 | 12 | 3 | 3 | 1 | - | 19 |
| 1998 | 9 | 2 | 4 | - | - | 15 |
| 1999 | 3 | 11 | 3 | - | - | 17 |
| 2000 | 9 | 5 | 1 | - | - | 15 |
| 2001 | 2 | 5 | 6 | - | 1 | 14 |
| 2002 | 21 | 7 | 5 | - | - | 33 |
| 2003 | 5 | 9 | 6 | - | 1 | 21 |
| 2004 | 16 | 11 | 5 | - | 1 | 33 |
| 2005 | 15 | 8 | 8 | - | - | 31 |
| 2006 | 4 | 9 | 10 | - | - | 23 |
| 2007 | 15 | 8 | 7 | - | - | 30 |
| 2008 | 15 | 1 | 7 | - | - | 23 |
| 2009 | 19 | 9 | 9 | - | - | 37 |
| 2010 | 32 | 9 | 2 | - | - | 43 |
| 2011 | 41 | 7 | 5 | - | - | 53 |
| 2012 | 35 | 9 | 4 | - | 1 | 49 |
| 2013 | 25 | 7 | 4 | - | - | 36 |
| **Totals** | **537** | **193** | **162** | **2** | **4** | **898** |



# *Hearing Matters Set and Considered During Calendar Year 2013 by the United States Judicial Panel on Multidistrict Litigation*

| HEARING DATE | MATTERS SET | MATTERS CONSIDERED |
|---|---|---|
| **January 2013** | 29 | 27 |
| **March 2013** | 32 | 29 |
| **May 2013** | 36 | 35 |
| **July 2013** | 40 | 35 |
| **September 2013** | 35 | 31 |
| **December 2013** | 42 | 36 |
| **TOTALS** | **214** | **193** |



United States Judicial Panel on Multidistrict Litigation

Hearing Matters Set and Considered By Year

# United States Judicial Panel on Multidistrict Litigation

## Hearing Matters Set and Considered by Hearing Session



**Note:** The hearing session for May 2009 was conducted over two days.

# United States Judicial Panel on Multidistrict Litigation

## Distribution of Pending MDLs By Type



Common Disaster, 2
Employment Practices, 7
Intellectual Property, 19
Contract, 13
Antitrust, 63
Miscellaneous, 46
Air Disaster, 4
Securities, 34
Sales Practices, 32
Products Liability, 67

287 Dockets Pending as of December 31, 2013

## Table C.
## U.S. District Courts—Civil Cases Commenced, Terminated, and Pending During the 12-Month Periods Ending September 30, 2012 and 2013

| Circuit | Filings | | | Terminations | | | Pending | | |
|---|---|---|---|---|---|---|---|---|---|
| | 2012 | 2013 | Percent Change¹ | 2012 | 2013 | Percent Change¹ | 2012² | 2013 | Percent Change¹ |
| **TOTAL** | 278,442 | 284,604 | 2.2 | 271,572 | 255,260 | -6.0 | 271,141 | 300,485 | 10.8 |
| **DC** | 2,264 | 2,029 | -10.4 | 2,458 | 2,302 | -6.3 | 2,493 | 2,220 | -11.0 |
| **1ST** | 5,922 | 6,624 | 11.9 | 5,726 | 6,425 | 12.2 | 8,241 | 8,440 | 2.4 |
| ME | 431 | 485 | 12.5 | 472 | 418 | -11.4 | 318 | 385 | 21.1 |
| MA | 2,888 | 3,513 | 21.6 | 2,864 | 2,842 | -0.8 | 3,002 | 3,673 | 22.4 |
| NH | 501 | 569 | 13.6 | 596 | 532 | -10.7 | 474 | 511 | 7.8 |
| RI | 966 | 1,060 | 9.7 | 564 | 1,552 | 175.2 | 3,024 | 2,532 | -16.3 |
| PR | 1,136 | 997 | -12.2 | 1,230 | 1,081 | -12.1 | 1,423 | 1,339 | -5.9 |
| **2ND** | 23,218 | 22,671 | -2.4 | 22,354 | 21,882 | -2.1 | 28,391 | 29,180 | 2.8 |
| CT | 2,001 | 1,960 | -2.0 | 2,001 | 1,918 | -4.1 | 2,380 | 2,422 | 1.8 |
| NY/N | 1,902 | 1,674 | -12.0 | 1,687 | 1,785 | 5.8 | 2,269 | 2,158 | -4.9 |
| NY/E | 6,586 | 7,078 | 7.5 | 6,599 | 6,257 | -5.2 | 7,590 | 8,411 | 10.8 |
| NY/S | 10,581 | 9,546 | -9.8 | 9,902 | 9,660 | -2.4 | 13,541 | 13,427 | -0.8 |
| NY/W | 1,842 | 2,077 | 12.8 | 1,848 | 1,894 | 2.5 | 2,301 | 2,484 | 8.0 |
| VT | 306 | 336 | 9.8 | 317 | 368 | 16.1 | 310 | 278 | -10.3 |
| **3RD** | 38,776 | 26,275 | -32.2 | 42,853 | 28,053 | -34.5 | 27,753 | 25,975 | -6.4 |
| DE | 1,704 | 2,275 | 33.5 | 1,388 | 1,607 | 15.8 | 1,991 | 2,659 | 33.6 |
| NJ | 8,585 | 8,190 | -4.6 | 7,971 | 7,399 | -7.2 | 6,873 | 7,664 | 11.5 |
| PA/E | 23,060 | 9,536 | -58.6 | 28,179 | 13,069 | -53.6 | 13,902 | 10,369 | -25.4 |
| PA/M | 2,635 | 3,270 | 24.1 | 2,473 | 2,906 | 17.5 | 2,414 | 2,778 | 15.1 |
| PA/W | 2,551 | 2,766 | 8.4 | 2,571 | 2,814 | 9.5 | 2,077 | 2,029 | -2.3 |
| VI | 241 | 238 | -1.2 | 271 | 258 | -4.8 | 496 | 476 | -4.0 |
| **4TH** | 24,463 | 45,356 | 85.4 | 17,597 | 18,529 | 5.3 | 22,173 | 49,000 | 121.0 |
| MD | 3,929 | 3,863 | -1.7 | 3,924 | 4,134 | 5.4 | 3,266 | 2,995 | -8.3 |
| NC/E | 2,192 | 2,114 | -3.6 | 1,845 | 2,148 | 16.4 | 2,190 | 2,156 | -1.6 |
| NC/M | 1,427 | 1,193 | -16.4 | 870 | 1,176 | 35.2 | 1,662 | 1,679 | 1.0 |
| NC/W | 1,453 | 1,299 | -10.6 | 1,239 | 1,394 | 12.5 | 1,285 | 1,190 | -7.4 |
| SC | 3,772 | 3,528 | -6.5 | 3,732 | 3,505 | -6.1 | 3,228 | 3,251 | 0.7 |
| VA/E | 3,319 | 3,415 | 2.9 | 3,277 | 3,248 | -0.9 | 1,868 | 2,035 | 8.9 |
| VA/W | 1,256 | 1,249 | -0.6 | 1,189 | 1,257 | 5.7 | 732 | 724 | -1.1 |
| WV/N | 672 | 704 | 4.8 | 578 | 629 | 8.8 | 563 | 638 | 13.3 |
| WV/S | 6,443 | 27,991 | 334.4 | 943 | 1,038 | 10.1 | 7,379 | 34,332 | 365.3 |

EXHIBIT D

Table C. (September 30, 2013—Continued)

| Circuit | Filings | | | Terminations | | | Pending | | |
|---|---|---|---|---|---|---|---|---|---|
| | 2012 | 2013 | Percent Change[1] | 2012 | 2013 | Percent Change[1] | 2012[2] | 2013 | Percent Change[1] |
| **5TH** | **29,377** | **34,024** | **15.8** | **27,172** | **27,964** | **2.9** | **28,911** | **34,971** | **21.0** |
| LA.E | 3,050 | 6,484 | 112.6 | 3,871 | 3,765 | -2.7 | 4,635 | 7,354 | 58.7 |
| LA.M | 865 | 887 | 2.5 | 896 | 856 | -4.5 | 879 | 910 | 3.5 |
| LA.W | 3,125 | 3,386 | 8.4 | 1,884 | 2,419 | 28.4 | 3,621 | 4,588 | 26.7 |
| MS.N | 780 | 791 | 1.4 | 836 | 845 | 1.1 | 800 | 746 | -6.8 |
| MS.S | 1,994 | 2,031 | 1.9 | 1,989 | 2,058 | 3.5 | 1,918 | 1,891 | -1.4 |
| TX.N | 6,776 | 7,326 | 8.1 | 4,615 | 4,957 | 7.4 | 6,183 | 8,552 | 38.3 |
| TX.E | 3,480 | 3,940 | 13.2 | 3,156 | 3,896 | 23.4 | 3,613 | 3,657 | 1.2 |
| TX.S | 5,887 | 5,882 | -0.1 | 6,596 | 5,868 | -11.0 | 4,812 | 4,826 | 0.3 |
| TX.W | 3,420 | 3,297 | -3.6 | 3,329 | 3,300 | -0.9 | 2,450 | 2,447 | -0.1 |
| — | | | | | | | | | |
| **6TH** | **26,027** | **22,784** | **-12.5** | **22,162** | **21,034** | **-5.1** | **27,478** | **29,228** | **6.4** |
| KY.E | 1,445 | 1,358 | -6.0 | 1,660 | 1,278 | -23.0 | 1,290 | 1,370 | 6.2 |
| KY.W | 1,399 | 1,807 | 29.2 | 1,481 | 1,340 | -9.5 | 1,282 | 1,749 | 36.4 |
| MI.E | 5,789 | 5,804 | 0.3 | 5,658 | 5,845 | 3.3 | 5,498 | 5,457 | -0.7 |
| MI.W | 1,954 | 1,882 | -3.7 | 1,938 | 1,930 | -0.4 | 1,540 | 1,492 | -3.1 |
| OH.N | 7,993 | 4,478 | -44.0 | 4,089 | 3,434 | -16.0 | 9,762 | 10,806 | 10.7 |
| OH.S | 2,674 | 2,702 | 1.0 | 2,752 | 2,607 | -5.3 | 2,592 | 2,687 | 3.7 |
| TN.E | 1,673 | 1,604 | -4.1 | 1,527 | 1,534 | 0.5 | 1,878 | 1,948 | 3.7 |
| TN.M | 1,626 | 1,788 | 10.0 | 1,616 | 1,596 | -1.2 | 1,855 | 2,047 | 10.4 |
| TN.W | 1,474 | 1,361 | -7.7 | 1,441 | 1,470 | 2.0 | 1,781 | 1,672 | -6.1 |
| **7TH** | **22,158** | **23,381** | **5.5** | **18,509** | **20,050** | **8.3** | **28,030** | **31,361** | **11.9** |
| IL.N | 10,654 | 10,197 | -4.3 | 9,686 | 10,087 | 4.1 | 10,097 | 10,207 | 1.1 |
| IL.C | 1,341 | 1,467 | 9.4 | 1,127 | 1,309 | 16.1 | 1,375 | 1,533 | 11.5 |
| IL.S | 3,615 | 3,893 | 7.7 | 1,517 | 1,662 | 9.6 | 10,687 | 12,918 | 20.9 |
| IN.N | 1,720 | 2,402 | 39.7 | 1,609 | 1,739 | 8.1 | 1,765 | 2,428 | 37.6 |
| IN.S | 2,585 | 2,975 | 15.1 | 2,484 | 2,884 | 16.1 | 2,263 | 2,354 | 4.0 |
| WI.E | 1,319 | 1,483 | 12.4 | 1,279 | 1,444 | 12.9 | 1,089 | 1,128 | 3.6 |
| WI.W | 924 | 964 | 4.3 | 807 | 925 | 14.6 | 754 | 793 | 5.2 |
| — | | | | | | | | | |
| **8TH** | **14,762** | **14,095** | **-4.5** | **16,455** | **18,134** | **10.2** | **19,403** | **15,364** | **-20.8** |
| AR.E | 2,011 | 1,826 | -9.2 | 4,528 | 5,569 | 23.0 | 6,498 | 2,755 | -57.6 |
| AR.W | 1,168 | 1,090 | -6.7 | 1,127 | 1,091 | 7.1 | 1,125 | 1,124 | -0.1 |
| IA.N | 522 | 527 | 1.0 | 540 | 545 | 0.9 | 469 | 451 | -3.8 |
| IA.S | 777 | 750 | -3.5 | 815 | 755 | -7.4 | 559 | 554 | -0.9 |
| MN | 3,406 | 3,386 | -0.6 | 3,093 | 3,758 | 21.5 | 4,081 | 3,709 | -9.1 |
| MO.E | 2,678 | 2,920 | 9.0 | 2,416 | 2,742 | 13.5 | 3,365 | 3,543 | 5.3 |
| MO.W | 2,828 | 2,361 | -16.5 | 2,738 | 2,473 | -9.7 | 2,040 | 1,928 | -5.5 |
| ND | 733 | 653 | -10.9 | 725 | 652 | -10.1 | 581 | 581 | 0.2 |
| NE | 265 | 272 | 2.6 | 199 | 244 | 22.6 | 279 | 307 | 10.0 |
| SD | 374 | 310 | -17.1 | 382 | 305 | -20.2 | 407 | 412 | 1.2 |

Table C. (September 30, 2013—Continued)

| Circuit | Filings | | | Terminations | | | Pending | | |
|---|---|---|---|---|---|---|---|---|---|
| | 2012 | 2013 | Percent Change [1] | 2012 | 2013 | Percent Change [1] | 2012 [2] | 2013 | Percent Change [1] |
| 9TH | 48,123 | 45,531 | -5.4 | 47,455 | 46,628 | -1.7 | 39,972 | 38,875 | -2.7 |
| AK | 320 | 305 | -4.7 | 317 | 314 | -0.9 | 331 | 322 | -2.7 |
| AZ | 4,055 | 4,500 | 11.0 | 4,090 | 4,271 | 4.4 | 2,849 | 3,078 | 8.0 |
| CA,N | 7,145 | 6,184 | -13.4 | 6,715 | 6,663 | -0.8 | 6,032 | 5,553 | -7.9 |
| CA,E | 5,403 | 4,679 | -13.4 | 5,777 | 5,111 | -11.5 | 6,110 | 5,678 | -7.1 |
| CA,C | 15,739 | 14,733 | -6.4 | 15,653 | 15,232 | -2.7 | 10,739 | 10,240 | -4.6 |
| CA,S | 3,481 | 3,352 | -3.7 | 3,274 | 3,322 | 1.5 | 2,921 | 2,951 | 1.0 |
| HI | 764 | 707 | -7.5 | 806 | 797 | -1.1 | 684 | 594 | -13.2 |
| ID | 718 | 607 | -15.5 | 678 | 673 | -0.7 | 777 | 711 | -8.5 |
| MT | 683 | 655 | -4.1 | 547 | 707 | 29.3 | 601 | 549 | -8.7 |
| NV | 2,909 | 2,932 | 0.8 | 2,868 | 2,750 | -4.1 | 3,234 | 3,416 | 5.6 |
| OR | 2,338 | 2,371 | 1.4 | 2,385 | 2,261 | -5.2 | 2,249 | 2,359 | 4.9 |
| WA,E | 976 | 883 | -9.5 | 859 | 964 | 12.2 | 903 | 822 | -9.0 |
| WA,W | 3,534 | 3,558 | 0.7 | 3,437 | 3,498 | 1.8 | 2,403 | 2,463 | 2.5 |
| GUAM | 25 | 36 | 44.0 | 27 | 35 | 29.6 | 62 | 63 | 1.6 |
| NMI | 33 | 29 | -12.1 | 22 | 30 | 36.4 | 77 | 76 | -1.3 |
| 10TH | 11,068 | 10,749 | -2.9 | 10,832 | 10,708 | -1.1 | 9,619 | 9,660 | 0.4 |
| CO | 3,435 | 3,428 | -0.2 | 3,336 | 3,329 | -0.2 | 2,413 | 2,512 | 4.1 |
| KS | 1,767 | 1,546 | -12.5 | 1,615 | 1,669 | 3.3 | 1,549 | 1,426 | -7.9 |
| NM | 1,311 | 1,264 | -3.6 | 1,179 | 1,182 | 0.3 | 1,250 | 1,332 | 6.6 |
| OK,N | 758 | 829 | 9.4 | 837 | 867 | 3.6 | 827 | 789 | -4.6 |
| OK,E | 536 | 573 | 6.9 | 470 | 540 | 14.9 | 510 | 543 | 6.5 |
| OK,W | 1,540 | 1,451 | -5.8 | 1,584 | 1,484 | -6.3 | 1,165 | 1,132 | -2.8 |
| UT | 1,431 | 1,372 | -4.1 | 1,450 | 1,347 | -7.1 | 1,636 | 1,661 | 1.5 |
| WY | 290 | 286 | -1.4 | 361 | 290 | -19.7 | 269 | 265 | -1.5 |
| 11TH | 32,284 | 31,085 | -3.7 | 37,999 | 33,551 | -11.7 | 28,677 | 26,211 | -8.6 |
| AL,N | 4,419 | 2,583 | -41.5 | 3,430 | 4,186 | 22.0 | 6,012 | 4,409 | -26.7 |
| AL,M | 1,178 | 1,033 | -12.3 | 1,123 | 1,015 | -9.6 | 1,138 | 1,156 | 1.6 |
| AL,S | 811 | 650 | -19.9 | 820 | 768 | -6.3 | 658 | 540 | -17.9 |
| FL,N | 1,963 | 2,016 | 2.7 | 2,022 | 2,097 | 3.7 | 1,687 | 1,606 | -4.8 |
| FL,M | 7,690 | 8,443 | 9.8 | 14,762 | 9,580 | -35.1 | 8,650 | 7,513 | -13.1 |
| FL,S | 8,133 | 8,398 | 3.3 | 7,949 | 8,232 | 3.6 | 4,789 | 4,955 | 3.5 |
| GA,N | 5,533 | 5,247 | -5.2 | 5,516 | 5,273 | -4.4 | 3,821 | 3,795 | -0.7 |
| GA,M | 1,421 | 1,618 | 13.9 | 1,256 | 1,325 | 5.5 | 1,132 | 1,425 | 25.9 |
| GA,S | 1,136 | 1,097 | -3.4 | 1,121 | 1,075 | -4.1 | 790 | 812 | 2.8 |

NOTE: Includes cases filed in previous years as consolidated cases that thereafter were severed into individual cases.
[1] Percent change not computed when fewer than 10 cases reported for the previous period.
[2] Revised.