BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

IN RE: AUTO BODY SHOP
ANTITRUST LITIGATION

MDL NO. 2557

**NATIONWIDE MUTUAL INSURANCE COMPANY, NATIONWIDE ASSURANCE COMPANY, NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY, AND NATIONWIDE INSURANCE COMPANY OF FLORIDA'S MEMORANDUM IN OPPOSITION TO TRANSFER, OR, IN THE ALTERNATIVE, FOR TRANSFER TO THE MIDDLE DISTRICT OF FLORIDA**

Plaintiffs' motion to transfer should be denied because consolidating plaintiffs' separate actions will not create any efficiencies that could not also be achieved through informal coordination by the parties' counsel. The nearly identical allegations in plaintiffs' copycat complaints create the false impression that the cases must share sufficiently numerous factual issues to warrant transfer. They do not. The survival of each plaintiff's claims will depend on unique facts, specific to each plaintiff's interaction with each defendant and its insureds.

Plaintiffs, which consist of an auto body trade organization and numerous independent auto body repair shops, allege that the defendant insurers violated the federal antitrust laws and various state laws by conspiring to lower the costs of collision repairs for their insureds and boycotting the body shops that charged higher fees than defendants were willing to pay. While the general theory of liability alleged in each case is the same, the factual allegations underlying each plaintiff's claims are highly individualized. The factual allegations are so individualized that, had plaintiffs filed their complaint in Mississippi state court, they would have been barred from proceeding in a single lawsuit. *See State Farm Mut. Auto. Ins. Co. v. Murriel*, 904 So. 2d 112, 114 (Miss. 2004) (severing plaintiffs' claims that insurers "steered" their insureds away from plaintiffs' body shops). And Judge Presnell, who is presiding over the action that plaintiffs

filed in the Middle District of Florida, just dismissed the Florida complaint because, among other "serious" problems with the complaint, plaintiffs failed to plead the individualized allegations required to support their claims. Order [Doc. # 110] at 2, ¶ 4, *A & E Auto Body, Inc. v. 21st Century Centennial Insurance Company,* Case No. 6:14-cv-00310-GAP-TBS (M.D. Fla. June 11, 2014) (the "Presnell Order") (attached as Exhibit A).

Plaintiffs allege that each defendant made specific representations to each plaintiff about the costs of repairs and "steered" insureds, also through direct representations, away from the plaintiffs' body shops. These allegations cannot be tested through consolidated discovery of a representative plaintiff. They require investigation into the facts underlying each alleged representation, plaintiff-by-plaintiff and repair-by-repair. For this reason, the consolidation of these cases under 28 U.S.C. § 1407 will not ease any burden on the courts, the parties, or their counsel. Instead, consolidation only risks adding another layer of administrative complexity to cases that should be litigated in the district courts where they were filed.

If, however, the Panel were to grant transfer of these cases, Nationwide requests that they be assigned to the Middle District of Florida, Orlando Division, for pre-trial purposes. The Middle District of Florida is the most accessible district to the majority of the parties and their counsel, has the resources to manage a complex, multi-district litigation, and is the site of the most procedurally advanced action.

## ARGUMENT

I. **TRANSFER OF THE SEPARATE ACTIONS SHOULD BE DENIED**

    A. **Standard for Transfer Under 28 U.S.C. § 1407**

The consolidation of cases pending in different districts under 28 U.S.C. § 1407 is appropriate only when (1) the actions involve "one or more questions of common fact," (2)

transfer "will be for the convenience of parties and witnesses," and (3) transfer "will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. The purpose of Section 1407 is "to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." Manual for Complex Litigation (Fourth) § 20.131.

A "mere showing that [common] questions exist is not sufficient, in and of itself, to warrant transfer by the Panel." *In re Cessna Aircraft Distributorship Antitrust Litig.*, 460 F. Supp. 159, 162 (J.P.M.L. 1978). The moving party must show that "any common questions of fact and law are sufficiently complex, unresolved and/or numerous to justify Section 1407 transfer." *In re Commonwealth Scientific & Industrial Research Org. Patent Litig.*, 395 F. Supp. 2d 1357, 1358 (J.P.M.L. 2005).

### B. Consolidation Will Not Create Any Efficiencies

Plaintiffs argue that consolidation of their separate actions is proper because "[w]hile there are minor variations among the complaints which reflect the availability or lack thereof of certain state-law-based alternative grounds for recovery, the core factual allegations in each are identical." Movant Plaintiffs' Motion to Transfer Pursuant to 28 U.S.C. § 1407 ("MDL Mot.") [ECF 1-1], at 5. Plaintiffs attempt to explain away individual differences by arguing that the "[f]actual allegations as set forth in the complaint[s] are consistent from state to state as the defendants have consistently acted improperly nationwide." MDL Mot. [ECF 1-1], at 6. Plaintiffs' assessment of the allegations underlying their complaints is incorrect. The factual differences among plaintiffs' individual claims and the differences in each state's regulatory environment overwhelm any common issues in this litigation.

Plaintiffs allege that defendants violated the federal Sherman Act and various state laws by conspiring to suppress the prices of auto body repairs and boycotting plaintiffs' body shops if they did not participate in the defendants' respective "direct repair programs."[1] Plaintiffs allege that each defendant separately perpetrated this alleged conspiracy through "parallel behavior."[2] That parallel behavior includes specific representations by each defendant to insureds about plaintiffs' body shops and to each plaintiff about repairs to insureds' vehicles.[3] For example, plaintiffs allege that each defendant, when discussing the repairs to <u>an</u> insured's vehicle, would "selectively rely upon and assert the definitive nature of [cost estimating] databases when doing so is to their respective financial advantage." Florida Compl. [ECF 1-6], ¶ 100.[4] These are highly individualized allegations.

Defendants are entitled to discovery from each plaintiff regarding these allegations because the analysis of each alleged representation will be highly contextual. Plaintiffs, themselves, acknowledge in their complaints that there are numerous variables involved in assessing the scope and costs of necessary repairs. *See* Florida Compl. [ECF 1-6], ¶ 76 (alleging that, in addition to the variables included in State Farm's survey, determination of the market rate for a repair should account "for the variance in shop size, skill of technicians and other

---

[1] *See* First Amended Complaint, Mississippi Action (the "Miss. Compl.") [ECF 1-4], ¶¶ 47-51; Complaint, Florida Action (the "Florida Compl.") [ECF 1-6], ¶¶ 64-68; Complaint, Indiana Action (the "Ind. Compl.") [ECF 1-8], ¶¶ 51-55; Complaint, Utah Action (the "Utah Compl.") [ECF 1-10], ¶¶ 29-33; Complaint, Tennessee Action (the "Tenn. Compl.") [ECF 1-11], ¶¶ 39-43.
[2] Miss. Compl. [ECF 1-4], ¶ 80; Florida Compl. [ECF 1-6], ¶ 93; Ind. Compl. [ECF 1-8], ¶ 85; Utah Compl. [ECF 1-10], ¶ 64; Tenn. Compl. [ECF 1-11], ¶ 72.
[3] Miss. Compl. [ECF 1-4], ¶¶ 80, 82, 87, 99-100; Florida Compl. [ECF 1-6], ¶ 93, 95, 100, 113; Ind. Compl. [ECF 1-8], ¶ 85, 87, 92, 105; Utah Compl. [ECF 1-10], ¶ 64, 66, 72, 83; Tenn. Compl. [ECF 1-11], ¶ 72, 74, 79, 92.
[4] *See also* Miss. Compl. [ECF 1-4], ¶ 100; Ind. Compl. [ECF 1-8], ¶ 92; Utah Compl. [ECF 1-10], ¶ 72; Tenn. Compl. [ECF 1-11], ¶ 79.

quality variables").⁵  Thus, every plaintiff and every repair is unique.  Such discovery cannot be streamlined through consolidation.

With a current total of 68 plaintiffs and 82 defendants (many named in more than one action), and apparently many more plaintiffs to come, the discovery burden in these actions will be immense and dispersed throughout several different states.  The localized nature of the discovery means that there are no efficiencies to be gained by centralizing pre-trial proceedings in one jurisdiction.  To the contrary, the burden and expense to the parties could quickly multiply if all such discovery had to be funneled through one court, increasing travel expenses and creating potential logjams.

The Panel has denied transfer where, as here, the factual differences among numerous plaintiffs' claims would undermine any efficiencies to be gained through consolidation.  *See In re Mortgage Industry Foreclosure Litig.*, MDL No. 2500, 2014 WL 585934 (J.P.M.L. Feb. 12, 2014) (denying transfer of actions "predicated on the same theory of contractual interpretation" because they involved "different defendants, different plaintiffs, different mortgage loans at different stages of the foreclosure process, different securitized trusts involving different contractual trust arrangements and different trustees and mortgage servicers, different state laws, and different putative classes"); *In re: Trilegiant Membership Program Mktg. & Sales Practices Litig.*, 828 F. Supp. 2d 1362, 1363 (J.P.M.L. 2011) ("Although all actions contain allegations of the same basic scheme . . ., the differences among the actions will reduce any efficiencies to be gained from centralization.").

When considering claims nearly identical to those here, the Mississippi Supreme Court has held that the factual differences among the individual plaintiffs' claims were so great that

---
⁵ *See also* Miss. Compl. [ECF 1-4], ¶ 63; Ind. Compl. [ECF 1-8], ¶ 64-67; Utah Compl. [ECF 1-10], ¶ 43-46; Tenn. Compl. [ECF 1-11], ¶ 55.

they could not be maintained in the same action. *See State Farm Mut. Auto. Ins. Co. v. Murriel*, 904 So. 2d 112, 114 (Miss. 2004). In *Murriel*, the plaintiffs, twelve independent auto body shops, alleged that the defendant State Farm had "steered" its insureds away from plaintiffs to body shops that participated in State Farm's referral program. *Id.* at 114. State Farm moved to sever the plaintiffs' claims on the basis that each plaintiff's claim arose "from separate, highly fact-specific circumstances that must be analyzed on a case-by-case basis." *Id.* Granting State Farm's motion, the Mississippi Supreme Court found that "other than being subject to State Farm's general policies and procedures, plaintiffs did not share a single transaction or occurrence or series of transactions or occurrences. There is no distinct litigable event linking the parties." *Id.* The Mississippi Supreme Court's assessment of the *Murriel* plaintiffs' allegations is equally applicable to plaintiffs' allegations here.

Echoing the Mississippi Supreme Court's decision in *Murriel*, on June 11, 2014, Judge Presnell in the Middle District of Florida dismissed the Florida plaintiffs' complaint because, among other defects, it failed to plead individualized allegations supporting each plaintiff's claims against each defendant. Presnell Order, Ex. A at 2, ¶ 4. Judge Presnell stated that "[w]ith limited exceptions, the allegations of wrongdoing are attributed, collectively, to every Defendant and alleged to have been perpetrated upon every Plaintiff. While there may be situations in which such collective descriptions are sufficient, at least some of the claims asserted here require individualized allegations." *Id.* Judge Presnell's Order underscores that the plaintiffs' separate cases are not conducive to consolidation because, in fact, they consist of individual claims by each plaintiff against each defendant. Such claims require individualized allegations and, if they were to proceed, discovery into each alleged transaction between each plaintiff and each defendant.

Another reason that consolidation of plaintiffs' separate actions will not result in any efficiencies is that many of their claims are brought pursuant to state statutes and under state common law.[6] These claims will require the application of different state laws and, as a result, discovery into different facts in each case. Nor is there a significant benefit to consolidation from the avoidance of potentially conflicting pretrial rulings. To the contrary, because of the different state statutes and causes of action implicated in this case, the potential for conflicting pretrial rulings is minimal. *See In re Adderal XR (Amphetamine/Dextroamphetamine) Marketing, Sales Practices and Antitrust Litigation*, 968 F. Supp. 2d 1343, 1345 (J.P.M.L. Aug. 6, 2013) (denying transfer, in part, due to claims based upon "different state antitrust and consumer protection laws" and a "minimal" potential for conflicting pretrial rulings).

Even the federal antitrust claims will be affected by differences in state law. Analysis of the parties' conduct under the Sherman Act, for example, will differ from state to state depending on each state's regulation of the insurance and auto body repair industries. *See, e.g., S. Motor Carriers Rate Conference, Inc. v. United States*, 471 U.S. 48, 50 (1985) (holding motor common carriers' ratemaking activities pursuant to state regulatory program were entitled to Sherman Act immunity). The Panel has denied consolidation in similar circumstances, where the common factual issues were not "sufficiently complex and/or numerous" to justify the transfer of antitrust actions "encompass[ing] different regulatory regimes in the states in which actions are pending along with variance in insurance regulation and law in each state." *In re*

---

[6] *See* Miss. Compl. [ECF 1-4] (asserting state common law claims and claim under Miss. Code § 83-11-501); Florida Compl. [ECF 1-6] (asserting state common law claims); Ind. Compl. [ECF 1-8] (asserting state common law claims and claim under Ind. Code § 27-4-1); Utah Compl. [ECF 1-10] (asserting state common law claims); Tenn. Compl. [ECF 1-11] (asserting state common law claims and claim under Tenn. Code § 47-18-104(b)(8)).

*Title Ins. Real Estate Settlement Procedures Act (RESPA) & Antitrust Litig.*, 560 F. Supp. 2d 1374 (J.P.M.L. 2008).

### C. Discovery Regarding Common Factual Issues Can Be Coordinated Through Counsel

To the extent that there are common issues of fact among the separate actions, the parties' counsel can easily coordinate their discovery regarding those issues. The plaintiffs in each case are represented by the same law firm – John Arthur Eaves, Attorneys at Law. As a result, the parties will be able to coordinate common discovery by, for example, cross-noticing in each case the depositions of defendants' witnesses. In addition, the parties' counsel should be able to avoid duplicative document discovery by designating documents for production in more than one case, where appropriate. The ability of the parties' counsel to informally coordinate pre-trial proceedings weighs against consolidation. *See In re Bank of America, N.A. Mortg. Corp. Force-Placed Hazard Ins. Litig.*, MDL No. 2467, 2013 WL 4041555 (J.P.M.L. Aug. 7, 2013) (denying transfer, in part, due to the "overlap among counsel"); *In re Trilegiant Membership Program Mktg. & Sales Practices Litig.*, 828 F. Supp. 2d 1362, 1363 (J.P.M.L. 2011) ("The relatively few involved counsel also weighs against centralization, and should facilitate informal coordination and cooperation across the actions.").

## II. IF THE PANEL ORDERS TRANSFER, THE MIDDLE DISTRICT OF FLORIDA IS THE MOST APPROPRIATE DISTRICT

### A. The Standard for Selection of the Transferee District

For the reasons discussed above, plaintiffs' separate actions should not be consolidated for pre-trial purposes under 28 U.S.C. § 1407. However, if the Panel chooses to grant plaintiffs'

motion, the District Court for the Middle District of Florida, Orlando Division, is the most appropriate district for consolidation of the actions.

The Panel considers several factors in selecting the transferee district under Section 1407, including: (1) where the evidence, parties, and witnesses are located;[7] (2) the convenience and accessibility of the district to the litigants;[8] (3) the availability of a district court and/or district court judge with the experience and resources to manage multidistrict litigation;[9] (4) the preferences of the parties;[10] (5) the districts in which cases are already pending;[11] (6) whether a particular district court judge has already invested significant time in working with issues that are likely to arise in the consolidated cases;[12] and (7) whether a particular action was filed earlier than others or is more procedurally advanced.[13] Applying these factors here, the Middle District of Florida is the most appropriate district for consolidation.

---

[7] *See, e.g.*, *In re Potash Antitrust Litig. (No. II)*, 588 F. Supp. 2d 1364, 1364-65 (J.P.M.L. 2008) (transferring cases to district where two of the defendants "[were] headquartered" and "relevant documents and witnesses may be located").

[8] *See, e.g.*, *In re Intel Corp. Microprocessor Antitrust Litig.*, 403 F. Supp. 2d 1356, 1357 (J.P.M.L. 2005) (consolidating actions in district that was "geographically convenient for many of [the] litigants and counsel").

[9] *See, e.g., In re: Janus Mut. Funds Inv. Litig.*, 310 F. Supp. 2d 1359, 1361 (J.P.M.L. 2004) (transferring cases to district with "the capacity and experience to steer this [antitrust] litigation on a prudent course").

[10] *See, e.g., In re: Vytorin/Zetia Mktg., Sales Practices & Prods. Liab. Litig.*, 543 F. Supp. 2d 1378, 1380 (J.P.M.L. 2008) (selecting the transferee district based in part on the preference of several parties in the pending actions).

[11] *See, e.g., In re Publ'n Paper Antitrust Litig.*, 346 F. Supp. 2d 1370, 1372 (J.P.M.L. 2004) (ordering transfer to the district with the largest number of pending actions).

[12] *See e.g., In re: Train Derailment Near Tyrone, Okla., on Apr. 21, 2005*, 545 F. Supp. 2d at 1374 (transferring cases to judge who had "already developed familiarity with the issues involved as a result of presiding over motion practice and other pretrial proceedings").

[13] *See, e.g.*, *In re: Bank of Am. Credit Protection Mktg. & Sales Practices Litig.*, MDL No. 2269, 2011 WL 3648279, at *1 (J.P.M.L. Aug. 16, 2011) (transferring cases to district "where the first-filed and relatively most procedurally advanced action is pending").

### B. The Most Parties are Located in the M.D. Florida

The action pending in the Middle District of Florida involves more parties (59 total) than any other action, with 25 plaintiffs and 34 defendants. Eighteen of those defendants are named as defendants in only the Florida action – making transfer outside Florida a relative hardship for them. Two Nationwide affiliated companies are named as defendants – Nationwide Mutual Insurance Company and Nationwide Insurance Company of Florida (the latter of which is named only in the Florida action). Nationwide's Southern Claims Zone Office, which handles claims from the states of Kentucky, Tennessee, Mississippi, Arkansas, Alabama, Georgia, and Florida, is in Gainesville, Florida, less than 125 miles from Orlando. *See In re Express Scripts, Inc., Pharmacy Benefits Mgmt. Litig.*, 368 F. Supp. 2d 1356, 1357 (J.P.M.L. 2005) (ordering consolidation to district where the "documents and witnesses will likely be found"). In contrast, the action in the Southern District of Mississippi, plaintiffs' preferred district, involves only 42 parties. All ten named defendants in the Mississippi action have been named in at least one other action (seven of them were named in all five actions).

### C. The M.D. Florida is the Most Convenient and Accessible District

The Florida action was filed in Orlando, which is an international tourist and business destination. Orlando International Airport serves 40 airlines and has non-stop flights to 80 destinations in the United States (including many cities where the litigants are located). *See* Orlando International Airport, *Domestic (U.S. Service)*.[14] While Orlando is easily accessible from anywhere in the country, three of the five cases involved in this litigation are filed in the Southeast (Florida, Mississippi, and Tennessee). For those litigants, Orlando is even more convenient.

---

[14] *Available at* http://www.orlandoairports.net/marketing/domestic.htm.

Plaintiffs' preferred venue of Jackson, Mississippi, offers less than half the number of non-stop flights that Orlando offers, with only 31 non-stop flights per day. *See* Jackson-Medgar Wiley Evers International Airport, *Airline Information.*[15] As of June 7, 2014, Southwest Airlines discontinued service to Jackson-Evers International Airport, making Jackson even less accessible.[16]

When considering nationwide litigation, the Panel has placed significant weight on the convenience and accessibility of the transferee district to the parties and witnesses. *See In re Express Scripts*, 368 F. Supp. 2d at 1357 (transferring cases to district that "is conveniently located for many parties and witnesses"); *In re WorldCom, Inc., Secs. & "ERISA" Litig.*, 226 F. Supp. 2d 1352, 1355 (J.P.M.L. 2002) ("[L]itigation of this scope will benefit from centralization in a major metropolitan center that is well served by major airlines, provides ample hotel and office accommodations, and offers a well developed support system for legal services.").

### D. The M.D. Florida Has the Resources and Expertise to Manage the Consolidated Cases

The Middle District of Florida, Orlando Division, is located in a modern courthouse with courtrooms that are equipped with state-of-the-art equipment and ready access to video conferencing capabilities. *See* United States District Court, Middle District of Florida, *Orlando Division Courtroom Technology.*[17] As of September of last year, the Panel had transferred 14 MDL actions to the Middle District of Florida, a testament to its ability to handle complex, multi-district litigation. *See* United States Judicial Panel on Multidistrict Litigation, *Statistical*

---

[15] *Available at* http://jmaa.com/quick-links/airline-information/ (attached as Exhibit B).

[16] *See Jackson Municipal Airport Authority confirms Southwest Airlines Departure from the City of* Jackson, *available at* http://home.crosstek.net/iflyjackson/wp-content/uploads/sites/7/2014/01/southwest-announce-press-release.pdf (last viewed 6/12/14).

[17] *Available at* http://www.flmd.uscourts.gov/CHtech/Orlando/ORL-CRtech.htm (last viewed 6/12/14).

*Analysis of Multidistrict Litigation Fiscal Year 2013*, at 5.[18] In addition, the Middle District of Florida currently has three MDL actions before it. *See* United States Judicial Panel on Multidistrict Litigation, *MDL Statistics Report – Distribution of Pending MDL Dockets* (May 15, 2014).[19] The Southern District of Mississippi has much less experience with multi-district litigation. The Panel has transferred only 4 MDL actions to the Southern District of Mississippi through September 2013, and there are no MDL actions currently before it.[20]

Judge Presnell, who is presiding over the Florida action, is a highly respected judge with 14 years of experience on the Middle District of Florida and over 30 years of experience in private practice handling complex business litigation. Judge Presnell's experience and expertise combined with the Middle District of Florida's proven track record in handling MDL actions make it the most appropriate for seating any multi-district proceedings in this litigation. *See, e.g., In re Intern. Air Transp. Surcharge Antitrust Litig.*, 460 F. Supp. 2d 1377, 1379 (J.P.M.L. 2006) (transferring docket to district "well equipped with the resources that this complex antitrust docket is likely to require").

### E. The M.D. Florida is the Most Procedurally Advanced Case

The Middle District of Florida has the most procedurally advanced action in this litigation – a factor often given substantial weight by the Panel. *See, e.g., In re Convergent Tel. Consumer Prot. Act Litig.*, No. 2478, 2013 WL 5596117, at *2 (J.P.M.L. Oct. 8, 2013) ("[A]s Judge Thompson is currently presiding over the most procedurally-advanced action, he is in a particularly favorable position to structure this litigation so as to minimize delay and avoid

---

[18] *Available at* http://www.jpml.uscourts.gov/sites/jpml/files/JPML_Statistical_Analysis_of_ Multidistrict_Litigation-2013_1.pdf (last viewed 6/12/14).
[19] *Available at* http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_ District-May-15-2014.pdf (last viewed 6/12/14).
[20] *See supra.*, fn. 18, 19.

unnecessary duplication of discovery and motion practice."); *In re L'oreal Wrinkle Cream Mktg. and Sales Practices Litig.*, 908 F. Supp. 2d 1381, 1381-82 (J.P.M.L. 2012) ("All actions were filed within a short time period, but the action pending in this [transferee] district is slightly more procedurally advanced"). As discussed above, on June 11, 2014, Judge Presnell dismissed the Florida plaintiffs' complaint, without prejudice, in an Order that identified the "most serious" of the complaint's "host of problems." Presnell Order, Ex. A at 1. Judge Presnell's Order also denied as moot two motions to dismiss (one joined by 18 defendants) and one motion for judgment on the pleadings that had been fully briefed since April 17. *See id* at 2; MDL Mot., Ex. 7 (Florida action docket) [ECF 1-7], at 17-28. Judge Presnell has therefore already ruled on pleading issues that will apply in all of the actions, since all of the plaintiffs' complaints contain nearly identical conclusory allegations as to the defendants. The Florida plaintiffs were ordered to file an amended complaint by June 27, 2014. Presnell Order, Ex. A at 2.

In contrast, no responses to the complaint have been filed in the Mississippi action, and only two defendants have even filed notices of appearance. S*ee* MDL Mot., Ex 5 (Miss. action docket) [ECF 1-5], at 14-16. Even though the Mississippi action was first-filed, the operative complaint in the Mississippi action was filed after the operative complaint in the Florida action. *See id*. [ECF 1-5] at 15 (Amended Complaint filed 3/4/12); MDL Mot., Ex. 7 (Florida action docket) [ECF 1-7] at 17 (Complaint filed 2/24/14).

The more advanced stage of the pleadings in the Middle District of Florida weighs heavily in favor of its selection as the transferee district, if the Panel orders consolidation. *In re: Train Derailment Near Tyrone, Okla., on Apr. 21, 2005*, 545 F. Supp. 2d at 1374 (transferring cases to judge already familiar with the issues in the litigation due, in part, to presiding over early motion practice).

13

**CONCLUSION**

For all of the reasons discussed above, Nationwide requests that the Panel deny Plaintiffs' motion to transfer under 28 U.S.C. § 1407, or in the alternative, transfer plaintiffs' separate actions to the United States District Court for the Middle District of Florida.

Respectfully submitted,

*/s/ Michael H. Carpenter*
Michael H. Carpenter

*Attorney for Defendants Nationwide Mutual Insurance Company, Nationwide Assurance Company, Nationwide Insurance Company of Florida, and Nationwide Property and Casualty Insurance Company*