BEFORE THE JUDICIAL PANEL ON MULTI DISTRICT LITIGATION

In re Auto Body Shop Litigation	MDL Docket No. 2557

_____/

**WESTERN UNITED INSURANCE COMPANY'S RESPONSE TO MOTION FOR TRANSFER AND COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. § 1407**

WESTERN UNITED INSURANCE COMPANY ("Western United") respectfully submits this response in opposition to plaintiffs' motion for transfer and coordination or consolidation under 28 U.S.C. § 1407.

**I.**

**INTRODUCTION**

Plaintiffs' motion to transfer invokes concepts of convenience and efficiency but completely fails to demonstrate with actual facts or legal authorities why these lawsuits are appropriate for centralization under section 1407. In reality, and as discussed below, centralization is wholly inappropriate for these lawsuits, which center on numerous grievances State Farm Insurance Company's calculation of auto body repair shop payment rates.

1

Even though plaintiffs' complaints predominantly center on the manner State Farm compensates auto body repair shops, there is little factual or legal overlap among the five complaints at issue. In addition to State Farm, plaintiffs have also sued numerous ancillary insurers around the country. But inclusion of minor insurers such as Western United, which, by plaintiffs' own admission, has less than one and two-thirds percent of the market share in a single relevant state (Utah), does not transform these lawsuits into the type of complex case worthy of 1407 centralization. Indeed, given that the defendant insurance companies operate under complex regulatory schemes unique to each state, centralization of these lawsuits will not streamline the pretrial proceedings. Instead, it will force a single judge to wade through the mass of factually distinct allegations against dozens of different insurers operating in wholly different state-based regulatory environments. Any judge saddled with these lawsuits would find their complexity compounded, not eased. Here, centralization will not promote judicial efficiency, it will create chaos.

Finally, the proposed transferee venue, the Southern District of Mississippi, is far too remote to create meaningful efficiencies for anyone other than the particular plaintiffs' lawyers who are spearheading the litigation strategy. Centralization in Mississippi unduly burden the vast majority of the parties, including the plaintiffs, defendants, and their respective lawyers. For the reasons set forth in this opposition, plaintiffs' motion to transfer should be denied.

## II.

## STATEMENT OF THE CASE

Plaintiffs are various auto body repair shops around the country who dispute the propriety of State Farm Insurance Company's (State Farm) methods for calculating amounts paid for labor and materials used to repair automobiles after accidents. State Farm is alleged to be the dominant automobile insurer in the states where the lawsuits have been filed. State Farm's computer software and labor market

rate survey techniques are the clear targets of plaintiffs' complaints. Plaintiffs have alleged that State Farm engages in "steering" customers to favored repair shops to punish certain other repair shops in violation of various (different) state laws prohibiting such practices.

Though the gravamen of their allegations is directed squarely at State Farm, plaintiffs name dozens of other insurance companies as defendants and couch all allegations against them collectively. Plaintiff accuse these additional insurers, many of them minor, of violating federal antitrust law, either by actively conspiring with State Farm to suppress prices for automobile repairs or mimicking State Farm's reimbursement rates for labor and repair materials.

Among those minor companies swept up in the litigation is Western United, which operates in only one state involved in the five lawsuits (Utah), and (by plaintiffs' own admission) commands less than one and two thirds percent of the automobile insurance market in that state. See Plaintiffs' First Amended Complaint ¶¶ 40-42; Exhibit A ("2012 Utah Market Share Report"). Despite its minimal connection to the automobile insurance market in Utah, Western United now faces the prospect of being forced to litigate in a faraway jurisdiction against allegations that it somehow leveraged its miniscule market share to the detriment of numerous plaintiff body shops.

Western United denies the accusations and will defend itself by showing that its practices and procedures are totally independent of State Farm. Western United's dealings with the auto body shops in its Utah direct repair network are the product of individualized negotiation and fully compliant with both federal antitrust law and the applicable Utah insurance statutes and regulations.

# III.

# ARGUMENT

A.  **Centralization of Five Cases Involving Scores of Different Parties Would Not Be More Convenient or Efficient**

Moving plaintiffs fail to satisfy their burden of persuasion on this motion to transfer for coordination or consolidation. *In re Best Buy Co., Inc. California Song-Beverly Credit Card Act Litigation*, 804 F.Supp.2d 1376, 1379 (USJPML 2011) (Moving party has burden of persuasion.) Indeed, where, as here, only a "minimal" number of actions are involved, the moving party "generally bears a heavier burden of demonstrating the need for centralization." See *In re Transocean Ltd. Sec. Litig.*, 753 F.Supp.2d 1373, 1374 (USJPML 2010). Far from satisfying this heavy burden, plaintiffs' motion recites virtually no facts and is almost completely devoid of legal authority that might demonstrate why five lawsuits involving numerous different parties are appropriate for section 1407 centralization.

As set forth in Section 1407, civil actions pending in different districts "involving one or more common questions of fact" may be coordinated or consolidated for pretrial proceedings. 28 U.S.C. § 1407. The Panel must determine that "transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." *Id.*

Plaintiffs' motion fails to show how centralization of these lawsuits would promote the convenience or efficiency goals of Section 1407. As set forth below, for several main reasons, the statute's explicit purposes would be affirmatively undermined by combining these five cases for pretrial proceedings.

First, to the extent there are any common factual issues among these lawsuits they are greatly overshadowed by the differences. And any facts that are consistent are not sufficiently "complex" or "numerous" to justify consolidation.

Second, plaintiffs' invocation of common legal theories under federal antitrust law fails to justify centralization of the lawsuits. The insurance industry is regulated by the states, meaning disparate legal requirements imposed by state statutes and state Department of Insurance regulations will govern the vast majority of plaintiffs' claims. A single MDL judge would be forced to wade through differences in complex regulatory schemes in passing on discovery disputes and dispositive motions, which is a recipe for judicial chaos, not judicial efficiency.

Third, the centralization of the cases, particularly in plaintiffs' counsel's chosen venue of Mississippi, would be convenient for virtually none of the other parties, witnesses or lawyers.

1. The Overlapping Factual Allegations Are Not Complex and Are Outweighed By the Factual Differences

Plaintiffs' motion alleges that the lawsuits pose "nearly identical factual allegations, as the defendants in each action have acted consistently across the nation." See Plaintiffs' Motion to Transfer, Page 3, ¶3. Setting aside the fact that Western United can hardly be said to have acted "consistently across the nation" given plaintiffs' acknowledgement that it operates with only a miniscule market share in Utah, plaintiffs' claim is that the common factual allegations among the five lawsuits are sufficient to warrant centralization. Not so.

Plaintiffs quarrel is with State Farm, State Farm's use of certain computer software, and the view that State Farm's methodology for conducting labor rate surveys is flawed. These grievances against State Farm are the sole common facts among the lawsuits, which pit dozens of auto body shops against dozens of insurers not named "State Farm." The involvement of these additional insurers will multiply by many magnitudes the factual allegations. For example, each insurer has its own direct repair program agreement; each insurer has its own method for negotiating such agreements; each insurer has its own reimbursement rates; each insurer has its

5

own market survey methodology used to establish those rates; and so on. There is absolutely no evidence to the contrary. Plaintiffs' broadside, multi-faceted attack against every automobile insurer with even minimal market share in a given state (even as low as 1.66%)may be a procedural tactic permitted under the law, but it does <u>not</u> mean that cobbling together all such lawsuits around the country in a single, unwieldy mass of litigation in Mississippi affords any efficiencies. See *In re Asbestos and Asbestos Insulation Material Products Liability Litigation*, 431 F.Supp.906 (USJPML 1977) (The fact that "liability of each defendant in each action is predominantly an individual question" involving different variables weighed against centralization.)

Against this complex factual backdrop of how the market sets auto body repair rates through individual negotiation between individual repair shops and individual insurers, plaintiffs apparently intend to plead that a conspiracy exists between State Farm and the other insurers to suppress those rates. Even assuming these purported individual conspiracies are somehow nationwide and not unique to each state (a dubious proposition given that parties such as Western United do not operate in all states, or even most of them), mere overlap of some basic factual contentions is insufficient to require section 1407 centralization. *In re Skinnygirl Margarita Beverage Marketing and Sales Practices Litigation*, 829 F.Supp.2d 1380, 1381 (USJPML 2011) ("These putative nationwide class actions may share some factual questions regarding the defendants' marketing practices, but the central allegation…appears to be undisputed, and plaintiffs have failed to detail how pretrial proceedings would benefit from centralization.")

*In re Skinnygirl Margarita Beverage Marketing and Sales Practices* involved plaintiffs who claimed the Skinnygirl Margarita beverage was marketed as being all natural despite some level of sodium benzoate. 829 F.Supp.2d at 1831. The Panel found this central allegation was undisputed, and, because the "common material disputed facts may be limited in number", centralization was inappropriate. *Id.*

6

Like *Skinnygirl*, there is little dispute regarding plaintiff's core factual claim that State Farm uses computer software and labor rate market survey techniques; the question is whether doing so is valid under the applicable law, which varies significantly from state to state, as explained further below. The dozens of other defendant insurers have their own practices and procedures, which, again, are tailored to the regulatory environment in each state. There will be little factual overlap from case-to-case regarding the plaintiffs' discovery of these additional practices, and, therefore, the "common material disputed facts may be limited in number." See *Skinnygirl*, 829 F.Supp.2d at 1381. Centralization will not streamline discovery as inquiry into state-specific practices will still be necessary.

Furthermore, to the extent a few of the factual allegations in these Auto Body cases are consistent among the lawsuits, such allegations are not sufficiently complex or numerous to warrant oversight by a single judge. See *In re Isidoro Rodriguez Litigation*, 829 F.Supp.2d 1379, 1380 (USJPML 2011) ("Although these actions share some factual questions…movants have failed to convince us that those factual questions are sufficiently complex or numerous to warrant centralization.")

Plaintiffs' decision to divide a case against State Farm into multiple lawsuits and file them around the country is of their own choosing, and does not change the simple nature of the factual allegations against State Farm. Presumably there will be no dispute that State Farm uses certain software and market survey techniques to establish a reimbursement rate, only whether such practices violate the law. These minor purportedly common State Farm allegations are neither "complex" nor "numerous" enough to justify centralization. In sharp contrast, and as set forth below, where these cases would become complicated is in sorting out whether any actions of State Farm or the ancillary insurers actually violate any of the varying legal standards applicable in each state. That particular complex intersection of state

7

insurance regulatory schemes and requirements is not the same as complexity or numerosity of *facts* sufficient to warrant centralization.

> 2. The Multiplicity of Parties and Various State Regulations Applicable to the Lawsuits Would Not Create Judicial Economy

The plaintiffs' decision to include numerous ancillary insurers operating in different states weighs heavily against centralization for three reasons.

First, the lack of commonality among the parties in the various lawsuits is itself a factor weighing against centralization. See *In re Asbestos and Asbestos Insulation Material Products Liability Litigation*, 431 F.Supp. 906, 909 (USJPML 1977). The lawsuits pit plaintiffs against dozens of different defendants, and the "considerable variation in named defendants from action to action" cuts down on any potential efficiencies that might conceivably be gleaned from centralization. *Id.*

Second, there is little chance that centralization will avoid inconsistent legal rulings or prevent duplicative discovery because different state laws will apply to plaintiffs' various state law claims. By broadening the lawsuits to name so many ancillary defendants in so many different types of claims, plaintiffs have necessarily implicated the separate complex regulatory schemes applicable in each state. The five complaints at issue invoke numerous state law claims and remedies, and the success of those claims will turn on the applicable insurance law in each state.

It has long been recognized that the states enjoy "a virtually exclusive domain over the insurance industry," which has led to each state enacting a separate regulatory environment under which insurers must operate. *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 539 (1978); *U.S. Dept of Treasury v. Fabe*, 508 U.S. 491 (1993) (Congress has moved "to restore the supremacy of the States in the realm of insurance regulation.") Accordingly, given the 50 different approaches to insurance regulation in this country, what is a legal or regulatory violation in one state might be entirely appropriate in another state.

For example, the plaintiffs in this case accuse the dozens of defendants of various tactics with respect to steering insurance customers to specific auto body repair shops. Four of the five states where litigation is pending have statutes or regulations regarding such steering practices and each will set a different standard relevant to the state law claims put forward by plaintiffs in their respective states. Compare FL. St. § 626.9743(3); FL ADC 69B-220.201(3)(a); IN ST. § 27-4-1.5-8; MS ST § 83-11-501; UT ADC R590-190 (11). (Tennessee has a similar provision applicable to public adjusters. See TN ST. § 56-6-917.)

On this one discrete legal issue of steering, the multiplicity of statutory and regulatory requirements will result in increased confusion for any MDL transferee judge tasked with wading through the disparate applicable legal requirements. Given the different law in each state, efficiency will come from allowing a judge in that state to apply the law of that state to the individual aspects of each dispute. As such, centralization will not promote judicial efficiency.

Given that the law applicable to each case will differ, there is little chance of avoiding inconsistent rulings of law with centralized pretrial proceedings. In their motion to transfer, plaintiffs claim that the pending motions to dismiss are a reason for centralization to avoid inconsistent rulings, when, in fact, the opposite is true because different laws will apply to different issues raised by motions filed in different cases. Centralization in this case would create more work, not less, for the court, given that any judge must interpret and apply unique regulatory schemes under which the dozens of different defendant insurers operate in each state.

The Panel has recognized that where, as here, significant state law variance applies, goals of centralization are thwarted. In *Skinnygirl*, liability under certain state laws turned on the state of mind or reliance by individual purchasers. See *Skinnygirl*, 829 F.Supp.2d at 1381. Given the differing legal standards applicable to different claims raised by the various complaints, the Panel recognized that "centralization may

9

not prevent conflicting or multiple rulings." *Id.* So too here if plaintiffs cobble together different state law claims subject to different state insurance standards. The significant differences among the individual state insurance regulatory schemes means legal rulings in these auto body cases should not necessarily be consistent (or desired).

*Skinnygirl* also illustrates how different state legal standards can thwart efficient pretrial discovery when combined. See *Skinnygirl*, 829 F.Supp.2d at 1381. In *Skinnygirl*, the state of mind of individual purchases was relevant in some cases and irrelevant in others. *Id.* The Panel recognized that different state law standards rendered centralization inappropriate given that pretrial proceedings "would not involve common discovery." *Id.* Here, there is little to be gained from cobbling together discovery of practices and procedures of dozens of minor insurers such as Western, who, like many of the other defendants spread across these cases, have de minimis operations in only one state. There are virtually no discovery efficiencies to be gained based on the legal and factual theories asserted by plaintiffs in these cases.

Lastly, the fact that only five lawsuits are at issue in this motion to transfer means that centralization is not an effective method of conserving judicial resources. See *In re Highway Accident in Buffalo County, Nebraska*, 305 F.Supp.2d 1359 (2004) (Common factual issues among "a minimal number of actions" [four] insufficiently "complex, unresolved and/or numerous to justify Section 1407 transfer.") There are numerous preferable alternatives to centralization that will ensure minimal duplication of effort among these few lawsuits without burdening a single MDL court with interpreting and applying widely disparate state-based insurance regulations. For example, a potential deposition notice, if any, of a State Farm witness pertinent to all of the lawsuits could "be filed in all actions." See *In re Eli Lilly Co. Patent Litigation*, 446 F.Supp. 242, 244 (USJPML 1978).

Again, plaintiffs voluntarily made the decision to lump together various insurers as defendants, a strategy that is procedurally authorized but does not

10

necessarily mean combining cases across state lines will create any efficiencies. Given the significant differences among the insurers' operations and the regulatory schemes under which they operate, centralization will create added complexity, not reduce it.

### 3. Centralization Would Not Be Convenient for Any Other Party or Witness

Convenience of the parties and witnesses is a stated purpose underlying Section 1407, but centralization would undermine this goal, not further it.

Indeed, Plaintiffs' counsel's request that the cases be centralized in their own backyard in southern Mississippi belies their true purpose, which is to hale dozens of insurers such as Western United, which do not even operate in Mississippi, into a forum where personal jurisdiction would otherwise never exist. Plaintiffs' tactics expose motivations beyond those recognized in Section 1407 and completely undercut any threadbare legitimate bases for coordination or consolidation plaintiffs may have had. Section 1407 should not be used as a tool to make litigation more expeditious or convenient for a particular lawyer. See *In re CVS Caremark Corp. Wage and Hour Employment Practices Litigation*, 684 F.Supp.2d 1377, 1379 (USJPML 2010) ("Where a Section 1407 motion appears intended to further the interests of particular counsel more than those of the statute, we would certain find less favor with it.").

## B. If Centralization Occurs, Neither Mississippi Or Louisiana Is An Appropriate Venue

In the unlikely event that the Panel is inclined to grant plaintiffs' motion to transfer these lawsuits to a single federal district, that district should not be the requested Southern District of Mississippi or alternative Eastern District of Louisiana. The purported benefits offered by plaintiffs' counsel of these two venues, i.e., that they are centrally located, and have modern facilities and experience in MDL cases, are factors even more applicable to other possible MDL transferee courts.

For example, Jackson, Mississippi, is served by direct commercial air service from just six cities, only two of which are west of the Mississippi River.[1] This will seriously inconvenience parties such as Western United, with headquarters and chosen defense counsel in California. See Plaintiffs' First Amended Complaint ¶25.

By contrast, the District of Utah is among the most accessible districts hosting the five pending cases and would be far superior for MDL pretrial proceedings. Salt Lake City is a major commercial airport hub in the middle of the country. The District of Utah is experienced with MDLs, and has only one currently pending. See *In re Baycol Products Liability Litigation*, 180 F.Supp.2d 1378, 1380 (USJPML2001) (Authorizing transfer to a "centrally located" "major metropolitan court" that is "not currently overtaxed with multidistrict dockets."). According to the Administrative Office of the U.S. Courts, as of the end of 2013., the District of Utah had fewer civil filings per judge (261) than the Southern District of Mississippi (336) or the Eastern District of Louisiana (548)[2]. The District of Utah, unlike the Eastern District of Louisiana, has the added benefit of being where one of the cases is actually presently venued.

///
///
///
///
///
///
///
///
///

---

[1] See http://iflyjackson.com/passenger-services/
[2] See http://www.uscourts.gov/uscourts/Statistics/FederalCourtManagementStatistics/2013/district-fcms-profiles-december-2013.pdf

## IV.

## CONCLUSION

Because centralization would neither further the just and efficient conduct of this litigation nor serve the convenience of the parties and witnesses, plaintiffs' motion to transfer for coordination or consolidation under Section 1407 should be denied. If the Panel were inclined to grant the motion, Western United respectfully submits that transfer to the District of Utah would be most appropriate.

Dated: June 12, 2014                    Respectfully Submitted,

CODDINGTON, HICKS &DANFORTH


By: _____/s/_____
   R. Wardell Loveland
   555 Twin Dolphin Drive, Suite 300
   Redwood City, CA 94065-2133
   Tel. (650) 592-5400 Fax. (650) 592-5027
   RLoveland@chdlawyers.com
   Attorneys for Defendant